THE UNITED STATES DISTRICT COURT FOR DISTRICT OF COLUMBIA

**FILED**

SEP 1 7 2007

Case No.

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

DOROTHY DIER
Incapacitated
Summit Park Holding Facility
1502 Frederick Rd. Catonsville, MD 21228
JERRY L. DIER, her son and next friend
11448 Rowley Rd. Clarksville, MD 21029
(202)276-8716

Plaintiffs

vs.

PHYLLIS MADACHY, DIRECTOR
OFFICE OF AGING,
HOWARD COUNTY, MARYLAND
Court Appointed Guardian of the Person
DOROTHY DIER held incapacitated
Designated agents, Peggy Rightenauer, Opheila Ross
6751 Gateway Drive, Columbia, MD 21046  and
JUDGE DENNIS SWEENEY,
State of Maryland, Howard County Circuit Court,
Howard County, Maryland
8360 Court Avenue, Ellicott City, MD 21043
Summit Park Health and Rehabilitation Center
Court Ordered Holding Facility
Director, Jacqueline. Hardy and designee Lottie Dorsey
And Doctors Bernhard, Baskeran and Tansandra and
Unit manager, Kim Williams and
Charge nurse, Richards, amongst others
1502 Old Frederick Rd.
Catonsville, MD  21228

Defendants

Petition for a Writ of
Habeas Corpus for a
Person found Incapacitated

In State Custody

In The
Howard County
Circuit Court
Case No: 13-C-0563324

Case: 1:07-cv-01637
Assigned To : Robertson, James
Assign. Date : 9/17/2007
Description: Habeas Corpus/2255

**PETITION PURSUANT TO 28 U.S.C. SECT. 2254, FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY-PLAINTIFF'S SEEKS HABEAS CORPUS RELIEF, RELEASE FROM STATE CUSTODY, UNDER THE UNITED STATES CONSTITUTION FOR VIOLATION OF PLAINTIFF'S FOURTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS, NAMELY RIGHT TO PRIVACY, RIGHT TO COUNSEL, RIGHT TO A FAIR TRIAL, RIGHT TO BE PRESENT, RIGHT TO A JURY TRIAL, RIGHT TO DUE PROCESS OF LAW AND RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT AND FOR FURTHER IMMEDIATE RELIEF PURSUANT TO 28 U.S.C. 1651, THE ALL WRITS ACT IN AID OF THE JURISDICTION OF THIS COURT**

Comes now the Petitioner DOROTHY DIER, by and through her Son and next friend, Jerry L. Dier, Pro se, pursuant to 28 U.S.C. Sect. 2254 and 28 U.S.C. Sect. 1331 who submit the following Petition for Writ of Habeas Corpus in behalf of the Petitioner, DOROTHY DIER, in State custody subject to court order as a **direct consequence** of medical testimony based **soley** on analysis and examinations conducted in Washington, D.C. by medical doctors attached to the Washington Hospital Center(hereinafter referred to in the main as "WHC") in a guardian proceeding in the State of Maryland, Howard County. When the petitioner, Howard County Department of Social Services moved to support its *claim* at the very least "a substantial part of the events" (see 28 U.S.C. 1391(b)(2) **occurred in the District of Columbia**, utilizing testimony and documentation founded from the same source, **Without which** Judge Dennis M. Sweeney,  His Verdict Already Dictated on the record would not have had any support at all for engaging in carefully crafted a process wherein DOROTHY DIER was denied her right to effective assistance of counsel who was appointed by Judge Dennis M. Sweeney, State of Maryland, Howard County Circuit Court, who(court appointed counsel) knowingly acknowledged making false representations as regards DOROTHY DIER'S waiver of Right to Jury trial, Right to be Present and her Desire to have a guardian appointed, all taking place in the context of judicial proceedings applauded by the court on one hand, while on the other recognizing at times that his court appointed counsel was asleep, inattentive, non-participatory and not interested, walking out with court approval, the hearing continuing concerning the health, safety and well-being of his client, amongst other matters, resulting in judicial errors of such a magnitude, so far outside the ordinary judicial process that they could not possibly take place through ignorance or by mistake,

2

especially when corroborated by Judge Sweeney himself in a subsequent statement in a

later filed guardian of the property action when Jerry L. Dier requested that the court

recuse itself having appointed the same court appointed counsel, Anthony E. Doyle, the

court responded by further applauding the efforts of Mr. Doyle certainly not made in

DOROTHY DIER'S behalf, but from the record consistent with the wishes of the court

which expressed prior to trial that DOROTHY DIER needed a guardian when discussing

her waiver of right to jury trial, making himself the fact finder in a proceeding in which

he had already reached a conclusion. which he rubber stamped on March 7, 2006, by

extra-legal conduct placing DOROTHY DIER under the color of State law in **legal**

**custody** having constraints(See paragraphs 53-63) placed upon her liberty far in excess

than those imposed on the general public, the very definition of "legal custody" in

defining "to be in legal custody" within the meaning of 28 U.S.C. 2254(a) in family

related habeas matters as set forth by the United States Supreme Court in *Lehman v.*

*Lycoming County*, 458 U.S. 502(1982) under the care and control of the State of

Maryland, Office of Aging, Howard County by and through the authority and supervision

of Judge Dennis M. Sweeney depriving DOROTHY DIER of her rights and privileges

guaranteed under the protection of the United States Constitution, utilizing as their tool of

destruction **Events** taking place wholly in the District of Columbia, orchestrated by the

Howard County Department of Social Services (HCDSS) and Howard County, Office of

Aging so as to condemn DOROTHY DIER without due process of law by making use of

Events taking place in the District of Columbia, in a District of Columbia institution, the

WHC, wherein analysis and examination were procured by Howard County Social

Services and Aging by extra legal means, concluding when DOROTHY DIER was

3

ordered by Judge Sweeney to be brought to Maryland, from the District of Columbia

Hospital, a trial purportedly taking place resting on the testimony of a medical doctor

from the WHC, testifying as to what took place in the District of Columbia at which time

the court made findings consistent with its earlier announced decision, five weeks before

trial, holding DOROTHY DIER in need of a guardian.(App. 1)  The delayed Court of

Special Appeals for Maryland (App. 2) opinion issued April 18, 2007, speaks for itself in

supporting the unsupportable, State of Maryland, Howard County Circuit Court, Judge

Dennis M. Sweeney, providing him cover, at least for the moment in an opinion rendered

four months after its mandatory due according to Maryland Rules. This is **New**

**Information** not available at the time of an earlier filing in this Court in matter. The

PLAINTIFFS(DOROTHY DIER and her son and next best friend, Jerry L. Dier)  request

this Court to issue an Order, Writ of Habeas Corpus, setting aside the appointment of a

Guardian of the Person for DOROTHY DIER by the State of Maryland, Howard County

Circuit Court due to the denial by the State of Maryland Court under the color of law to

provide DOROTHY DIER the protections guaranteed by the United States Constitution,

pursuant to the Fourth, Sixth, Eighth and Fourteenth Amendments amongst others,

violating Due Process of Law, Right to Privacy, Equal Protection under Law, Right to a

Jury Trial, Right to be Present and Confront Witnesses, Right to Counsel in a meaningful

fashion, and Right to a Hearing before a Fair and Impartial Court. To do other than set

DOROTHY DIER free from the legal custody imposed by the Howard County Circuit

Court would be to condemn her without remedy. In support thereof, PLAINTIFFS show

unto this Court as follows in a manner and fashion which are consistent with the model

form for use and application for habeas corpus relief pursuant to 28 U.S.C. Sect. 2254.

4

To do Other than grant this request by DOROTHY DIER would be to allow the District of Columbia to supply the very tools for Mrs. Dier's present **custody** and then remain aloft and silent Enabling by inaction the grave wrong to continue, Thereby ignoring the use of one of District of Columbia's most respected institutions, the WHC and its medical staff by a lawless Maryland judicial system, while condemning DOROTHY DIER to endless unjustified cruel and unusual punishment.(see paragraphs 53-62 for specific acts).

Because of A NEW FILING(App. 4) dated August 28, 2007, by Howard County Office of Aging requesting the Withholding and Withdrawal of Treatment from DOROTHY DIER, being sent to Judge Sweeney to be rubber stamped, DOROTHY DIER is requesting that this Court pursuant to the 28 U.S.C. 1651, All Writs Act, **Stay** the Howard County Circuit Court proceeding, so as to preserve its jurisdiction IMMEDIATELY remove DOROTHY DIER from HER PRESENT HOLDING FACILITY, SUMMIT PARK, AND THUS FROM THE CARE, CUSTODY AND CONTROL OF THE OFFICE OF AGING BY ORDER OF JUDGE DENNIS M. SWEENEY, STATE OF MARYLAND HOWARD COUNTY CIRCUIT COURT **BEFORE SHE IS KILLED AND STAY THE MARYLAND ACTION.**.

### PRELIMINARY STATEMENT

DOROTHY DIER was placed in legal custody pursuant to the orders of Judge Dennis M. Sweeney, Howard County, Maryland Circuit Court in violation of her rights under the Fourth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States under the color of Maryland state law.

## Background

The petitioner, Howard County Department of Social Services(hereafter referred to in the main as "HCDSS") on September 28, 2005, filed a petition for guardian of person. The court appointed counsel for Dorothy Dier. On March 7, 2006, during the trial, the court described the care and devotion shown by Interested Person Jerry L. Dier toward his mother as "unparalleled attention to his mother's condition." This finding led the court to request that HCDSS represented by seasoned counsel agree to a Stipulation Whereby it was agreed amongst the parties that Jerry L. Dier exhibited the highest degree of care and devotion to his mother. Yet, the trial court found that Jerry L. Dier based on a lifetime of knowledge concerning his mother was overly optimistic as regards her condition and held that a guardian need be appointed. The court held that pursuant to the filed petition and applicable law that Dorothy Dier was in need of a guardian and appointed the Howard County Office of Aging despite the fact that the court found that if the choice was Dorothy Dier's to make, she should most certainly choose her son as decision maker, *to act in her behalf*, not a stranger such as the Office of Aging. An appeal followed to the Court of Special Appeals for Maryland, opinion dated April 18, 2007, affirming the Howard County Court and this request for habeas relief follows.

## COURT APPOINTED ATTORNEY-CLIENT AND THECOURT

**The Court of Special Appeal for Maryland, in In Re Sonny Lee, 754 A. 2d 426(Md. App. 2000) addressed issues relating to effectiveness and standards for ascertaining the same in guardian of the person actions.**

**One aspect of the standard for determining whether or not Effective Assistance of Counsel has been rendered in guardian of person proceedings is, "the duties of an**

6

attorney may at times directly conflict with the duties of a guardian ad litem. It is

the role of the attorney to explain the proceedings to his client and advise him of his

rights, keep his confidences, advocate his position, and protect his interests. Due

Process demands nothing less, particularly as here, when the alleged disabled

person faces significant and usually permanent loss of basic rights and liberties."

(emphasis added). Lee at 439.

A further aspect of the standard concerns itself with counsel's representation at

trial, "In guardianship proceedings effective representation by counsel ensures that

the proper procedures are followed by the court." (emphasis added). Lee at 439.

In addition, to serve as a guidepost, the court in Lee set forth the following specific

standard so as to preclude an attorney from waiving his clients rights without

consultation under some notion of his client's 'best interests,' "The duty to maintain

'as far as reasonably possible' ...a normal client-lawyer relationship precludes an

attorney from acting solely as an arm of the court, somewhat in the nature of a

special master, and using his assessment of the 'best interests' of the client to justify

waiving his clients rights, without consultation. ...disregarding his clients wishes,

and even presenting evidence against him. ...which is apparently what occurred in

this case." (emphasis added). Lee at 440.

**Court Appointed Counsel, Without Consultation, Misleading Representations**

In this guardian of the person action court appointed counsel, Anthony Doyle, for

DOROTHY DIER **Without Consultation**, WAIVED as if exercising her express will

and intent as to her rights under the United States Constitution and Maryland law (Estates

and Trust 13-705(e) and Maryland Rule 10-205(b)(1)), respectively,

to be Present and to have a Jury trial, as well as Affirmatively representing to Judge

Sweeney that she wanted a guardian of the person appointed. Interested Person Jerry L.

Dier brought to the court's attention that Mr. Doyle had never met with or consulted with

DOROTHY DIER prior to his making these most important but unfounded

representations in her behalf. Mr. Doyle acknowledged this truth.

In pertinent part, the Answer to the Petition for Guardianship of the Person, filed and

presented to the court at the initial hearing, October 14, 2005, reads as follows,

"Now comes Dorothy Dier, by and through her attorney, Anthony Doyle, Jr., and in

Answer to the Petition for Guardian of the Person, respectively states as follows:

5. That in further answer thereto, the Respondent waives her right to have this matter

tried before a jury, as well as her right to appear before this Honorable Court.

WHEREFORE, having fully answered the Petition, the Respondent prays this Honorable

Court:

A. Appoint a guardian of her person.

B. Accept her waiver of her right to a jury trial and her right to appear at a hearing.

_____

Anthony E. Doyle, Jr. "

Judge Sweeney thought nothing of this most inappropriate and unethical conduct

and the matter went forward with testimony taken under oath in the absence of

DOROTHY DIER. It was apparent from the outset and addressed directly on the record

8

on February 2, 2006, when Judge Sweeney gave Court approval to the above described

dark conduct that he and Mr. Doyle were acting as one, a process that continued

throughout the proceedings exemplified when the court gave approval to Mr. Doyle's

request **"to exit by the back door,"** to attend a meeting and then continued the hearing

in his absence during a most important proceeding when issues of health, safety and well

being of his client were being addressed as well as issues that focused on the

underpinnings of the viability of the petition itself.

> The Court: Oh no. That's fine. We got – I think we can go-
>
> We Can –because we're talking about comparing nursing homes—
>
> \*          \*          \*          \*          \*
>
> The Court:--we can go on without Mr. –without Mr. Doyle. All right.
>
> Go  ahead.

Dorothy Dier's absence was not even deemed worthy of mention by either the court or

her court appointed counsel.

 Further, even though the court took specific notice of court appointed counsel's lack of

attentiveness and participation in the proceedings such as asking Mr. Doyle at a status

hearing(October 25, 2005), **"Are you awake,"** and during the trial, **"Are you all right."**

**And then Only asking five questions of a secondary witness during the whole of the**

**trial after being so admonished, the court took no immediate corrective action..**

 **ABANDONMENT BY THE COURT OF THE RULE OF LAW**

**Prejudgment by the Court, February 2, 2006**

**The Court: . ...why should we drag everybody, including your poor mother through a jury trial proceeding if there's–it's clear and it's clear to me beyond any co-eval that your mom is—is well within the range of people that seriously need a guardian?**

**The court's embrace of the waiver of right to jury trial by court appointed counsel Without Consulted was taken one further step by the Howard County Court-he is declared five weeks before the trial date(March 7, 2006) that the person before him, Dorothy Dier was in "serious need" of a guardian, Thereby having prejudged the issue before him, turning the trial into a mere formality, as if to give legality to his already declared extralegal result.**

**The Howard County Court further used this tactic of basing its decision on a notion of unfettered discretion in guardianship cases when considering whether or not the court as statutory jurisdiction even to hear the case before it,**

**The Court: Even assuming the statutory jurisdiction was not able to be ascertained, the Court believes its inherent powers as guardians of persons with disabilities would fill in any gaps in that determination. February 2, 2006.**

The Howard County Court utilized his stated "inherent powers" to fill in the gaps as to "venue" where the information contained within the record, there was no evidentiary hearing was that Dorothy Dier resided at Washington Adventist Hospital in Montgomery County, Maryland at the time of the filing of the petition and a few days thereafter, on October 6, 2006, moved to an Assisted Living Residence in Montgomery County, where she resided at the time of the initial court hearing on October 14, 2005; not Howard County as required by Maryland Rule 10-201(b)(1).Furthermore, the Howard County Court used this process to bypass a stated statutory provision, Md. Ann. Code, Estates

10

& Trusts 13-707(a)(10) which specifically excluded social services from guardianship as regards individuals over 65, such as Dorothy Dier where as in her case, there had been no prior relationship before she was 65, Thereby not including the HCDSS as a entity within the four corners of the definition of an "interested person," Maryland Rule 10-201(a) and Rule 10-103(f). HCDSS by Maryland Rule, by way of definition did not have the requisite standing under Maryland law to file a petition for guardian of the person for Dorothy Dier.

The waiver of rights granted by the United States Constitution such as right to **Jury trial and right to be Present**, both also specifically addressed and granted under Maryland law(see Md. Ann. Code, Estates & Trusts 13-705(e) and Maryland Rule 10-205(b)(1)) in guardian of the person actions, are matters of great concern and to be jealously protected, and therefore their *waiver* is a matter of great importance with full examination by the court and complete disclosure by counsel required. However, the Howard County Circuit Court embraced court appointed counsel presenting incorrect and misleading information before him as regards the purported waivers and further commented to Interested Person Jerry L. Dier as regards Dorothy Dier's right to a jury trial,

> The Court: Let—let—let me make sure I understand. The
> Only thing your entitled to a jury trial on, if I understand it, is
> Whether or not you need a guardian. All right. That's—when
> That's, you know, you—need a guardian.
> Are you telling me today that you think there's a serious--
> Question about whether or not your—
>
> Mr. Dier:
> I'm telling you –
>
> The Court:
> --your mother needs a guardian?

11

Clearly the court had prejudged this matter as evidenced by this statement made on

February 2, 2006, weeks in advance of trial. Therefore, the court was indifferent to the

fact that Dorothy Dier had a right to be present and was entitled to a jury trial under

Maryland law, and that court appointed counsel had mislead the court by misrepresenting

in his Answer to Petition that Dorothy Dier *waived* her right to be present and right to

a jury trial, as well as Dorothy Dier's desire to have a court appointed guardian of

person- WITHOUT CONSULTATION. The mindset of the Howard County Court was

clear and unambiguous, a jury trial was not needed because he had already made up his

mind to appoint a guardian, which required that he not a jury be the fact-finder.

## COURT AS AN ADVOCATE AND PARTICIPANT

> ...it's clear to me beyond co-eval that your mom is— is well within the
> range of people that seriously need a guardian?" What is –I mean the
> only—to me the only real question is whether the guardian is going to be
> you, your sister or the Office of Aging or someone else.

The court had become a full fledged participant, an advocate for guardianship in these

proceedings, Thereby setting up a framework where he became the judge of his own

advocacy to the harm of the person before him, Dorothy Dier. The question of the

ineffective representation became a non-issue before him.

This case presents an example of extreme conduct on the part of court appointed counsel

embraced by the court, wherein, at no time from the inception of these proceedings to

their conclusion, was Dorothy Dier "provided with legal representation contemplated by

Maryland law or the Rules of Professional Conduct." **Lee** at 441.

The Howard County Circuit Court praised Mr. Doyle's conduct as exemplary throughout

the proceedings and felt so secure in his position within the Maryland Court system as to

appoint Mr. Doyle in a further case, guardian of property as regards DOROTHY DIER.

Apparently the notion of Judge Sweeney's belief system was grounded in the "inherent

powers" of a Court, sweeping away both English Common Law and American

jurisprudence. In all due respect to his office, Judge Dennis M. Sweeney, State of

Maryland, Howard County Circuit Court, is accountable to the Rule of Law and his

conduct is to be measured not by the color of his robe but by the content of his actions.

## COURT PROCEDURAL HISTORY

:

**The Court moved the petitioner, Howard County Department of Social Services to
Stipulate and it Agreed as regards the Good Character of Interested Person Jerry
L. Dier and the Court further stated that if DOROTHY DIER'S Intent and Will
were to be given weight she would want her Son as Guardian**

1-DOROTHY DIER was found by the State of Maryland, Howard County Circuit Court

Case No. 13-C-0563324, after a trial by the court, March 7, 2006, to be disabled and

incapacitated with no other reasonable alternative available, other then the appointment

of a guardian of the person. The trial court further specifically held that her son, Jerry L.

Dier was the most caring and concerned son he had ever seen and seasoned counsel for

the petitioner, Howard County Department of Social Services immediately so

**STIPULATED** to the same. In addition, the court stated that if this was choice for

Dorothy Dier to make, she most definitely would choose her son, Jerry L. Dier, not some

stranger. However, in pertinent part, the Judge Dennis M. Sweeney ordered

> WHEREAS, this Court has found by clear and convincing evidence
> That Dorothy Dier lacks sufficient understanding or capacity to make
> Or communicate responsible decisions concerning her person because
> Of a disability as defined in the Md. Code Ann., Est. & Trusts 13-705,
> The nature and disability being Dementia; and

> WHEREAS, the Court finds that it is in Dorothy Dier's best interests
> To have a Guardian of the Person appointed; and

WHEREAS, the disabled person needs a Guardian of the Person and
There is no less restrictive form of intervention available which is
Is consistent with the person's welfare and safety, and it is therefore

ORDERED, THIS 7TH Day of March 2006, by the Circuit Court for
Howard County, that Phyllis Madachy, Director of the Howard County
Office on Aging, or her successor or designee, 6751 Gateway Drive,
Columbia, MD 21046 be and is hereby appointed Guardian of the
Person of Dorothy Dier with all of the rights enumerated in Md. Code
Ann., Estates & Trusts 13-708; and it is further

ORDERED, that the Guardian of the Person may consent to medical,
dental, or other professional care, medication, including psychotropic
medication, counseling, treatment, services, or admission to a nursing
home for the disabled person..

At trial, on March 7, 2006, in response to Jerry L. Dier's attempt to introduce a tape

recording of mother speaking to him in a most caring and loving fashion as only a mother

can for her child, the following exchange took place between Jerry L. Dier, Judge Dennis

M. Sweeney and counsel for the petitioner, Ms. Heydon

MR. DIER: --It's love, care and affection, Your Honor.

THE COURT: --And your mother loves you. I have no doubt that your mother
Loves you tremendously, and I'm not being facetious here--

MR. DIER: If you hear--

THE COURT: Because it's obvious.—

MR DIER: --The tape...

THE COURT: --It's obvious to everybody in this proceeding that you have
The closest, most intense relationship with you and your mother. That is a
A given as far I'm concerned. That is a fact I would find, I will find, and
I think the Petitioner could probably **STIPULATE**. And is that correct Ms. Heydon
[counsel for the petitioner, Howard County Department of Social Services].

MS. HEYDON: YES, it is, Your Honor.
*********************************************************************

THE COURT: I have no doubt that—your mother would have designated

14

Either you or Michele, your sister, to be the people to make those
Decisions. I have no doubt about that, that your other would have done
That, and would certainly not have designated a public agency to do so . ...

PLAINTIFFS submit that there was not even the **appearance** of justice in this case. The

linkage between the trial court and court appointed counsel has been in part set forth and

it will be further shown in this Petition in unmistakable and in shocking detail, so as to

constitute a fatal" "structural" defect in these proceedings that rendered the March 7,

2006, trial by the court depriving DOROTHY DIER of her rights guaranteed and

protected by the United States Constitution, namely those rights set forth in Fourth, Sixth,

Eighth, and Fourteenth Amendments.

2. On September 28, 2005, a petition for the appointment of a guardian of the person,

Case No. 13C-05-63324  was filed by the Howard County Department of Social Services

in State of Maryland, Howard County Circuit Court. On October 4, 2005, the trial court

appointed Anthony Doyle, as court appointed counsel for Dorothy Dier.

a- Immediately upon being notified of this proceeding Jerry L. Dier, the son of
DOROTHY DIER an attorney licensed to practice law in the State of Maryland entered
his appearance as counsel for his mother and filed a Response to said petition.

b- At the initial hearing on October 14, 2005, the trial court removed Jerry L. Dier as
counsel finding that his role as counsel would be inconsistent with the allegations
contained within the petition which were vehemently denied by Jerry L. Dier, And later
implicitly found by the court to have been **Abandoned** by the petitioner due to their
failure to produce evidence at trial or at any proceeding consistent with the rules of
evidence, as well as removed from the case by way of Stipulation concerning the
character of Jerry L. Dier, as suggested by the court.

c- However, the trial court allowed Jerry L. Dier to fully participate in the proceedings as
an **INTERESTED PERSON**.

d- Said petition required two physician certificates(Maryland Rule 10-201©)(10) and 10-
202, and both filed certificates were founded on observations and care rendered in the
Washington, D.C., at Sibley Hospital in September 2005, and gained absent compliance
with Maryland law, and without the consent of the Dorothy Dier or her children.

**Petitioner's Abandonment of Allegations Founding the Petition as Regards Interested Person Jerry L. Dier and Physician Certificates Constituting in the main the heart of the September filed Petition Relying at trial in the main on the testimony of a WHC doctor who testified about his analysis and examination while Dorothy Dier while at the WHC, in Washington, D.C.**

e-The petitioner, Howard County Department of Social Services **ABANDONED** Allegations contained within said petition concerning Jerry L. Dier, as to both its failure to produce evidence

> THE COURT: Well, I think we're bound by the –we can't take representations of  what you say other testimony would be that you[petitioner] haven't presented, So –

and its voluntary entry into the **Stipulation** set forth in  paragraph 1, above, concerning the love, care and devotion of Jerry L. Dier toward his mother, DOROTHY DIER.

In addition, the petitioner further **ABANDONED** the heart of its filed petition. The attached to petition physician certificates filed on September 28, 2005, secured without consent of Dorothy Dier or her family apparently done in  the early morning hours to avoid detection, were deemed inadequate by the petitioner as it filed a second set of physician certificates on February 1, 2006 to correct their deficient presentation in said attached to petition physician certificates. However, there is no support in the law for this attempted corrective filing with a second set of physician certificates. Maryland Rule 10-202(a) requires, "shall include" physician certificates be attached to petition and said physician certificates cite examinations that "shall occur" within twenty one(21) days of the filing of the petition. Said second set of physician certificates bearing examination dates of January 27, 2006, did not meet the timeliness standard set forth in mandatory language under Maryland law as cited above.

**Second set of physician certificates secured and used by the petitioner contrary to law**

f-The petitioner secured a new set of physician certificates which were again secured contrary to Maryland law, in that 1- if the first set were deemed inadequate the petition should have been immediately dismissed not meeting the filing standards for a guardianship of the person petition, 2-there was an outstanding REQUEST FOR PROTECTIVE ORDER filed by Interested Person Jerry L. Dier at the time the second set of physician certificates were completed. This second set of physician's certificates were  gained on January 27, 2006. At the time the second set of physician certificates were secured there was an outstanding Motion for a Protective Order pursuant to Maryland Rule 2-403 and Rule 2-423 filed by Interested Person Jerry L. Dier, on December 30, 2005, to protect his mother' right to privacy. The Howard County Court ignored this breach of duty, faith and legal obligation by the petitioner required in Maryland Rule

2-423. **Mental or physical examination of persons,** and resorted to self help bypassing the process of judicial review and notice set forth . In resorting to self help the petitioner intruded on a most private right, the right to ones own thoughts and thought process without invasion from a governmental agency. The Howard County Court's response to this invasion of privacy and action contrary to court rule was,

> The Court: There is Mr. Dier's request for a protective order
> Pursuant to Rule 2-403 regarding mental examinations of
> Mrs. Dier. I am denying that order and I think it, In fact is
> Is moot, but I will deny that order.

3-At the initial hearing, October 14, 2005, initial hearing, October 14, 2005, court

appointed counsel acknowledged in response  to Jerry L. Dier's inquires, questions

and representations that the affirmative statements in his filed Answer to

Petition and his statements to the court, on their face purportedly expressing

the desires and wishes of DOROTHY DIER and placed under his signature, including but

not limited to a waiver of Jury trial, a waiver of right to be Present and expression of

DOROTHY DIER'S desire to have a guardian of the person appointed were made

**WITHOUT CONSULTATION** of his court appointed client, DOROTHY DIER.

Clearly this conduct was not part of a legally recognizable protective plan to assist his

client, but were shockingly part of a process to expedite a case quickly through the court

system with as little being contested as possible. The court now armed with full

knowledge stated,

> "But I think there's a lot of things here and like, for example Mr.
> Doyle has not been, for whatever reason, has not been able to see
> the disabled person. ...,"

BUT took no action to remove court appointed counsel Thereby sending a strong

message that he had embraced the conduct of court appointed counsel which was plainly

unrelated to advocating the position of his client..

**Attentiveness/Participation of Court Appointed Counsel and Lack of Effectiveness**

4- The degree and fashion of Attentiveness of Anthony Doyle, court appointed counsel

during proceedings where DOROTHY DIER'S interests were at risk were demonstrated

by comments of the court, for example a-on October 25, 2005, the trial court admonished

court appointed counsel asking him **"Are you awake**?," after commenting

that he had found court appointed uncharacteristically silent, and b- during the

trial on March 7, 2006, the trial court had to further make inquiry of a silent court

appointed counsel by asking him, **"Are you all right."**

**Court appointed counsel walked out on his client DOROTHY DIER and the
Proceeding Continued with the Court's Permission when Important Substantive
Issues as regards his Client were being Discussed as well as her health, safety and
well being**

5- In addition, during a hearing on February 2, 2006, as regards the health, safety and

well-being of his client DOROTHY DIER, who had been moved from Washington D.C.

pursuant to Court order the day before to the Summit Park Nursing and Rehabilitation

Facility in Baltimore County by the designated agent of the court, the State of Maryland,

Howard County Office of Aging. Ophelia Ross managed said move, without having

performed due diligence pertaining to ascertaining the suitability to meaningfully meet

DOROTHY DIER'S needs. Anthony Doyle's participation in this hearing was marked by

his request for permission to leave the courtroom by the backdoor during the hearing, he

had a meeting to attend, and was excused by the trial court, the hearing continued in his

absence and he returned approximately 30 minutes later.

MR. DOYLE: Your Honor, let me interrupt. I've got a meeting to--

THE COURT: Oh yeah, you need to—

THE COURT: Yeah, why don't you—why don't you take—

18

MR. DOYLE: **Can I go out the back door**?(emphasis added).

THE COURT: **Sure**.(emphasis added).

**Court appointed counsel only asked Five questions of a Secondary witness for the petitioner throughout the whole of petitioner's case**

6- During the March 7, 2006, trial by the court, court appointed counsel in addition to conducting himself as referenced in above paragraphs 3-5, court appointed counsel only asked Five(5) questions of a secondary witness during the whole of the petitioner's case, and moreover, these 5 questions were only asked after being admonished by the trial court as referenced in paragraph 4.

7- The trial court's finding included what is referenced in paragraph 1 as regards Jerry L. Dier being described as the most concerned and caring son he had ever known, so Stipulated by the petitioner and that if the choice was one to be made by DOROTHY DIER she would most certainly want her son to continue to assist her as he always had. However the trial court found DOROTHY DIER'S son was overly optimistic in his expectations concerning his mother and therefore there was no reasonable viable alternative available, Thereby requiring the appointment of guardian of the person for DOROTHY DIER. The court appointed the Howard County Office of Aging, as Guardian of the person for DOROTHY DIER, the agency that had mismanaged DOROTHY DIER'S movement to Summit Park(1502 Frederick Rd). By happenstance, Summit Park turned out to be, **ACKNOWLEDGED BY JUDGE SWEENEY**, only three houses away from where his sister lived and then miraculously only a few blocks away from the office of Anthony Doyle(1002 Frederick Rd.), the counsel appointed by the trial court in this matter. Both Judge Sweeney's

sister's residence and the office of Anthony Doyle were in Catonsville, Baltimore
County.

8- An appeal to the Court of Special Appeals for Maryland followed,

captioned Jerry L. Dier v. Phyllis Macdachy Guardian et al.

No. 236, September Term 2006. The decision of the Howard County trial court was

affirmed, the opinion filed April 18, 2007, on a Notice of Appeal in a

guardianship matter wherein an **Expedited Appeal** had been noted on or about March 29,

2006.

**Same court appointed counsel appointed in subsequent guardian of property case**

9-While the appeal was pending a guardian of the property of DOROTHY DIER action

was filed by Summit Park. The same trial court as in the guardian of the person action

was assigned to the guardian of property action(Case No 13-06-065465 ). The trial court

appointed in turn the same attorney, Anthony Doyle for DOROTHY DIER. This is the

same Anthony Doyle who at the best could be said to have done no good for his court

appointed client DOROTHY DIER, while conducting himself under the apparent

protection of the court in a manner and fashion consistent with the trial court's clearly

noted preconceived notion of how guardianship actions should be processed in his

system pursuant to his sense of justice. The trial court's appointment of Anthony Doyle

sent a strong message, right in your face to DOROTHY DIER and her son Jerry L. Dier,

in that the guardian of person case was pending in the Court of Special Appeals for

Maryland with the issue of the lack of effectiveness of court appointed counsel front and

center. The trial court apparently deemed itself **Untouchable** in the **Maryland Court**

**System and thus far this has proven correct.**. Judge Sweeney's further appointment of

20

Anthony Doyle for DOROTHY DIER had the effect **Casting a New Light**, by bringing

to the forefront matters such as lack of impartiality by the trial court front and center

which now clearly reached well beyond the previously thought constitutional dimensions

of effective assistance of counsel and a terribly misguided court to a **NEW AND EVEN**

**MORE DANGEROUS ARENA** where **NOW** it was apparent that court action and

attorney conduct were joined at the hip and the **Rule of Law** had been caste aside.

**Request that trial court recuse itself in the guardian of property case**

DOROTHY DIER'S son, Jerry L. Dier requested that the trial court recuse itself, that

issue amongst others is presently pending before the Court of Special Appeals for

Maryland, No.1595, September 2006 Term, from the proceedings going point by point

demonstrating a clear and unmistakable signature that something had terribly gone

wrong, justice was nowhere to be found, and the rule of man had prevailed over the Rule

of Law.

It surely cannot be argued that an alleged disabled person deserves fewer procedural and

substantive safeguards than an accused criminal in proceedings seeking to cause a

deprivation of life, liberty and property. The Court of Special Appeals for Maryland in <u>In</u>

<u>Re Sonny E. Lee</u>, 754 A.2d 426, 438 and 439 (Md. App. 2000) in discussing the role of

counsel and his duty to protect his client's interests held,

> Due process demands nothing less, particularly as here, when the alleged
> Disabled person faces significant and usually permanent loss of his basic
> Rights and liberties. See *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct.
> 893, 902, 47 L. Ed. 2d 18 (1976) (stating that the "[t]he right to be heard
> heard before being condemned to suffer grievous loss of any kind even
> though it may not involve the stigma and hardship of a criminal conviction

is a principle basic to our society") (quoting *Joint Anti-Fascist Comm.*
*v. Mc Grath*, 341 U.S. 123, 168, 71 S. Ct. 624, 646 95 L. Ed 817 (1951)
(Frankfurter, J. concurring); see also *Lassiter v. Department of Soc. Servs.*
*of Durham County, N.C.* 452 U.S. 18, 26-27, 101 S. Ct. 2153, 68 L. Ed 2d
640 (1981), *reh'g denied*, 453 U.S. 927, 102 S. Ct. 889, 69 L. Ed.1023
(1981). In a guardianship proceeding effective representation by counsel
insures that the proper procedures are followed by the court. ...

In the case at bar, the trial court and court appointed counsel acted as "one" with the trial

court driving the train with no one but Interested Person Jerry L. Dier, the son of

DOROTHY DIER to attempt to protect and safeguard his mother's guaranteed rights

under the United States Constitution, with the trial court and court appointed counsel

thwarting the due and just exercise of those rights at every step, placing DOROTHY

DIER'S right to a Jury trial, U.S. Constitution, Sixth Amendment, beyond her reach, so

as to make certain that their voice would be the only one heard.


## JURISDICTION AND VENUE

### Jurisdiction

**10-This action** arises under the United States Constitution, particularly the on the Sixth,
Eighth and Fourteenth Amendments, Article I, Sect. 9, Habeas Corpus, and under
Federal law, specifically, Title 28 U.S.C. Sect. 2254 and Title 42 U.S.C. Sect. 1983. This
court has jurisdiction over PLAINTIFF'S claims relating to the State of Maryland,
Howard County Circuit Court, Judge Dennis M. Sweeney's conduct holding DOROTHY
DIER disabled, and appointing as guardian of the person, State of Maryland, Office of
Aging, Howard County relating to PLAINTIFF'S' civil claims arising under the United
States Constitution and federal law pursuant to 28 U.S.C. 1331, 28 U.S.C. 2254 and 42
U.S.C. 1983. Each and all of the acts alleged herein were done by the Defendants under
the color and pretense of state law, statutes, ordinances, regulations, or customs.


### Venue

**11-** Venue is proper under 28 U.S.C. Sect. 1391(b)(2) , the United States District Court
for District of Columbia is clearly the District Court in which a "substantial part of the
events or omissions giving rise to the claim occurred," the *events* wholly taking place in
the District of Columbia which gave rise to the claim set forth, to wit, a total and
complete departure of jurisprudence as guided by the principles set forth in the United

States Constitution depriving DOROTHY DIER of her right to privacy,   right to effective assistance of counsel, a fair and impartial court, right to jury trial, right to be present, due process of law resulting in her being placed in the legal custody of the State of Maryland, Howard County Circuit Court and its agent the State of Maryland, Howard County Office of Aging subjecting DOROTHY DIER to  drastic and most uncommon restraints upon her freedom taking the form in part of cruel and unusual punishment. Said deprivation of DOROTHY DIER'S protected rights guaranteed under the United States Constitution could not have take place *but for* the "substantial events" taking place wholly in the District of Columbia.

## THE PARTIES

Plaintiffs

12. Plaintiff Dorothy Dier is a citizen of the United States and pursuant to State of Maryland, Howard County Circuit Court order is in custody residing at Summit Park in the State of Maryland, Baltimore County.

13. Plaintiff Jerry L. Dier is a citizen of the United States and the natural son of DOROTHY DIER.

Defendants

14. Defendant Office of Aging, Howard County, State of Maryland is the court appointed(State of Maryland, Howard County Circuit Court) guardian of the person for DOROTHY DIER.

15. Defendant Judge Dennis Sweeney is presently a Howard County Circuit Court Judge, State of Maryland. He is named in his official capacity as regards his conduct under color and authority of state law.

## SUMMARY OF FACTS

### State of Maryland, Howard County Circuit Court-The relationship between the trial court and court appointed counsel

16- The chronology of court proceedings in Howard County Circuit Court is as follows,

a-petition for guardian of the person filed in Case No. 13 C-05-063324, September 28,

2005, Anthony Doyle appointed as counsel for DOROTHY DIER, October 4, 2005, b-

initial hearing, October 14, 2005, wherein it came to Judge Sweeney's attention that court

appointed counsel in his Answer to Petition under his signature and in his

representations in open court had misrepresented to the Court that DOROTHY DIER had

"waived" her rights under the United States Constitution to Jury trial, and to be Present,

and in addition had affirmatively stated that DOROTHY DIER desired to have a guardian

appointed by the court as well as other factual statements concerning allegations in the

petition for guardian of the person, ALL DONE WITHOUT CONSULTATION OF HIS

COURT APPOINTED CLIENT, c-October 25, 2005, status hearing, d-December 7,

2005, status hearing, e- status hearing, January 4, 2005, f--temporary guardian of the

person hearing, January 23, 2006, g--status and motions hearing, February 2, 2006, h-

trial by the court, March 7, 2006 and order appointing guardian of the person entered

March 7, 2006, i-Appeal to Court of Special Appeals for Maryland No. 236, September

2006 Term, opinion affirming trial court dated April 18, 2007, j- guardian of the property

action filed in Howard County Circuit Court, Case No. C-13-06-065465, May 16, 2006,

k- Anthony Doyle appointed by the trial court as counsel for DOROTHY DIER, May

25,2006, l-guardian of property trial continued without informing Interested Person Jerry

L. Dier, he appeared in court, September 6, 2006 to September 22, 2006, m- guardian of

property hearing including both a recusal request and trial, September 22, 2006, n—

motion for reconsideration and Supplement filed on September 25, 2006 and September

27, 2006, respectively o-memorandum and order by the court denying said motions

denied, dated September 27, 2006, p-court order appointing a guardian of property court

entered October 4, 2006, q- appeal filed on or about October 5, 2006, Appeal No.

1595, September 2006 Term, and r-Court of Special Appeals affirming trial courts

decision, opinion dated April 18, 2007...

17- Anthony Doyle, court appointed counsel for DOROTHY DIER filed an Answer on

24

October 14, 2005, WITHOUT CONSULTATION **waiving** DOROTHY DIER'S right

under the United States Constitution to Jury trial, right to be Present, affirmatively stating

that DOROTHY DIER wanted a guardian of the person appointed as well as making

factual representations as if they were those of DOROTHY DIER regarding allegations

within said petition.

18- Anthony Doyle acknowledged the conduct described in above paragraph 17, which

was consistent with the nature and fashion which the trial court evidenced by this

statement on September 22, 2006, AS REGARDS Anthony E. Doyle's further

appointment by Judge Sweeney in a guardian of property action, which by the nature of

the timing of the filing and the hearing could not be available to Mr. Dier at either the

trial, March 7, 2006 or during the attendant subsequent appellate filings. Judge Sweeney

in a sweeping action of partiality and an utter disregard for the Rule of Law stated the

following in response to Mr. Dier's fact based assertions as regards Anthony Doyle

concerning the breath of Anthony Doyle's representation of DOROTHY DIER under

Judge Sweeney's stewardship

     [The court] As to the allegations regarding—suggested that Mr. Doyle
is not adequately performing his function, the Court has, for the past
15 years, has utilized Mr. Doyle as well as every other judge of this
Court, to my knowledge, in Court appointments and his competence
And abilities and –are well-known to the Court to be more than adequate
And quite frankly, that's one of the reasons that, not only myself, but other
Judges of this Court, have—frequently appoint him as well as taking the
Time to do it.

Judge Sweeney's statement in support of Anthony Doyle can be reasonably interpreted as

a defense of himself. The words and actions by the Howard County trial court are

indefensible if the Rule of Law is to be upheld and human dignity, the interests of justice

and the integrity of the judicial process are deemed worthy of protection by those who are

empowered to monitor it and afford protection, not abuse, to those innocents that come

under vast umbrella.

19- At a brief status hearing on October 25, 2005, the trial court admonished court appointed counsel for being uncharacteristically silent, asking him if he was awake?

20- At a status hearing on February 2, 2006, when matters such as the care, safety and well being of court appointed counsel's client, DOROTHY DIER were being discussed as well as the sufficiency of the petition and the adequacy of his representation Anthony Doyle, after twenty or so minutes, when he was in the main silent, interrupted the hearing requesting that the trial court allow him to attend a meeting and exit by the back door and the court agreed. Relevant and potentially critical matters such as Summit Park's prior history and independent evaluations of its care structure were brought to the court's attention by Interested Person Jerry L. Dier, which included an article noting that some years earlier Summit Park was by its paperwork seemingly providing good care for a patient, but for one most important matter, the patient had passed away some time earlier. More than being grossly ineffective and acting as a agent of the court, court appointed counsel's absence, not just that of DOROTHY DIER, the subject of the proceeding was deemed by the trial court to be unnecessary.

> THE COURT: Sure. ... We can go on without
> Mr. – without Mr. Doyle. All right go ahead[to Mr. Dier].

21- Furthermore, during said February 2, 2006, status/motions hearing the trial court noted familiarity with Summit Park, stating that his sister lived only three houses from it and that he thought he had been inside said facility. See paragraph 34 for further detail.

22- On February 2, 2006, when discussing the financial status of DOROTHY DIER with Mrs. DIER'S daughter, Michelle Lyons, the trial court stated that one can not expect

Mercedes Benz treatment on a Chevrolet budget. The trial court did not understand the nature of his obligation as judge, the issue being not whether DOROTHY DIER should reasonably expect the best treatment and care in accordance with her needs, but would she get the kind of treatment and care that was reasonably consistent with her needs and condition.

23- The trial court further stated that it had knowledge about Summit Park gained separate and apart from the four corners of the judicial proceeding before it and t instead of appointing an independent investigator, or recusing himself, the trial court stated it was not going to make any judgments. The nature and scope of the trial court's prior contact with and the information gained from that contact, or in any other manner was not further addressed by the court at that time. See paragraph 34, its development.

24- The trial court found that even though he acknowledged and the petitioner so Stipulated that Jerry L. Dier, DOROTHY' DIER'S son was the most caring and loving son that he had ever heard of and that if DOROTHY DIER was given the choice she would most certainly choose him as her guardian, however he chose the Office of Aging, Howard County as the guardian of the person for DOROTHY DIER, the governmental institution which mismanaged the placement of DOROTHY DIER at Summit Park, outside its geographical area of familiarity.

25- In the guardian of person action, DOROTHY DIER was **not present** and her absence was not addressed at the guardian of the person status hearings, October 25, 2005, December 7, 2005, January 4, 2006, the so called emergency guardian of the person hearing, January 23, 2006, the status/motions hearing, February 2006, and the trial, March 7, 2006. In addition, DOROTHY DIER was not present during the

September 22, 2006, recusal hearing and guardian of property trial.

Judge Sweeney's October 4, 2006, Court order pertaining to the guardian

of the property trial, reads in pertinent part,

> The Court finds after hearing, that the disabled person cannot be
> present because of physical and mental incapacity

However, the trial court did not hear or address at trial the issue of DOROTHY DIER'S

**absence** from the  September 22, 2006, recusal hearing and trial by the court. This was a

continuation of the trial court's conduct throughout these proceedings depriving

DOROTHY DIER of her rights under the United States Constitution as if she was a non-

Person, seeming an after the fact cover-up.

Judge Sweeney's earlier filed Court order, March 7, 2006, in the guardian of person

action, reads in pertinent part,

> WHEREAS, the Court finds that the disabled person cannot be present
> Because of a physical or mental incapacity and is unable to consent to
> The appointment of a Guardian of the Person; and

DOROTHY DIER did not attend either the trial or any of the proceedings in this action

for guardian of the person and **no  required inquiry** was made regarding her absence by

the Court or an explanation offered by her court appointed counsel, but for initial

representations in court appointed counsel's Answer to Petition filed Without

Consultation with his client.There is an affirmative obligation under Maryland law for the

trial court to properly inquire and for court appointed counsel to assist if appropriate

under Maryland law as regards the status of the person before the court, at each and every

hearing

> Presence at hearing; presentation of evidence; closed hearing; sealing, … .
> The person alleged to be disabled is entitled to be present at the hearing
> Unless he has knowingly and voluntarily waived the right to be present
> Or cannot be present because of physical or mental incapacity. Waiver
> Or incapacity may not be presumed from nonappearance, but **SHALL**

(emphasis added) be determined on the basis of factual information supplied to the court by counsel or a representative appointed by the court. Md. Ann. Code, Estates and Trusts 13-705(e).

### New Information that Came to Light after the Guardian of the Person Proceedings that Directly Related to the Relationship Regarding the Trial Court and Court Appointed Counsel

26- Summit Park filed a petition for guardian of property for DOROTHY DIER on May 16, 2006, in State of Maryland, Howard County Circuit Court.

27- The same trial court, Judge Dennis M. Sweeney, State of Maryland, Howard County Circuit Court appointed Anthony Doyle as court appointed counsel for DOROTHY DIER in a guardian of property proceeding initiated by Summit Park, a purported creditor- petitioner who had no standing under the law in the State of Maryland to file said petition. (Maryland Rule 10-301(a) Who may file. The trial court's reasoning seemingly was that DOROTHY DIER would have to pay for care and treatment wherever she was and since she was where the court placed her, that place Summit Park should be paid, and Summit Park was the best entity to bring this request before the court even if in the form of a guardian of property action, a concern beyond the bounds of the proceeding.

28- The guardian of property petition stated that DOROTHY DIER resided at Summit Park in Baltimore County, so as to place DOROTHY DIER by admission of the creditor/petitioner Summit Park outside the venue of the Howard County Court. Maryland Rule 10-301(b) Venue, which defines 'venue' in terms of where the subject resides at the time of the filing of the petition, outside of the jurisdiction of the Howard County Circuit Court. The trial court's reasoning was that was just a mere technicality, since it[the Court] had placed DOROTHY DIER OUTSIDE its jurisdiction.

29- On September 22, 2006, during the guardian of property hearing the trial court demonstrated an inability to acknowledge for whatever reason the reality of the legal ramifications of its conduct that seemingly had its origin in its inability to act as a fair and impartial judge, so as assure the orderly administration of justice consistent within the framework of the Rule of Law, and in its place the trial court resorted in its Memorandum and Order denying(September 27, 2006) the request of Interested Person Jerry L. Dier for Reconsideration and a Supplement thereto, to the long discarded tactic of labeling and avoidance, rather than judicially addressing the important issues pertaining to a guardian matter where the rights of an alleged disabled person are most in need of protection in the form of the conduct of a trial where the Rule of Law must be upheld, rules of evidence accorded their proper place and justice is rendered within the metes and bounds of a justice system whose integrity is unquestioned.

30- Interested Person Jerry L. Dier requested the trial court recuse itself from hearing the guardian of property matter and certify the issue of determination of recusal to the Administrative Judge for the Circuit. The trial court insisted on hearing from Interested Person Jerry L. Dier, as regards the substance of his request and then denied the request for recusal.

31- The substance of the request was the NATURE AND FASHION of the relationship between the trial court, Judge Dennis M. Sweeney, State of Maryland, Howard County Circuit Court, and court appointed counsel, Anthony Doyle, such that moved the seasoned trial court to appoint the same counsel to represent the same person, DOROTHY DIER in a guardian action only months after an earlier guardian action, which was pending before the Court of Special for Maryland, in which the actions of

court appointed counsel and those of the trial court in commenting and regulating the conduct of court appointed counsel were more then just open to question, court appointed counsel's conduct was so much more than ineffective and unethical, yet the trial court re-appointed him to represent DOROTHY DIER.

32- The matters addressed in paragraphs 3 through 6 set forth the issues of court appointed counsel making affirmative representations waiving DOROTHY DIER'S rights under the United States Constitution to Jury trial, right to be Present as well as affirmatively requested a guardian of the person be appointed, ALL DONE WITHOUT CONSULTATION, HIS ANSWER TO PETITION, AND ENTERED IN THE RECORD BY COURT APPOINTED COUNSEL AT THE INITIAL OCTOBER 14, 2005, HEARING WITH BOTH COURT ACKNOWLEDGEMENT AND ACQUIESCENCE. In addition, the trial court admonished court appointed counsel on October 25, 2005, as regards his silence, asking him are you awake, and furthermore, during the March 7, 2006, trial, court appointed counsel having been silent for an extended period of time, the trial court asked him if he was all right and only then did court appointed counsel ask a few questions, five of a secondary witness.

33- During the midst of a February 2, 2006, status/motions hearing with issues concerning the health, safety and well being of his client, DOROTHY DIER, being addressed, court appointed with permission of the trial left by the back door to attend a meeting and the hearing continued.

**The Trial Court acknowledged extra-judicial knowledge as regards Summit Park and took No Curative Action**

34- In addition, during the recusal portion of the September 22, 2006, guardian of

31

property hearing Interested Person Jerry L. Dier brought to the trial court's attention that

he had voluntarily stated at the February 2, 2006, guardian of the person hearing that he

his sister lived on three houses away from Summit Park and he thought he had inside the

facility. The Maryland Code of Judicial Conduct, Canon 3, Performance of Judicial

Duties, Maryland Rule 16-813(D) Recusal reads in pertinent part, followed by a brief

history the Judge Sweeney's contradictory statements concerning his prior knowledge of

Summit Park, during the February 2nd hearing, the September 22, 2006, guardian of

property trial and Judge Sweeney's attempt to explain itself in its September 27th

Memorandum and Order, only creating doubt on its credibility and impartiality,.

> (1) A judge **shall(emphasis added)** recuse himself or herself from a
> proceeding in which the judge's impartiality might reasonably be
> questioned,including a instance when: (a) the judge has **Extra-Judicial**
> knowledge(emphasis added) of a dispute evidentiary fact concerning the
> proceeding;

### February 2, 2006

> I know the place. I think I've actually been in there. My sister lives
> Three houses away from it. So, I know the area. I know the place a
> Little bit.

### September 22, 2006

> I've never been in Summit Park at all.

### Memorandum and Order, September 27, 2006

> The Court did not select the nursing home for Ms. Dier, and had only
> The most general knowledge of the facility, as placed on the record.

### The Attempts of the Trial Court to Craft an Explanation

This series of assertions by Judge Sweeney in addition to his further statements in his

Memorandum and Order dated September 27, 2006, as regards *his* court appointed

counsel, Anthony Doyle, including the trial court's evaluation of his representation and

the linkage of court appointed counsel to the trial court provides further insight into the

trial court's lack of impartiality.

a-the trial court's comments regarding Mr. Doyle being "awake" and "all right," "It in no way reflected any observation about Mr. Doyle's lack of attentiveness." -

b- "Mr Doyle's representation of Ms. Dier in these proceedings has been well within the Court's expectations, and the Court commends Mr. Doyle for his patience and forebearance in dealing with the totally unwarranted accusations and unrealistic demands of Mr. Dier.

c-"Mr. Doyle did not seek the appointment, but took it on as a public service at the request of the Court, as he has done for over 15 years, oftentimes at great personal sacrifice and with only infrequently being paid near the going rate for his services."

## COUNT ONE

Violation of Fourteenth Amendment
Due Process Right to a Fair and Impartial Trial

35- PLAINTIFFS incorporate by reference the preliminary statement and paragraphs 1-

34 as if fully restated here and not limited to the following further state:

36- Judge Sweeney became an advocate for guardianship during the proceeding for

guardian of the person without any concern for due process of law totally and completely

abandoning his rightful role to assure that the conduct of the proceedings protected

DOROTHY DIER'S rights as guaranteed under the United States Constitution.

37- Judge Sweeney acted in concert with his chosen court appointed attorney, Anthony

Doyle in violating and THEREBY denying DOROTHY DIER due process of law.

38- Once Judge Sweeney became an advocate for a guardianship in this action, it became

impossible for Judge Sweeney to maintain his role as a impartial judge. Judge Sweeney

as an advocate apparently realizing that there were substantial shortcomings in HCDSS's

presentation allowed into evidence at the guardianship trial, testimonial and/or

documentary evidence from earlier judicial proceedings under the theory "That's all

incorporated and I'm considering that as part of the whole ball of wax here." Whereby,

the Howard County Court by a declaration of *blanket* incorporation had again caste aside

the Rule of Law so as to reach preordained result.

## COUNT TWO

### Violation of Sixth Amendment
### Right to Effective Assistance of Counsel

39- PLAINTIFFS incorporate by reference the preliminary statement and paragraphs 1-

38 as if fully restated here and not limited to the following further state:

40- Judge Sweeney adopted a standard of competence whose only requirement was to

follow his lead and walk in his footsteps through the court system- so be it that court

appointed counsel paid little if any attention to this matter, such as when he walked out

by the back door to attend a meeting when the health, safety and well-being of his client

\was at issue, when he remained silent throughout lengthy parts of the proceedings

including at trial causing the trial court to comment, "Are you awake?" and "are you all

right?" Thereby violating the protection of DOROTHY DIER'S guaranteed right of

effective assistance of counsel under the United States Constitution. DOROTHY DIER

was not the beneficiary of any positive assistance of counsel by way of Anthony Doyle's

representation whose clearly only interest was to work hand in hand with the court even

if it meant signing a pleading that he knew contained incorrect and misleading

information, Answer to Petition.. Anthony Doyle and the court had worked together for

fifteen years and it is horrifying to think how many times they must have done this dance

together. It was apparent from the first hearing on October 14, 2005, that Mr. Doyle

could do no wrong as long as he did nothing right for his client. Without Consultation, as

Mr. Doyle acknowledged, he had affirmatively represented under his signature in his

Answer to Petition and in open court without pause, embarrassment or seemingly concern

for admonishment and/or punishment that DOROTHY DIER HAD WAIVED HER

RIGHT TO A JURY TRIAL(Maryland Rule 10-205(b)(1) AND TO BE

PRESENT(Estates and Trusts 13-705(e)) AT THE INITIAL HEARING, OCTOBER 14,

2005, AND WITH THESE FACTS AMONGST OTHERS, HAVING BEEN MADE

KNOWN TO THE JUDGE SWEENEY, JUDGE SWEENEY EMBRACED THIS

BLATANT GROSSLY INEFFECTIVE UNETHICIAL CONDUCT AND DECLARE

THAT IT FIT WITHIN THE RANGE OF WHAT HE DEEMED TO BE PERMISSIBLE

AND APPARENTLY EXEMPLARY, NOT REPREHENSIBLE ON THE

PART OF COURT APPOINTED COUNSEL.

41- Judge Sweeney's actions in concert with his court appointed counsel for DOROTHY

DIER denied DOROTHY DIER a fair and impartial trial in violation of the Due Process

Clause of the Fourteenth Amendment to the United States Constitution as well as her

right to Effective Assistance of Counsel, Jury trial and Confrontation under the Sixth

Amendment to the United States Constitution as he purported to act as the impartial trial

judge under color of law.


### COUNT THREE

Violation of Sixth Amendment
Right to be Present and Confront Witnesses


42- PLAINTIFFS incorporate by reference the preliminary statement and paragraphs 1-

41 as if fully restated here and not limited to the following further state:

43- Judge Sweeney gave mere lip service to DOROTHY DIER'S right to be present

protected by the Sixth Amendment of the United States Constitution as well as in

violation of State law, not even addressing the issue of DOROTHY DIER'S presence

made most clear by her absence as the Howard County Court and court appointed counsel

ignored their duty to make a independent evaluation, fact based as regards each hearing

and most emphatically at trial and in its place employed a reference back technique..

44- Maryland Rule 10-212, sheds further light on the right of the alleged disabled person

to be present, .and how far the Maryland legislature has gone to jealously guard the rights

of an alleged disabled person so as not to be deprived of their United States Constitution

rights to life, liberty and property which are in issue in a guardianship proceeding where

the alleged disabled every opportunity to be present.

> Waiver may not be presumed from nonappearance but shall be
> Be determined on the basis of factual information supplied by
> The person's attorney or a representative appointed by the court.
> Upon motion by or on behalf of the person alleged to be in need of
> Of emergency protective services that, because of his or her disability
> The person cannot attend at the courthouse, the court may hold the
> The hearing at a place to which the person has reasonable access.

### COUNT FOUR

Violation of Fourteenth Amendment
Right to Equal Protection of the Law

45- PLAINTIFFS incorporate by reference the preliminary statement and paragraphs 1-

44 as if fully restated here and not limited to the following further state:

46- As set forth in paragraph 44, the State of Maryland has set forth a procedure to

protect an alleged disabled person's constitutional right to be present and confront

36

witnesses at each and every proceeding in a guardian of the person action where

the person has life, liberty and property rights and interests at risk.

47- Denying DOROTHY DIER a fair and impartial trial merely because she was thought

in the trial court's mindset to be incapacitated and disabled, enabling him to

decide questions of fact at his will that were only to be decided after a trial on the

merits,  violating her right to equal protection of the law, under the Fourteenth

Amendment to the United States Constitution.


### Count Five

Violation of Fourth Amendment
Right to Privacy

48- PLAINTIFF'S incorporate by reference the preliminary statement and paragraphs 1-

47, as if fully restated here and not limited to the following further state:

49-The initial set of physician certificates, those attached to the petition at time of filing,

September 28, 2005, were apparently taken pursuant to state action, the HCDSS, without

consent of DOROTHY DIER or her family. The Howard County Court in addressing this

issue stated, "Whatever merit there may be to that, would be the basis for a potential civil

suit against the particular offender under civil rights laws or tort law or otherwise. I do

not see as the basis for suppressing evidence or refusing to consider evidence that is

available to the Court."

50- Moreover, Interested Person Jerry L. Dier had filed a request for a Protective Order ,

Maryland Rule 2-403, on December 30, 2005, after the Office of Aging had attempted to

secure a further physician certificate by falsely representing their authority a nurse who

was caring for DOROTHY DIER and when asked to produce her documentation the representative of Aging left. The Howard County Court stated that it was moot in that it was a *fact accompli*, as if the court was powerless to remedy the unlawful conduct of HCDSS, Thereby placing its notion of both self-help and the appropriateness of deprivation of rights guaranteed under the United States Constitution that it has sworn to uphold, above the Rule of Law.

The proper procedure for a party who is requesting a Mental Examination is set forth in Maryland Rule 2-423, where notice is required, and a time response is available and a judicial determination is required. HCDSS sought to bypass this mandated procedure to protect an individual such as DOROTHY DIER'S' right to privacy, not surprising under the factual context of the complained litigation, where earlier Dorothy Dier's court appointed attorney sought to circumvent rights guaranteed to Dorothy Dier under the United States Constitution by making incorrect and misleading statements including that Answer to Petition under his signature and the Howard County Court warmly embraced such conduct applauding the deprivation of Dorothy Dier's rights under a notion that he knew best, there was no need for the Rule of Law, when the rule of man had the upper hand.

## COUNT VI

### Violation of 42 U.S.C. 1983
### Deprivation of rights secured
### by United States Constitution

51- PLAINTIFFS incorporate by reference the preliminary statement and paragraphs 1-50, as if fully restated here and not limited to the following further state:

52- The federal questions presented in the context of this action have had a direct

38

impact on DOROTHY DIER. Under the color of law the State of Maryland, Howard

County, Circuit Court, Judge Dennis Sweeney, and his delegated agent, the court

appointed guardian of the person of DOROTHY DIER have taken custody and control of

DOROTHY DIER in violation of her rights of life, liberty and property guaranteed and to

be protected under the United States Constitution placing her at substantial risk under the

color of state law, whose integrity is open to serious question due to the conduct of the

trial court and its agents.

**COUNT VII**

**Violation of Dorothy Dier**
**Right to be free from cruel and**
**Unusual Punishment secured by**
**Eighth Amendment, U..S. Constitution**

53- PLAINTIFFS  incorporate by reference the preliminary statement and paragraphs 1-

52, as if fully restated here and not limited to the following further state:

**Background**

Your Petitioner,  DOROTHY DIER was ordered to be moved to Summit Park by Judge
M. Sweeney on or about February 1, 2006. Soon after her arrival at Summit Park
DOROTHY DIER was seen by a psychiatric nurse. Jerry L. Dier had fully explained to
the medical staff at Summit Park and now he further related to said nurse that his mother
had had a mental health breakdown in 1993 when her husband during a second heart
bypass operation developed dramatic complications, his chest wall had to be opened and
closed three times within 24 hours to stop the bleeding. Mr. Dier further stated to the
psychiatric nurse that his mother's present condition was a direct result of her daughter
telling her that she thought she had liver cancer in the summer of 2005. Prior to this time
DOROTHY DIER was eating all founds in substantial portions by herself, talking in
short sentences,  walking without a walker, just requiring at times the finger of her son
for assurance. After this conversation with her daughter, DOROTHY DIER head fell to
the side, she closed her eyes and was silent and from that moment on she lost interest in
her great lover to eat, and walk and talk. The psychiatric nurse was familiar with such
incidents and appeared to want to work with DOROTHY DIER to assist her in dealing
with her depression. Soon thereafter, Jerry L. Dier was informed that the Office of Aging
representative, I believe it was Ms. Rightenauer at the time had stated **No** to any
psychiatric help for DOROTHY DIER. DOROTHY DIER was seen by a physical and
occupational therapist after being at Summit Park for 7-8 months and she was found to
have the ability, even after both her feet in the main had been either locked under her

body or adjacent to her body for extended periods of time, to be able to move each leg 90 plus degrees, the functional equivalent of one's leg position while sitting or driving a car.. The physical therapist, William Moore could not understand why DOROTHY DIER'S legs were being locked to her body in such a manner-the occupational therapist, Christine told Jerry L. Dier that he should educate the staff as regards the attention and care to be given to his mother's arms and legs; **Mr, Moore** told Jerry L. Dier on more then one occasion that he would and had Ordered that DOROTHY DIER'S legs were not to be locked under her body, either with or without the aid of pillows and linen. No matter what the physical therapist said and how Jerry L. Dier protested it fell on deaf ears. On one occasion the charge nurse on the second floor at Summit Park, Mr. Richards told him, let the therapist come up here and stay here if he wants that done. Still, in the end of October 2006, with Jerry L. Dier's constant presence, his mother's strong determination Dr. Bernhard stated to Jerry L.Dier that his mother was healing and on November 5, 2006, DOROTHY DIER was pronounced **WOUND FREE** by Dr. Bernhard, and that he would no longer be seeing her on a weekly basis, but would come by intermittently to look in. Within days of this declaration by Dr. Bernhard, DOROTHY DIER was transferred to the second floor at Summit Park, to be placed under calloused and indifferent heavy hand of **Mr. Richards**, the charge nurse, **Lottie Dorsey** and **Kim Williams** the Unit managers, with the blessing of the representative of Aging, **Ophelia Ross** and the wound doctor, **Dr. Bernhard** who turned a blind eye to what was plain to see taking place right in front of him. It can only be reasonably concluded that DOROTHY DIER transfer to the second floor was by design, a deliberate actions aimed at the systematic breakdown of DOROTHY DIER'S body and spirit-DOROTHY DIER was placed in a room and given a bed and turned to a position making it most difficult for her to even watch TV over the protest of her son, WHICH were then and have been up to now, to no avail.

### Cruel and unusual punishment

54- The State of Maryland, Howard County Circuit Court, Judge Dennis M. Sweeney, by

and through his agents the Howard County Department of Social Services and the Office

of Aging, Howard County have crafted a scheme by design so as to inflict inhumane,

barbaric torturous punishment on the person of Dorothy Dier, reminiscent of Nazi

Germany by placing her in a position in a bed where her legs are either locked under her

body by both placement and the use of pillows and sheets *as lock-in devices* or where one

of her legs, mainly the left leg is placed such that her knee is head high and only a few

inches away from her forehead and her left foot is either locked under right leg or her

body, while her right foot is either locked under her body or her right leg is placed in a

folded position so as to be parallel to the headboard and hugging her buttocks.

### Mr. Richards-December 31, 2006

Either placement is most difficult to describe and beyond pitiful to observe,

as DOROTHY DIER at times yells out in pain most clearly exemplified on December 31,

2006, when her charge nurse, Mr. Richards told Mr. Dier in response to Mr. Dier's

request that he change his mother's position to a more comfortable one, his mother's legs

placed at extreme angles, one leg raised , the other appeared to be locked under her body,

his mother yelling, turning, twisting her body, raising up a few inches and moving her

hands and legs as best she could under the circumstances, while sweating profusely all

over her body most noticeably on her face and on her scalp, while continuously

screaming and moaning. Mr. Richard's reasoning for not doing anything to assist

DOROTHY DIER, was that she was faking, attempting to manipulate the staff to get my

attention. My Mother yelled, screamed and moaned and twisted and turned for over two

hours until she fell asleep while I stood by her rendered helpless by what can only be

described as these monster-like conduct on the part of Mr. Richards,  only able to give

comfort to my mother by talking to her, stroking her forehead and kissing her on the

cheek.

### Judge Sweeney, Office of Aging, Ophelia Ross, Dr. Bernhard

The State of Maryland, Howard County Circuit Court, Judge Dennis M. Sweeney,

Office of Aging, Howard County acting through its designated agents and their Holding

facility, Summit Park are directly responsible for this barbaric torture of my mother.

DOROTHY DIER'S wound doctor, Dr. Bernhnard did and said nothing after both being

### Summit Park In house Physical and Occupational Therapist

told about DOROTHY DIER'S positioning and being further told that the in house

physical therapist had told Mr. Dier time and time again that such positioning was

inappropriate since Mrs. Dier could move both feet 90 plus degrees. On one occasion Dr.

Bernhard said he would talk to the physical therapist who was in-house, later that day Mr.

Dier spoke to the physical therapist and asked him if Dr. Bernhard had spoken to him and

he said No. The physical therapist, William Moore was not seen at the Summit Park

Holding facility again. However, the occupational therapist witnessed much of the

physical therapy given DOROTHY DIER IN THE FALL OF 2006, HER NAME IS

CHRISTINE AND SHE IS BACK PART TIME FROM MATERNITYLEAVE.

**Dr. Bernhard declaration that Dorothy Dier was wound free in late October 2006-
her transfer to second floor, Lottie Dorsey, Kim Williams and Mr. Richards**

Dr.Bernhard had seen DOROTHY DIER'S legs and feet wet and damp, wrinkled, dirty,

with soiled blood stained bandaging, her toes swollen so as to be almost unrecognizable,

her toe nails grown to enormous size, deep wounds along her toe line and on her toes in

both feet and did and said nothing. This taking place within weeks after DOROTHY

DIER had been declared **wound free in late October-early November 2006**  by the very

same doctor, prior to her being moved to the second floor at the Holding facility, only

days later. On one occasion in mid December 2006, Dr. Bernhard after viewing the

breakdown of My Mother's legs and feet as described above, told the staff at Summit

Park who came to see My Mother once per week that she had to be turned on her right

hip in order to protect her left foot that had been locked under her body by the staff on the

floor and her left foot  was in need of immediate attention. Dr. Bernhard directly ordered

such action, however, said order was not followed to any appreciable degree by the staff

42

on the second floor not matter what Jerry L. Dier said and Dr. Bernhard ordered, and Dr.

Bernhard although seeing My Mother on her left hip with continued skin breakdown,

With her left leg and foot either locked under her body with her left foot either under her

body or locked in placed by her right leg and her right leg placed knee high, inches away,

near her nose and forehead with her right leg and foot either locked under her body or

adjacent to her buttocks, never addressed why the staff had not followed his order. The

reaction of the senior medical staff at this Holding facility that came to see DOROTHY

DIER once per week, which included Dr. Bernhard, Lottie Dorsey, a unit manager and

Kim Williams, a unit manager, to Mr. Dier's complaints was to exclude Mr. Dier from

the room when they viewed and talked amongst themselves about Mrs. Dier's condition.

**Mr. Dier's exclusion from his mother's room when the wound team viewed and discussed his mother's condition-he had seen too much**

Mr. Dier's exclusion came after a series of viewings in December 2006 and January

2007, when he had seen that his mother's bandaging was found to be wet, red and brown,

blood stained and soiled, and DOROTHY DIER'S legs were red, wrinkled, and shrunken

and her feet and especially her toes were distorted in appearance almost beyond

recognition with her toe nails grown to enormous length(Mr. Dier had to suggest that

they be cut by a podiatrist), and the Dr. Bernhard and staff had forgotten what treatment

they had earlier ordered and was successful, until reminded by Mr. Dier, and the wounds

on my mother's feet had significantly worsened.. Their acceptance of what they saw in

light of the constant complaints as to what was happening by Mr. Dier coupled with Mr.

Richards barbaric care and treatment of DOROTHY DIER and the failure of the Office of

Aging's representative, Opheila Ross to step up to the plate when she both saw and heard

43

first hand how the person she was to protect, DOROTHY DIER was being mistreated and abused, a total breach of her position of trust given to her by the Howard County Circuit Court which created a process where DOROTHY DIER was made to needlessly suffer, bedridden for months with severe bedsore issues on her feet-the above similar inhumane treatment was inflicted on her hands.

Mr. Dier spoke to Ophelia Ross in his mother's room on December 20, 2006, and showed Ms. Ross and explained in detail how his mother had been mistreated by the staff while on the second floor. Ms. Ross instead of taking immediate corrective action to protect DOROTHY DIER, WHO HAD BEEN ENTRUSTED TO HER CARE. after both receiving and seeing for herself this barbaric treatment, her response was one of delay, to do and say nothing, and the staff's response at Summit Park was to escalate and heighten their mistreatment of DOROTHY DIER, which could not have reasonably taken place without the acquiescence of Ophelia Ross and Lottie Dorsey(Mr. Dier spoke to both of them together before Ophelia Ross left on December 20th, explaining in great detail his mother's condition brought about by an utter disregard for her dignity as a human being. .

## December 20, 2006 meeting with Ophelia Ross and Lottie Dorsey, further mistreatment

Mr. Dier's justified complaints.The above described lack of care and treatment is beyond the pale of societal human standards; it is beyond negligence, gross, wanton or otherwise. The nature and fashion of the conduct described thus far and as further stated all took place with full knowledge and acquiescence amongst others,  Ms. Dorsey, the unit manager, Mr. Richards, the charge nurse. Dr. Bernhard, the wound doctor and Peggy Rigthenauer and Ophelia Ross, the representatives of Office of Aging, and can only be viewed as **CRIMINAL IN NATURE.**

55-Each time Jerry L. Dier would bring these to the attention of the above staff

and the representative from Aging, the worse his mother was treated

as her body was twisted so as to be placed in the most torturous and inhumane of

positions, as she would try mightily to free herself but to no avail.  These people

were experienced in their trade.

Further mangling of Dorothy Dier's body, her hands

56-The above described mangling of the body of DOROTHY DIER in no way

describes the full picture as her window was left open in the winter, her bed was

placed next to the air conditioning blower in the summer, and when turned on her

right hip her right hand was locked under her body causing sores to develop on her

ON HER RIGHT ELBOW AND RIGHT WRIST AREA FROM THE PRESSURE

OF HAVING THE WHOLE OF HER BODY WEIGHT REST ON THESE

AREAS, instead of what Mr. Richards(HAS ALSO RECENTLY DISAPPEARED)

once stated but almost never followed(NOT EVEN BY HIMSELF), was the

right way for my mother to be turned on her right hip, the placement of her right

arm and hand separate from her body. Furthermore, it was common practice for

the staff to lock my mother's left hand locked under her gown which was tightly

wrapped around her body and feet which were locked under her body, SO AS TO

LIKENED TO A STRAIGHT JACKET.

Dorothy Dier's black eye

57-When Mr. Dier found his mother with a black right eye, this was the second time

this had happened, in April 2007, he asked the unit manager at that time Ms.
Williams to find out what had happened. The only response by the Holding facility,
two days later, was that Ms. Williams had not yet had the opportunity to speak to
the people on all shifts-the matter was never raised again. However, immediately
thereafter, Ms. Williams raised the issue with Mr. Dier of how did he know so much
about his mother's bedsore condition on her arms and feet as if his knowledge of
what was there to be seen by anyone who cared was creating a problem for her and
her staff, rather then directing her attention to the prevention of and care for
Dorothy Dier's wounds which were a direct result of what *can only* be reasonably
described from what was observed as an intentional and deliberate scheme on the
part of the medical staff and help at Summit Park Holding facility, so as to inflict
the maximum degree of harm upon the person of DOROTHY DIER. Ms. Williams
statement to Mr. Dier(brought to the attention of Lottie Dorsey by Mr. Dier) were
only a warning of things to come if Mr. Dier was not quiet and dispassionate about
the monsterous treatment of his mother. Mr. Dier's complaint to Ms. Dorsey, that
the messenger was being blamed for the message, was to no avail.

58-When my mother's feeding tube turned black Mr. Dier had to report that matter
to the staff and stay on them to have her taken to the hospital for replacement.

Enter, Dr. Baskeran

59-Recently, August 10th , Jerry L. Dier saw a doctor in his mother's room
that he had never seen or spoken to previously, The doctor identified himself as Dr.
Baskaran, the doctor in charge of medical care at Summit Park. He told Mr. Dier that he
was present as regards a code change, meaning, if the facility should enter a DNR order,

do not resuscitate order in my mother's chart. I told him that I objected and further told him that the degree of contraction that he was observing was a direct cause of staff's placement of My Mother's arms and legs in torturous positions against the advice of the physical therapist, William Moore and Dr. Bernhard(Dr. Bernhard was described to me one occasion by Mr. Richards, My Mother's charge nurse on the second floor, as not being My Mother's doctor, he[Dr. Bernhard] "was like a person who came to cut her toenails"). Dr. Baskeran had seen for himself the unnatural position that My Mother's legs had been placed in by the staff at Summit Park and neither took immediate action to correct the indignity and barbaric treatment visited upon My Mother by a medical staff that he had the direct authority and responsibility to supervise nor any action in the immediate future; apparently, from what I observed it can only be reasonably construed that his only action as a result of his meeting with me was the subjection of My Mother to a greater degree of indignity and pain and suffering by the continued and heightened contorted placement of her hands, legs and feet .by his medical staff at Summit Park. In response to what I had seen and my concern about a possible change in My Mother's DNR order I called Dr. Baskeran on Wednesday, August 15, 2007, and explained to Dr. Baskaran in even greater detail that the care and treatment received at Summit Park could only be described as inhumane and torturous by design and he, as medical director had a direct responsibility to take charge and put corrective measures in place-my pleas fell on deaf ears and were to no avail. Dr. Baskeran had seen in part himself the torture visited upon My Mother and had done Nothing. His heart had hardened, indifference and self-interest had set in, outweighing his oath as a physician. I further told Dr.Baskaran that my 3 to 4 visits per day were based both on my love for My Mother

47

and to afford my mother even a minimal degree of protection from the staff at Summit

Park Holding facility. I also reminded him that under the Order of Judge Sweeney, before

any order such as a DNR could be entered, it had to come directly from the Court. Dr.

Baskeran seemed taken back by this conversation and his tenor of his responses was such

as to tell him indirectly, how dare I question him, the staff under him and his professional

judgment and actions taken based thereon-I attempted to explain to him that whatever I

had said to him was only that of a loving son for his mother. Apparently this concept was

beyond his understanding.

**Unfortunate but most predicatable results from Mr. Dier's legitimate complaints
To Dr. Baskeran and staff**

The result of this conversation was unfortunately predictable. The next morning, August

16 , 2007, I arrived early as usual to see my mother, and was glad to see that her left leg

had been moved to a more acceptable angle and was not under either her body or right

leg, as was the subject of my numerous complaints the day before. However, when I
arrived in the late morning, my second visit, I was told by the receptionist I could not see
my mother and Lottie Dorsey wanted to speak to me. Ms. Dorsey, on this day the acting
director of the facility. She told me that I could not see

my mother and there was an ongoing investigation as regards allegations that I had

somehow changed my mother's position in the bed and something about bandaging. The

next day, Friday, August 17, 2007, there was a meeting described by Ms. Dorsey as

initially a care planning get together. It was self evident that Ms.Dorsey, Ms.

Rightenauer, Ms. Ross and Ms. Hardy, the Director at Summit Park had convened a

kangaroo court, the most severe of punishments was to be inflicted upon My Mother, she

was to be denied the comfort of her son's presence and touch by this Spanish Inquisition

like Gang of 4, plus an unknown person from the facilities social service office.

Mr. Dier's pleas on behalf of his Mother were turned aside by the Gang of 4.

Ms. Ross dictated as if by warrant that my visits were to be limited to three per week.

Apparently during my multiple visits each day to see my mother I had seen too much and

complained to often so as to protect My Mother as best I could from them and their

response was to warn me that if I did not shut both my mouth and my eyes to the truth of

what was taking place, My Mother, defenseless in their hands, not protected by either

Aging or the Court, in fact the only way this gang of 4 could act as it had against My

Mother with me at hand was to act under the protection of both Aging and the Court,

leaving my no avenue of redress. However, I still attempted, in hope of reaching this

gang of 4 at some level of humanity in behalf of My Mother, but my words begging  in

behalf of My Mother were of no use as they fell on stone- Most of all I explained that to

My Mother, my consistent and constant presence meant that she would know, feel and

understand that she had not been forgotten-she was as always and as will

forever be needed, loved, cared about and forever, be the foundation of the Dier family

unit, all to no avail.. This action is consistent with previous non acceptance of criticism

by both the staff at this Holding facility and Ms. Rightenauer and Ms. Ross from Aging,

in that they appear to be not interested in serving DOROTHY DIER'S but instead act

only to protect their own callous indifference. In addition, the Director at Summit Park,

**Director, Summit Park, Jacqueline, unwittingly implicating herself**

Jacqueline Hardy stated to me at the care planning meeting on August 17, 2007, that she

had personally visited my mother a number of times during the short time she had been at

Summit Park, since May 2007, Thereby implicating herself, she could not help but see

what was plain and obvious to the naked eye, the contorted and distorted placement of my mother's hands and legs, in this concerted and orchestrated action to visit harm upon my mother. The history at Summit Park is that Whenever I complain about my mother's care and treatment to them, there is retaliation of one kind or another directed at my mother, such as locking her legs or right arm under body in even a tighter more contorted position-the message was clear, shut up or your mother will suffer for your words. On Wednesday, August 15, 2007, I had reported to the night nurse, Sharon, the day nurse Nicki and the evening nurse, Cindy that my mother's was being placed in a most harmful and hurtful position and that she was trying to move that left leg but could not since it was either locked under her body or her right leg(on one occasion that wee, Nicki the day nurse had to remove a number of pillows which were placed so as to lock my mother's leg left leg and foot in a most unnatural and harmful position). When I told Cindy(phoenetic spelling) in the late afternoon, she and three her other personnel from Summit Park were in the nurses area and by facial expression, body movement it was clear what there combined response was, here he is complaining again and we are going to get him; and Cindy told me that my mother's left leg could not be moved. As I stated earlier I had seen my mother attempt to move the position of that leg by wiggling it from side to side, The next morning, Thursday, August 16th, I found my mother's left leg positioned differently-my mother's left leg could be and was moved to a more humane position as compared to the day before. It now was parallel to the head board, not sticking up straight in the air, as it was on August 15th, folded, next to my mothers forehead, almost pointing at a sign above my mother's head that read that there were enough pillows  present and that there should always be a pillow present to protect all skin areas,

such as one between her folded left leg-the reality was that blood stained linen and soiled

and bloody bandaging were common place rather than obeyance to mere words placed on

their signs and directives.

60-It is most important that My Mother see, hear and talk to me as much as possible, and

this both outrageous and inhumane action on the part of Summit Park and the Office of

Aging which could not take place but for the protective umbrella supplied by the Howard

County Circuit Court. This is an example, tragic for all to see of a branch of government

designed to protect individual rights engaged in conduct orchestrated to strip them of

every vestige of human dignity.

61- It is not unusual for Jerry L. Dier to find his mother throughout the day with gook in

her eyes and throughout her eyelids, her nose stuffed, her face sweaty both in appearance

and to the touch, her hair either matted from sweat or uncombed with large pockets of

dandruff over scalp, so widespread and deep so as to mat my mother's hair to the scalp,

one or both hands locked under her gown, ringing wet, her right hand up against her chest

wall uncovered, skin on skin, in spite of both orders by staff and Dr. Bernhard to the

contrary, as well as a sign above her bed instructing the staff to use pillows, causing both

damage to her hand and chest wall area, a bed sore on her right wrist directly related to

the placement of My Mother's right hand under her body and only made worse after

months of said placement against her chest wall, in addition I have

frequently found my mother sweating profusely and yelling in pain after having been

turned in this manner, the beginnings of a breakdown of the skin on the left arm brought

to the attention of Cindy during the week of August 13th, bruising on my mother's right

shoulder area, seen over the last two weeks, multiple events of bruising under my

mother's right eye and to the left side of said eye, finding scissors and other medical supplies left in my mother's bed, my mother's head being placed on the side railing of the bed, my mother's left knee being placed both on and over the side railing, finding my mother red and flushed and hot to the touch, relating this to the nurse, who finds she has a fever, but also finds that on this very hot day someone had placed the heat on in her room instead of air conditioning. (immediately after changing the temperature condition mother's temperature returned to normal). Blue in color expanders were ordered and received for My Mother's hands, however, they were rarely used, when used they were used improperly, either not inflated at all or only partially inflated and instead of being placed within the hand they were generally placed so as to be hanging from the hand, and instead of being removed as ordered so as to clean My Mother's hands at decent intervals they were allowed to remain in her hands for extended periods of time causing the formation of gook and causing a foul odor.

Sadly, and to the detriment of DOROTHY DIER what has been described is only a brief sampling of the torturous and inhumane treatment such as placing My Mother in a condition with her legs tucked under body and/or her right arm tucked under her body with only a small part of her hand visible, all, soaked in urine, on blood stained lined with discolored bandaging- this has been in the main the normal everyday level of care and treatment received by DOROTHY DIER inescapably by design, orchestrated by the medical and administrative staff at Summit Park, accepted and applauded by the Office of Aging, Howard County and its designated agents who have been named and all of this under the authority, protection and apparently with the blessing of State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney. Ms. Rightenauer, a senior staff

member at Aging was personally informed as early as the summer of 2006 of DOROTHY DIER'S mistreatment at Summit Park when she visited her at St. Agnes hospital after Mrs. Dier was taken there for vomiting a reddish brown fluid substance. Mr. Dier explained to the staff at the Holding facility that the apparatus, the feed pump used was inaccurate, he had personally measured the amount being pumped over time and moreover the medical staff did not properly supervise the timing of DOROTHY DIER'S feeding and as a result My Mother was being overfed causing the vomiting. Mr. Dier's complaints were ignored causing three hospitalizations of his mother during the August and September months, 2006, at which time the medical staff, Dr. Afsal, the head of the G-I Department at the hospital found nothing wrong with Mrs. Dier and completely agreed with Mr. Dier's analysis and statement as regards causation, there being nothing medically wrong with DOROTHY DIER so as to cause that had taken place and Summit Park and had immediately ceased upon her entry to St. Agnes.The third visit was caused by the feed tube being clogged having to do with the appropriate flushing of the tube and giving the patient proper hydration.

**Dorothy Dier's struggle for survival-at this moment her strong will to survive has amazingly overcome the inhumane treatment she has received at the hands of supposed care-givers, at Summit Park, a place known to Judge Sweeney prior to his order condemning Dorothy Dier to reside at such an institution**

DESPITE the torturous conditions that My Mother DOROTHY DIER has been subjected to under the **authority** of STATE OF MARYLAND, HOWARD COUNTY CIRCUIT COURT JUDGE DENNIS M. SWEENEY and his WOULD BE MURDEROUS AGENT, the STATE OF MARYLAND, HOWARD COUNTY OFFICE OF AGING, My Mother has survived and for example on July 31, 2007, during my visit

53

**Dorothy Dier speaks**

I specifically recall My Mother stating to me as follows,

1-My Mother uttered "I, I I", and I said to her, "You mean I love you," and Mom responded, "That's right."
   I said, "Yes"
   Mom responded, "That's right."

2- I asked her, "Do You Want to Talk?" Then after no receiving an immediate response, I said, "no" and
   Mom immediately responded, "yes.".

3-I showed My Mother something I had written, "You are Dorothy Dier."
 Mom responded, "Yes."

 I said, "You are Dorothy Dier."
 Mom again responded, "Yes."

4-I told My Mother that I was her baby
 Mom responded, "Allright," and added, the word ""Yesterday."

 My Mother raised her head, I bent down and My Mother kissed me.

 My Mother said "What Darling"
 I said I love you
 Mom responded looking somewhat upset and disappointed with me, said "Never"

5- I asked My Mother if she loved me and she responded, "Yes."

   My Mother further responded saying, "This is crazy, I, I, I, I love you
   Mom then said , "I love ice," (Mom had been denied liquid refreshment for
   I say, "in the mouth."          Almost two years in spite of the fact that
   Mom said, "Yes."                She had passed ALL swallow tests and
                                   Ophelia Ross, the Office of Aging Representative only
                                   Only three weeks before the insertion of the G-tube
                                   Stated at a January 4, 2006, status hearing before
                                    Judge Sweeney, "She was able to take in about 25
                                    Percent of her breakfast and 100 percent of, like a
                                    Supplement shake." Furthermore, just days prior
                                   To the insertion of the G-tube ordered by Ms. Peggy
                                   Rightenauer, Office of Aging, at the Suggestion of
                                   Dr. DeJonge and others and this was a few days after
                                   My Mother was given
                                   Ice cream by Dr. DeJonge at WHC IN MY
                                   PRESENCE, I ALSO GAVE SOME TO HER, AS A

REWARD
For CORRECTLY ANSWERING HIS QUESTION
As To HER NAME AND WHERE SHE WAS. Dr.
DeJonge personally told me that both he and his
mother had decided that she would not want to live
if she was incapacitated, TELLING ME FAR MORE
THEN HE MIGHT HAVE WANTED CONCERNING
HIS MINDSET ABOUT THE CARE AND .
TREATMENT OF GERIATRIC PATIENTS)

Mom crinkled her nose and smiled at me.

On September 6, 2007, during my scheduled visit, 8 a. m to 10 a.m. I found my

mother covered from her neck to her toe with sheeting, and apparently her hands placed

under her gown as if in a straight jacket, as if My Mother **DOROTHY DIER HAD B**

**BEEN PLACED IN A STRAIGHT JACKET AND TIED UP IN A SMALL**

**PACKAGE,**with her left knee in an inhumane and barbarous position within inches of

her forehead and nose. I explained to My Mother that I am working every moment of

every day to free her from the Summit Park Holding facility and from the iron grip of

Judge Dennis Sweeney and his agent, Ophelia Ross and Peggy Rigthenauer, Office of

Aging. My Mother immediately and violently jerked her left leg, with such force as to

remove the sheet covering her knee, Thereby exposing both her knee and a few inches

below her kneecap. Then and there, I was able to observe a large black and blue area that

I had never seen before. I thanked My Mother for helping me to help her and promised I

would continue my efforts with even greater vigor to set her free, begging her to fight

on. This is what has brought me, My Mother's son, Jerry L. Dier, before this Court.

**The Complicity of Dr. Tansandra, appointed doctor for Dorothy Dier**

During a most recent visit with My Mom, Thursday, August 30, 2007, Jerry L. Dier

found her turned on her right hip with her right arm locked under her body. My Mother's

feet were in relatively normal position to her body, not locked under her body or under each other, Thereby negating any contention that my mother's legs are severely contracted. Jerry L. Dier was able to see her legs when the charge nurse of the day, Sericus(phoenetic spelling) lifted the sheeting to show me My Mother's legs and feet explaining that he would re-bandage them, wound dressing after Jerry L. Dier left. A few minutes earlier Dr. Tansandra, the doctor assigned by Summit Park to look after My Mother, who Jerry L. Dier had not seen or heard from in almost a year, when he was subjected to rigorous cross examination during the guardian of property trial, got a nurse, Sericus to help him and went into my mother's room and closed the door. Dr. Tansandra stayed in Jerry L. Dier's mother's room from 9:15 a.m. to 9:16 a.m. However, when Jerry L. Dier left at 9:50 a.m. Dr. Tansandra was still present sitting at the nurses station on the phone and turned to follow Jerry L. Dier with his eyes as Jerry L. Dier left. Dr. Tansandra had testified at the guardian of person hearing, September 22, 2006 and at best he came across as both incompetent and inept and moreover, his failure of memory as regards the medical history of Dorothy Dier was inexplainable, although more then satisfactory for Judge Sweeney, when it came to Judge Sweeney's attention by Mr. Dier that Dr. Tansandra had been subpoenaed as regards his testimony and said subpoena was a *subpoena duces tecum*, requiring him to bring his medical records as regards Mrs. Dier- he failed to address the issue that his records were with him on his day of testimony, nor did his counsel, the attorney for Summit Park who had subpoenaed both he and DOROTHY DIER'S medical records.

**Recent update**

As Jerry L. Dier has stated, his mother's legs only appear to be severely contracted when

they are placed under her body or each other or at unimaginable angles, with pillows and sheeting used to keep them in place as she tries to free them. However, Jerry L. Dier must report that his mother's feet have large red areas in the area of each toe, apparently from the placement of her feet either under her body or under each other, the severe angle and placement causing immense pressure to rest on her feet, resulting in skin irritation, dampness and eventual skin breakdown when it takes place over an extended period of time as it has at Summit Park. As stated earlier, Jerry L. Dier complained to the staff day after day and in response was limited  by the gang of 4 to three visits per week as compared to the approximate 21-25 visits that he had made over the last 19 months at Summit Park. After Dr. Tansandra left My Mother opened her eyes and looked directly at me and followed my every movement as nurse Sericus re-entered her room. DOROTHY DIER'S will to live is strong even in the face of the barbaric acts visited upon her by supposed medical personnel, she moved her legs and left arm and hand that was not locked under her body in response to Jerry L. Dier's presence and touch.

**CONCLUSION**

62-The Summit Park Holding facility, their medical staff, administrative staff and nurse assistants and the Office of Aging and the Howard County Circuit Court beyond question have presented a **clear** and **present danger** and still present such a danger rendering her skeletal in appearance and must be removed from the status of having responsibility for DOROTHYDIER'S care, safety and well-being.

63- Not surprisingly, recently Summit Park Holding facility was placed on a **National Nursing Home Watch List-Actual Harm and/or Immediate Jeopardy**(App. 3). All results based on data obtained from CMS(Centers for Medicare and Medicaid Services)

57

6/15/07. What they are are and who they are clearly was clearly within the knowledge of

the Judge Dennis M. Sweeney, and the Office of Aging, and thus DOROTHY DIER has

been deliberately and intentionally placed in an environment where her each and every

moment is subjected to **ACTUAL HARM AND IMMEDIATE JEOPARDY.**

### Prior habeas history

A habeas petition was filed in behalf of **DOROTHY DIER** by her son and next
best friend Jerry L. Dier in the United States District Court for the District of
Columbia on January 19, 2007. The Court, the Honorable Coleen Kotelly found that
the District of Columbia did not have jurisdiction and that the action should have
been filed in United States District Court in Maryland. Judge Kotelly offered to
transfer the filed petition to Maryland. At that time Mr. Dier respectively declined
the offer and in its place further sought to have the U.S. District Court in the
District of Columbia to assume jurisdiction; said petition was dismissed due to lack
of jurisdiction without prejudice, not reaching the merits of the legality of the
custody. However, at a later time, in May 2007, Mr. Dier filed a habeas petition in
the United States District Court for Maryland, at which time, the Judge Blake
without reaching the merits dismissed the petition on grounds of lack of standing,
the definition of legal custody pursuant to 28 U.S. Code 2254(a) and whether this
was in actuality a civil rights action not an action presenting a federal question
under the United States Constitution.

**NEW MATTER, not before the United States District Court for the District of
Columbia in its earlier consideration, in January and February 2007, to wit,
Decision of the Court of Special for Maryland issued April 18, 2007**

FURTHERMORE, the decision by the Court of Special Appeals of Maryland
was neither based on fact nor law, and failed to address in any manner or fashion
the substantial issues raised and by mis-direction appears to be bent on protecting
the trial court whose handling of the guardian matter goes well beyond any
reasonable standard used to measure and scrutinize "judicial error" or lack of
understanding in what can only be described as an open and notorious attempt by
Judge Dennis M. Sweeney to place his personal notion of justice and the function of
the judicial system on those so unfortunate to come before him, such as my mother
**DOROTHY DIER**, in Howard County, Maryland; Whereby it is incumbent on this
Court to reach the merits of this application so as to serve the interests of justice.
*Saunders v United States*, 373 U.S. 1 (1963).

### CONCLUSION

Standing is a non issue in the case at bar, as that issue was decided in the *Lee* case, "[w]hen a relationship between a litigant and a third person is such that the enjoyment of the third person's rights are 'inextricably bound up with the activity the litigant wishes to pursue'; the litigant is 'very nearly, as effective a proponent of the right' as the third person; and the right rights of the third person are likely to be ' "diluted or adversely affected,'" the general rule does not apply. Id. At 572, 474 A. 2d 1297 (quoting *Singleton v. Wulff*, 428 U.S. 106, 115-16, 96 S. Ct. 2868, 2874, 49 L. Ed. 2d 826 (1976). The relationship between Mr. Dier and his mother is not in dispute.

Further, there can be no doubt that that the restraints placed on DOROTHY DIER are much more then faced by the general public, they are cruel and unusual by their very nature, and bring into focus memories of day gone by, something done by others, certainly never to take place in the country, relegations to regimes like the Nazi's who removed those deemed unfit from the population and subjected them to inhumane conditions and treatment.

The issue of Civil Rights versus Constitutional Rights is a little like which came first the chicken or the egg- the question being, can there be one without the other. . However, it is certain that if a citizen is deprived of their rights guaranteed and protected under the United States Constitution as set forth in abundant detail throughout this Petition, the issue of Civil Rights, life, liberty, property and happiness, become a mere academic question when a citizen such as DOROTHY DIER is deprived of her right to a fair trial by a biased authoritarian court, which .appointed his own man a court appointed counsel for her and then they in concert orchestrated a proceeding in which the court as an advocate became the proponent of guardianship by denying her right to a jury trial, her right to be present, her right to privacy, her right to due process of law culminating in a judgment under the color of state law wherein DOROTHY DIER has been subjected to cruel and unusual punishment.

Finally, there ARE material and significant <u>substantial events</u> cited that <u>give rise</u> to the <u>claim</u>, the <u>claim</u> being the <u>deprivation</u> of DOROTHY DIER'S <u>Constitutionally</u> guaranteed and protected rights in the Maryland Court System which acted, at trial on events that took place entirely in Washington, D.C. PRESENTED by a staff member of the Washington Hospital Center, whose testimony and documentation was grounded soley on <u>events that took place</u> in whole in the District of Columbia; but for those <u>events in the District of Columbia</u> there would have been <u>no trial in Maryland, and thus no court order to be issued granting legal custody of DOROTHY DIER to the State of Maryland, Howard County Circuit Court</u>. The trial which resulted in the Order placing DOROTHY DIER in "legal custody" could have happened anywhere, what is of primary importance is that the **events** which made for the trial took place in the District of Columbia. To ignore this reality would also be to ignore that the State of Maryland, Howard County Circuit Court stated weeks before the trial what his verdict would be having made himself the fact finder by denying DOROTHY DIER her right to a jury trial based an acknowledged false representation by his court appointed counsel for Mrs. Dier.

This Court must grant DOROTHY DIER'S request that a Writ of Habeas Corpus be issued so as to reach the merits of her claim that the Maryland State Courts have violated her federal rights guaranteed to be protected by the United States Constitution as set forth throughout this Petition practically rendering DOROTHY DIER defenseless, by depriving her of her right to effective assistance of counsel, a fair and impartial court, a jury trial, and right to be present, amongst other matters, all to the detriment of DOROTHY DIER, as a human being and as a citizen of the United States under the United States Constitution, wherein, under the color of state law, the court had become the agent for wrongdoing. The plight of DOROTHY DIER goes to the integrity of the judicial process and whether or not the Rule of Law has been supplanted by the rule of man-the issue is clear, the concern is real, can the judicial system be entrusted to handle those most delicate but important matters that pull at our heart strings; are the more senior citizens amongst us to be caste aside no longer seemingly productive and therefore not worthy of being covered under the umbrella of the Rule of Law.

## REQUEST FOR EVIDENTIARY HEARING

PLAINTIFFS submit the state trial court's assumption of inconsistent functions, the judge and advocate for the appointment of a guardian of the person for DOROTHY DIER constituted a fatal "structural" defect in those proceedings that renders his findings constitutionally suspect and its decrees void. PLAINTIFF is therefore entitled to an evidentiary hearing on her constitutional claims that the process employed by the Maryland state court violated her rights to due process, effective representation by counsel, right to be present and confront witnesses, right to a jury trial and equal protection of the laws. In **Keeney v. Tamaco-Reyes,** 504 U.S. 1, 11 (1972), the Supreme

Court held that a "habeas petitioner's failure to develop a claim in state court proceedings will be excused and a hearing mandated if he can show that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing. Furthermore, it is respectfully requested that Judge Dennis M. Sweeney, State of Maryland, Howard County Circuit Court and Anthony Doyle, 1002 Frederick Rd., Catonsville, MD 21228 As well as the Director of the Office of Aging, Phyllis Madachy and her designated agents, Peggy Rightenauer and Opheila Ross and in addition the Director of Summit Park, Jacqueline Hardy and her agents, Lottie Dorsey, Kim Williams, Doctors Bernhard, Baskeran and Tansandra and charge nurse Richards Be present along with any and all records having evidentiary value in this action,  as well as anyone else this Court deems necessary, including but not limited to all persons and records pertinent to the guardian of the property action so as to present themselves for examination affording them the opportunity to offer an explanation to facilitate the search for the truth, while at the same time protecting the constitutionally guaranteed rights of DOROTHY DIER which have been knowingly, intentionally, and deliberately violated depriving DOROTHY DIER, a now ninety year young naturally born citizen of the United States, mother of two children and grandmother of three and wife of the late Richard R. Dier of her rights under the United States Constitution and her natural rights as a human being.

PLAINTIFF, Jerry L. Dier presents this petition for habeas corpus relief in behalf of his mother to this Honorable Court as the proud and determined son and next friend of DOROTHY DIER, while being fully cognizant of the nature of this request. However, justice is not to be limited by form, or only open to those of a certain class or those having a certain means, it is to be open to all, which includes the ability to seek the truth

from all, no matter who they and what position they hold and what their family background. The conduct of the State Courts in Maryland are undeniably as they appear to be, casting a long shadow of darkness on the integrity of the legal system as regards those who enter its tent in search of justice.

This Court has an opportunity to act while there is still time to do justice; to do otherwise, and take what might seem to be the easier path, that of avoidance will both act so as to doom DOROTHY DIER as well as send a message that the Rule of Law does not apply to those who are trusted to enforce it. The merits of the factual dispute were not resolved in the State Courts, the fact finding procedure employed by the State Courts was not adequate to afford a full and fair hearing-material facts were not adequately developed and placed in context to the issues present, the Rule of Law was not applied, and Thus this habeas applicant was not afforded a full and fair hearing.

In summary, the practices of the State of Maryland, Howard County Circuit Court Judge, Dennis M. Sweeney, so as to Deny DOROTHY DIER any resemblance of Due Process of Law and in utter disregard of the Rule of Law **Can Not** be categorized as a mere lack of knowledge and appreciation for the law when referring the this well-seasoned, highly education judge, whose family line is that of service through judicial appointment in the State of Maryland. Judge Dennis M. Sweeney's conduct was beyond question, **intentional** and **deliberate** with full knowledge of their consequences but apparently felt secure that his actions, while they remained at any level within the Maryland Court System, no matter how outrageous and inhumane aimed at depriving DOROTHY DIER of her Rights guaranteed and Therefore protected by the Constitution of the United States so as to establish within his domain, the rule of man over the Rule of Law.

62

Any argument or submission to the contrary would be to put on blinders to,

1-State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney's appointment of Anthony Doyle as court appointed counsel for DOROTHY DIER on two occasions, one following the other, where the record of the court proceedings makes it abundantly clear, without question that Anthony Doyle, separate and apart from being totally and completely ineffective and inept in his representation of DOROTHY DIER, was a tool of Judge Dennis M. Sweeney in establishing his dominion over DOROTHY DIER by totally Disregarding the Rule of Law.

2-State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney in addition to applauding the ineffectiveness and ineptitude of Anthony Doyle, his attorney in place, stated that said Anthony Doyle conduct as set forth in the two matters in which he was appointed to represent DOROTHY DIER was part of a pattern of conduct that he had exhibited and had been applauded by the Howard County Circuit Bench for 15 years.

3-State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney found nothing wrong with Anthony Doyle, his Attorney in Place falling asleep during a morning status hearing, walking out on his client during a proceeding concerning his client's safety, health, care and well-being and Mr. Doyle's utter silence throughout silence through the trial, necessitating Judge Sweeney's comment, "Are you Allright."

4-For whatever reason, in order to assure that the rule of man would prevail over the Rule of Law, State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney, warmly embraced his attorney in place for DOROTHY DIER acknowledged FALSE representations, done Without Consultation with his Client, DOROTHY DIER, that MRS. DIER waived her right under Maryland law and the United States Constitution to a

Jury Trial, her right to be Present and Confront Witnesses. Furthermore Mr.Doyle, Judge

Dennis Sweeney's attorney in place, represented to the Court in a signed pleading,

he acknowledged the falseness of said document in open court,

that his client DOROTHY DIER wished to have a guardian of the person appointed in

her behalf and made other False representations as regards allegations contained within

the filed petition before the court.

5-State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney on

October 14, 2005, WITHOUT DOROTHY DIER presence, and WITHOUT her

attorney in place, Anthony Doyle having consulted with her, conducted a hearing as

regards the appointment of a guardian made on representations comprised of wholecloth.

Said hearing on its face turned into a mockery of justice and finally after Mr. Dier time

and time objected the State of Maryland, Howard County Circuit Court Judge Dennis M.

Sweeey held that said hearing would only be used to afford him background information

as regards the petition. The hearing concluded and nothing more was ever stated about

what had taken place by the court. Said hearing was commenced after Mr. Dier had

suggested to both the court and Mr. Doyle that any proceedings concerning DOROTHY

DIER be continued until Mr.Doyle had had a chance to consult with his client, Mr. Doyle

was silent to said suggestion and the court said, No.

6-State of-Maryland, Howard County Circuit Court Judge Dennis M. Sweeney, at a status

hearing 5 weeks prior(at a February 2, 2006, status and Motions hearing) to the trial date

declared that DOROTHY DIER **required** a guardian of the person, the issue to be

decided at trial, where he had set himself up as the fact-finder by denying DOROTHY

DIER a Jury trial by having warmly embraced the illegal and unethical actions of His

Attorney in Place, Anthony Doyle, waiving said Right to Jury Trial Without Consultation with his client DOROTHY DIER.

7-State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney having warmly embraced the acknowledge False Representations of His Attorney in Place, Anthony Doyle did not make the required by law inquiry into the absence of DOROTHY DIER at any of her court proceedings, including her trial, and attempted to cure said material and substantive defect depriving DOROTHY DIER of her Right to be Present guaranteed by both State law and the United States Constitution by a reference in his March 7, 2006 Order appointing a guardian of the person for DOROTHY DIER.

8-State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney accepted the filing of a petition acknowledging that although the court did not have jurisdiction he, Judge Dennis M. Sweeney had *inherent powers that could cure such a defect.*

9-State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney admitted into evidence, without which the petition had to be dismissed a required physician's certificate that was gained by the petitioner's at a point in time when a request for a protective order, as regards mental examinations was pending before the court, Judge Dennis M. Sweeney commenting that it was in essence an acceptable *fact accompli.*

There are many more examples of unexplained hideous conduct on part of Judge Dennis Sweeney as set forth in this filing, however, now, due to the papers I received in Today's mail, August 29, 2007, the time is short for My Mother, agents of the Judge Sweeney have decided to Kill My Mother DOROTHY DIER. The agent of Judge Sweeney, with murder in their eyes, the Office of Aging have filed papers with Judge Sweeney to have him complete his mission, to Kill My Mother, *Request to Withhold and*

*Withdraw* Treatment. Setting forth what they believe in their best interest her condition to be caused directly by their cruel and inhumane care and treatment of her person with full and complete knowledge that the Judge Dennis M. Sweeney would provide them with protection no matter how damaging their actions were to My Mother's health, safety and well being.

I pray that this Court will hear my words and correct this manifest injustice while time remains. The treatment of My Mother has been what can only described as Criminal in Nature by the State of Maryland, Howard County Circuit Court and its attendant government institutions, the Howard County Office of Aging, etc. I beg this Court to save My Mother, it may be her last hope, Her life has been dedicated to her family, she deserves so much better then this at the hands of governmental institutions. I shall try to keep faith with a system that although not perfect has always been prior to this action, basically fair and just to those under its domain-this is the United States of America. I hope that my faith has not fallen on deaf ears and the scales of justice will again hold true.. My Dear and Darling Mother's Life is directly in your hands.

My Mother has fought back as best she could from being kept in a malnourished, at times, seemingly being fed at the whim of those at Summit Park, as if ordered to her would be doom by a Court blind to justice, it orders directed at weeding out those human beings amongst us not deemed fit, utilizing governmental institutions that obey with blind obedience. My Mother has been denied treatment for her complained of Depression by the Office of Aging, placed in torturous positions day upon day, week upon week and month upon month by Summit Park with the acquiescence of Dr. Baskeran, Dr. Bernhard and Dr. Tansandra and the Office of Aging and Denied the comfort of being with her Son

while she remains hour upon hour in the main wrapped in a gown with her hands kept under her gown as if in straight jacket and her legs either locked by placement and with pillows either under body in a torturous positions as described herein that bring to mind a the darkness of torture chamber during the Spanish Inquisition, Thereby causing My Mother through the infliction of suffering by barbaric acts so as to attempt to Isolate her Body, Mind and Soul from both true self and Her Family. My Mother's crinkling of her nose has sent a clear message to me, evil one's have failed. And now they are requesting that their protector, Judge Dennis M. Sweeney personally do what all their crimes against humanity could not do, kill both My Mother's spirit and body. This Court, if it is to act as a court of Law and Justice under the United States Constitution **must** intercede Now. Humanity, and DOROTHY DIER demand and deserve no less.

## YOUR PETITIONER DOROTHY DIER LIVES AND FIGHTS ON AS SHE STRUGGLES MIGHTILY TO SURVIVE-HER WILL TO LIVE IS AMAZINGLY STRONG

-However, thus far these barbaric attempts to inflict suffering upon My Mother have failed, she continues to try mightily to move her hands and legs as if to free them, .talks at times in direct response to questions, smiles, and moves her head to hear what is being said and with her eyes communicates her understanding of what is being said and most importantly communicates her love for her family as best she can at all time with those closest to her. Just a few days ago, a nurse at Summit Park seeing the close relationship between mother and son as Mom turned her head in view of the nurse to hear what was being said, told Mom that she had to feed Mom and she was Not taking her son away from her and he would come back after she had been given nourishment through

tube feeding. As stated earlier My Mother had been declared Wound Free by Dr.

Bernhard in late October 2006-early November 2006, prior to her transfer to the Second

Floor, B-WING, RUN BY Mr. Richards, the charge nurse, who now has seemingly

disappeared and supervised directly by Lottie Dorsey and Kim Williams, who also

disappeared with no explanation. In spite of her treatment My Mother is both physically

strong and healthy, her body miraculously heals well and many of her wounds have

healed or have almost healed when at times she has given a taste for short periods of time

of more humane care and treatment when my complaints were heeded. Recently a dead

mouse was found in My Mother's room and the personnel at Summit Park joked amongst

themselves that Summit Park was like a hotel, they come in and go out. While there is

still time, it is Now time for My Mother to leave by the Authority of this Court-My

Mother is not a mouse to be scooped up and thrown away..

This Court must act Now to save this most Noble of Ladies, My Dear and Darling

Mother, who is mightily struggling for her very existence, but is in urgent need of the

help of this Court.. Recently charge nurse Claire recognized both this close tie between

mother and son DOROTHY DIER'S will to live when she said after Mr.Dier offered

to leave during the tube feeding,  as described above, "I won't let him go." And Jerry L.

Dier stated to both Clair and his Mother that he would wait outside and immediately

return at its conclusion. See insert 68a, 68b, and 68c..

**Let it be known, It is long overdue, the Judicial System, long absent  must return to
right this grave wrong.**

### PRAYER FOR RELIEF

Wherefore, PETITIONER, **DOROTHY DIER**, by and through her son and next

## DOROTHY DIER, LIFE IN PERIL

My Mother's situation is most perilous at Summit Park as evidenced by a most recent visit with her. Cold air was blowing on her back from an air conditioning unit only a few feet from her. Only a short time before I had found My Mother with her face directly, only that same few feet away from the blower. On both occasion I drew the curtain so as to afford My Mother a degree of protection. My Mother coughed infrequently on the first occasion, which in and of itself is very rare for her as she is and has been throughout her life an amazingly physically healthy person. HOWEVER, on my most recent visit My Mother coughed frequently, it was both rare and alarming, in that the cough appeared to be deep and from her chest. Fortunately, on this day, the nurse assigned to My Mother's room was known to us for some time and I asked her to check My Mother's chest for possible signs of congestion and possible related matters. The nurse promised to do that for me, but I could not wait, my visit mandated by the Gang of 4, to be 2 hours in length had expired. Before, I close the nurse seemingly wanting me to see the horrific damage inflicted upon My Mother changed her bandaging in front of me. My Mother's feet were ridden with large red circular areas indicating that her feet had been severely compromised by the intentional and deliberate positioning by the Summit Park staff. This nurse freshly bandaged My Mother's feet and separated both one from the other and both of them from her body; said separation was done easily and without discomfort to My Mother. My Mother looked at both me and the nurse during our conversation as the nurse alleviated some of her discomfort, as if to let us know she understood and thanked us. Furthermore, the nurse separated My Mother's right hand from her body and removed the bandaging. It was red and brown and soaked and stained throughout. I gasped in

68 a

175

disbelief. The sign right above My Mother's bed stated no skin areas were to be touching other skin areas, pillows were to be used for separation, signed KW, Kim Williams, the unit manager at the time. The placement of the sign February- March 2007, followed months of my complaints in behalf of My Mother, the Occupational Therapist Christine telling me that she had instructed the staff to place a pillow between My Mother's right hand and body and Dr. Bernhard ordering the same, both taking place in the fall of 2006, all to no avail. This nurse had little if any difficulty moving My Mother's right arm so as to separate them from her body. My Mother's condition is critical, clearly the staff at Summit Park with their cohorts, the Office of Aging and the State of Maryland Howard County Circuit Court have only one thing in mind for her-This Court and only This Court has the Authority under Law to save My Mother DOROTHY DIER from the clutches of those seeking to subject DOROTHY DIER to the ultimate manifest injustice, the taking of her life.

During my last visit with My Mother, I found her bed close to the window, her back covered from below her shoulders down, but the window open approximately 18 inches to 2 feet. The room was very cold, as it was a rather chilly evening, to the extent that I although not positioned at home near a window felt cool at night, with no window open, and was tempted to turn on the heat. Moreover, My Mother's mouth was parched, dry and her lower lip on the left side covered with scales, My Mother's left eye on the left side was covered by thick crust and her eyelid was covered by thick pieces of crust(I had not been allowed to see her for three days due to the Office of Aging, Peggy Rightenauer and Ophelia Ross, the designated agents of Phyllis Madachy, Director of Aging, and Summit Park, represented by Jacqueline Hardy, Director and her designee, Lottie

68 b

176

Dorsey's declaration on August 17, 2007, that I only be allowed three visits per week),

and on the right side of My Mother's eye, in the corner, near the nose, another large thick

area of crust had developed, My Mother's right eye was also covered by a large thick

area of crust near her nose, My Mother's left ear contained a significant amount of brown

wax, My Mother's pillow was covered in part by a large yellowish stain, My Mother was

covered in such a way that I could only see an outline of her body, but as best I could

determine My Mother's arms and hands were locked(right hand and arm) under her body

inside her gown and her left hand and arm were held captive by their placement inside

her gown, and My Mother's legs and feet appeared to be locked either under her body or

place immediately adjacent to her buttock so as to be parallel, all this apparently being

inflicted upon My Mother so as to rob her body of the strength of life, insulting her back

area so as to cause her to develop pulmonary-respiratory issues, as My Mother again

coughed deeply in my presence and I told the nurse as I had on my last visit, her eyes to

see, enjoy and taken what is taking place around, her ears so as to hear the sounds of life,

including my voice, her mouth, so as to preclude her from moisture, the essence of life

itself, her arms, hands, legs and feet, so as rob her of her dignity as a human being and

inflict pain by encapsulating her in a gown, as if in a full body straight jacket, aimed in

their totality to break down her fighting spirit by instilling a sense of hopelessness as she

is held prisoner by her captives at the request of State of Maryland Howard County Court

Judge Dennis M. Sweeney.

As this Court must sense, I am in great fear of what acts may be contemplated and

acted upon by the evil doers described herein when they hear of this filing, and I pray that

this Court *take* immediate action to free My Mother before the issue is made Moot.

68 c

friend Jerry L. Dier, requests relief as follows, in the belief that this Honorable Court will

heed the warning set forth in **Mack v. Mack**, 618 A. 2d 744(Md. 1993),

> The extreme illustration of the "slippery slope" argument
> Is presented in Alexander, *Medical Science Under Dictatorship*,
> The New England Journal of Medicine, Vol 241, No. 2, at 39
> (July 14, 1949). The article describes the annihilation of whole
> segments of the population and the so-called medical experiments
> on live and conscious prisoners under Nazi Germany. Dr. Alexander
> then summed up with these words:
>
> "Whatever proportions these crimes finally assumed, it became
> evident to all who investigated them that they had started from
> small beginnings. The beginnings at first were merely a subtle
> shift in emphasis in the basic attitude of the physicians. It
> started with the acceptance of the attitude, basic in the euthanasia
> movement, that there is such a thing as life not worthy to be lived.
> This attitude in its early stages concerned itself merely with the
> Severely and chronically sick. Gradually the sphere of those to be
> Included in this category was enlarged to encompass the socially
> Unproductive, the ideologically unwanted, the racially unwanted and
> Finally all non-Germans. *But it is important to realize that the
> Infinitely small wedged-in-lever from which this entire trend of
> Mind received its impetus was the attitude toward the
> Nonrehabilitable sick." Id. At 44 (emphasis added).*

:

   1.  Schedule an immediate hearing on the question of issuing a
       writ of habeas corpus requiring Respondents,
       Judge Dennis M.  Sweeney, Phyllis Madachy,
       Director, and her designated agents,
       Peggy Rightenauer and Opheila Ross,
       Office of Aging,
       And Jacqueline Hardy, Summit Park, Director, and her agent,
       Lottie Dorsey, to
       Show Cause as why their actions
       are not in violation of Petitioner's rights under the Fourth,
       Sixth, Eighth and Fourteenth Amendments to the Constitution of
       the United States, and  Title 42 U.S.C. Sect. 1983.

   2.  IMMEDIATELY REMOVE DOROTHY DIER FROM THE
       CARE AND CUSTODY OF THE STATE OF MARYLAND,
       HOWARD COUNTY CIRCUIT COURT,
       HOWARD COUNTY OFFICE OF AGING AND

SUMMIT PARK HOLDING FACILITY.
and
STAY the proceedings in State of Maryland,
Howard County Circuit Court

3. Enter an order issuing said writ of habeas corpus.

4. Release DOROTHY DIER from state custody by setting
   aside the March 7, 2006, State of Maryland, Howard County
   Circuit Court order appointing a guardian of person for
   DOROTHY DIER.

5. Grant such other and further relief as this Court shall seem
   just and equitable.

6  THAT this Court retain jurisdiction of this matter for
   the purpose of enforcing this Court's order.


Dated: September 15, 2007

Respectfully submitted,

Jerry L. Dier, Pro se
11448 Rowley Rd.
Clarksville, MD 21029
Son and next best friend
(202)276-8716

Verification

I declare under penalty of perjury under the laws of the United States of
America that the foregoing in true and correct. Executed on September 15
, 2007.

Jerry L. Dier

70

# APPENDIX

Appendix 1 –   March 7, 2006, Howard County Court Order, guardian
                of person action

Appendix 2-   Opinion, Court of Special Appeals, April 18, 2007

Appendix 3-   Summit Park Holding facility, National Watch List.

Appendix 4-   Request to Withhold and Withdraw Treatment

IN THE MATTER OF DOROTHY DIER     :     IN THE
FOR THE APPOINTMENT OF           :     CIRCUIT COURT
A GUARDIAN OF THE PERSON       :     FOR HOWARD COUNTY

                                  :     CASE NO. 13-C-0563324

## ORDER
## GUARDIAN OF THE PERSON

The Court has considered the Petition and the Amended Petition for the Appointment of a Guardian of the Person of Dorothy Dier, a person alleged to be under a disability, and the Certificates of Competency attached to the Petition and the Amended Petition. The Court has also considered the Answer filed on behalf of Dorothy Dier by her attorney, Anthony Doyle, Esq. This matter came before the court for a hearing on March 7, 2006, and the court considered the arguments of all counsel and all parties. It is this ___7th___ day of _March_, 2006, that the Court makes the following findings of fact, pursuant to Md. Code Ann., Est. & Trusts § 13-705(b):

WHEREAS, the Court finds that the disabled person cannot be present because of a physical or mental incapacity and is unable to consent to the appointment of a Guardian of the Person; and

WHEREAS, the disabled person was represented by counsel and has waived her right to a jury trial; and

WHEREAS, this Court has found by clear and convincing evidence that Dorothy Dier lacks sufficient understanding or capacity to make or communicate responsible decisions concerning her person because of a disability as defined in the Md. Code Ann., Est. & Trusts §13-705, the nature of the disability being Dementia; and

App. 1

FILED    07 1637

SEP 17 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

WHEREAS, the Court finds that it is in Dorothy Dier's best interests to have a Guardian of the Person appointed; and

WHEREAS, the disabled person needs a Guardian of the Person and there is no less restrictive form of intervention available which is consistent with the person's welfare and safety; it is therefore

ORDERED, this _7th_ day of _March_, 2006, by the Circuit Court for Howard County, that, Phyllis Madachy, Director of the Howard County Office on Aging, or her successor or designee, 6751 Columbia Gateway Drive, Columbia, MD 21046 be and is hereby appointed Guardian of the Person of Dorothy Dier with all of the rights enumerated in Md. Code Ann., Est. & Trust §13-708; and it is further

ORDERED, that the Guardian of the Person may consent to medical, dental, or other professional care, medication, including psychotropic medication, counseling, treatment, services, or admission to a nursing home for the disabled person; and it is further

ORDERED, that this Court must authorize the Guardian to consent to any medical procedure that involves a substantial risk to the life of the disabled person; and the withholding or withdrawal of any medical procedure that involves a substantial risk to the life of the disabled person; and it is further

ORDERED, that pursuant to Maryland Rule 10-206, the Guardian of the Person shall file an Annual Report with the Clerk of the Court, no later than sixty (60) days following March 7th of each year, indicating the present place of residence of both the

App. 2

2

guardian and the disabled, the health and mental status of the disabled person, the Guardian's plan of care for the disabled person, whether there is a need for the continuation of the guardianship, any reason to change the Guardian's powers, or if the guardianship should be terminated; and it is further

ORDERED, that the contract attorney for the Department of Human Resources is hereby authorized to represent Dorothy Dier before the Adult Public Guardianship Review Board; and it is further

ORDERED, that this matter shall be scheduled for a review hearing at the discretion of this Court, or upon petition of any party.

Dennis M. Sweeney
Judge, Circuit Court for Howard County

App. 3

UNREPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 236

September Term, 2006

---

JERRY L. DIER

v.

PHYLLIS MADACHY, GUARDIAN ET AL.

---

Davis,
*Kenney,
Eyler, Deborah S.,

JJ.

---

Opinion by Davis, J.

---

Filed: April 18, 2007

*Kenney, J. participated in the
hearing and conference of this
case while an active member of
this Court; he participated in
the adoption of this opinion
as a retired, specially
assigned member of this Court

Appellant, Jerry Dier, appeals from an order appointing the Howard County Office on Aging (Office on Aging)[1] as the permanent guardian of his then eighty-nine year old mother, Dorothy Dier (Ms. Dier), on March 7, 2006. After the Howard County Department of Social Services (HCDSS) filed the September 28, 2005 petition and motion for expedited hearing, the trial court issued a Show Cause Order and appointed Anthony E. Doyle, Jr. (Doyle) as counsel for Ms. Dier on October 4, 2005. Several hearings[2] were held, before the final guardianship hearing, beginning with an emergency hearing for temporary guardianship of the person in advance of full guardianship on October 14, 2005.

As a result of that first hearing, temporary guardianship was delayed by the trial court in order to allow the family and HCDSS to make efforts to resolve any issues regarding decisions as to Ms. Dier's care and to allow the court-appointed attorney to have access to Ms. Dier and her medical records. The Office on Aging was appointed temporary guardian of the person on January 23, 2006 and granted permanent guardianship after the March 7, 2006 hearing. Appellant noted this timely appeal and presents several issues, which we rephrase as follows:

---

[1] For clarity, we shall refer to appellees Office on Aging, Howard County Department of Social Services, Phyllis Madachy and Anthony E. Doyle, Jr. individually.

[2] A total of seven hearings were held, including: an emergency guardianship hearing October 14, 2005, an October 25, 2005 Status Conference, a December 7, 2005 Scheduling Conference, a January 4, 2006 Hearing on Guardianship, January 23, 2006 Hearing on Emergency Petition, a February 2, 2006 Status Conference and March 7, 2006 trial that are all discussed more fully *infra*.

-1-

I. Did the circuit court err in denying the motion to dismiss based on inadequate legal representation by court appointed counsel?

II. Did the circuit court err in denying appellant's motion to dismiss based on improper standing of Howard County Department of Social Services as required by Maryland Rule 10-201(a)?

III. Did the circuit court err in denying appellant's motion to dismiss based on lack of venue considering Ms. Dier's residence at the time of filing?

IV. Did the circuit court err in denying appellant's motion to dismiss based on insufficiency of the Physician's certificates and that the attached certificates were not introduced as substantive evidence?

V. Did the circuit court err in denying appellant's motion to dismiss when the court *sua sponte* incorporated prior proceedings into the trial record without considerations of the legal requirements?

VI. Did the circuit court err in not concluding that there were less restrictive alternatives available?

VII. Did the trial court err by appointing a guardian in contravention of the order of priorities as stated in Maryland Code Annotated, Estates and Trusts Article § 13-707?

## FACTUAL BACKGROUND

In support of the petition filed on September 28, 2005, HCDSS attached the certificates of two physicians. One certificate was from Dr. Terry A. Teplitz (Dr. Teplitz) and the other from Dr. Peter G. Hamm (Dr. Hamm). Dr. Teplitz is Board certified in psychiatry and geriatric psychiatry. His certificate indicates that he examined Ms. Dier on September 18, 2005 and diagnosed her as having "senile dementia." The extent and duration is listed as

-2-

"progressive and permanent" and Dr. Teplitz's opinion is that Ms. Dier does not have the mental capacity to appoint or to consent to the appointment of a guardian. Dr. Hamm first treated Ms. Dier in the emergency room on September 7, 2005. He diagnosed her disability as "senile dementia," the nature of which being "Chronic and progressive," caused by "Alzheimer's disease." Ms. Dier suffers from what doctors term end-stage dementia with symptoms that include severe contraction of her arms and legs, malnutrition and pressure ulcers.

Appellant and his sister, Michelle Lyons (Lyons), are interested persons in the matter before this Court. They are the son and daughter of Ms. Dier respectively. HCDSS received calls regarding the welfare of Ms. Dier and conducted investigations regarding three allegations of neglect against appellant. In the course of their investigations, HCDSS determined that appellant was uncooperative with medical staff and that he moved Ms. Dier frequently between hospitals and his home, thus, causing some of Ms. Dier's aforementioned medical problems.

The investigation that precipitated the petition emanated from a report that Ms. Dier had been admitted to the intensive care unit at Sibley Hospital (Sibley) on September 7, 2005, suffering from severe dehydration, failure to thrive, anemia and ulcers on one of her heels and her right hip. At the time she was admitted, she was living with appellant in Howard County. Appellant thereafter moved Ms. Dier from Sibley to Washington Adventist Hospital where an

-3-

HCDSS adult protective service case manager, Janis DiSibio (DiSibio), was able to visit her. DiSibio testified at the October 14, 2005 hearing that she attempted to give appellant a copy of the petition, but he refused to accept it as did Lyons.

On or about October 5, 2005, Ms. Dier's court-appointed attorney attempted to speak with Ms. Dier in her room and was told by appellant to wait outside because appellant was on the telephone. Doyle departed without waiting for the conclusion of appellant's telephone call. Doyle made no further attempts to see, contact or consult with Ms. Dier, prior to the October 14, 2005 hearing and filed an answer to the Petition for Guardianship of the Person by way of facsimile on October 13, 2005 that included a waiver of the right to a jury trial. Appellant entered his appearance as private attorney for Ms. Dier on October 7, 2005 and subsequently filed a waiver of appearance on her behalf on October 13, 2005, pursuant to Estates and Trusts Article §13-705(e), citing her physical condition and the stress and anxiety an appearance would cause.

As of the October 14, 2005 hearing, Ms. Dier had not been seen or consulted by Doyle. The court found that appellant could not represent Ms. Dier because appellant was the subject of the alleged abuse and, thus, his representation of Ms. Dier presented a conflict of interest. Although the court struck his appearance as counsel for Ms. Dier, appellant had filed a timely response to the petition and raised several defenses, including lack of venue, lack

-4-

of standing and the legal sufficiency of the physician's certificates.

The hearing on October 14, 2005 resulted in findings from the trial judge, including that "Mr. Doyle [had not] been able to actually talk to [Ms. Dier]." The trial judge stated that "we're in kind of -- we're kind of in an interim period here. There's a question that some type of order be entered." The trial court thereupon stated that it would refrain from appointing a temporary guardian, but would enter an order that would ensure Ms. Dier remained at the Good Hope Home Care facility (Good Hope) subject to further order by the court. That way "Mr Doyle [could] get an opportunity to go talk to her and get full access to the records."

At the October 25, 2005 status hearing, testimony by appellant indicated that Ms. Dier was removed from Good Hope and hospitalized due to a urinary tract infection. Ophelia Ross (Ross), Director of the Howard County Office on Aging, testified that Ms. Dier needed nursing care and met the criteria for twenty-four hour per day assisted living care as opposed to placement in a Montgomery County group home. Accordingly, HCDSS requested that the court set a full guardianship hearing.

At the December 7, 2005 scheduling conference, HCDSS requested temporary guardianship and indicated difficulty in working with appellant because he was not adequately communicating with the Office on Aging and was attempting to move Ms. Dier to another facility outside of Howard County. At the January 4, 2006 status

-5-

hearing, HCDSS and the Office on Aging were ordered to continue monitoring Ms. Dier and to direct that she remain in Bayboro or at a hospital if necessary. At the request of appellant and HCDSS, a motions and evidentiary hearing was set for February 2, 2006 wherein a trial date was to be set if warranted.

On January 8, 2006, when appellant was informed that a surgical debridement of an ulcer was performed without his permission, he moved Ms. Dier from Howard County General to Washington Hospital Center. An emergency hearing was conducted on January 23, 2006 as to temporary guardianship. Ms. Dier's diagnosis by Dr. George Taler (Dr. Taler) was advanced or end stage dementia, severe malnutrition, pressure ulcers and contracted extremities. Dr. Taler recommended skilled nursing care for Ms. Dier. HCDSS amended its petition on February 1, 2006 and added the certificate of Dr. Taler.

The court concluded that the Director of the Office on Aging should be the court-appointed temporary guardian of Ms. Dier's person. The court found that HCDSS had proven by clear and convincing evidence that Ms. Dier, "for a long period of time, . . . has been unable and lacks sufficient understanding or capacity to make or communicate responsible decisions concerning her person." The trial court found that Ms. Dier needed continual intervention and because appellant was in denial of her terminal condition, that he could not function in that position.

-6-

On February 2, 2006, the court denied appellant's request to have Ms. Dier moved back to the hospital until a more suitable hospital to his liking could be found. The trial court denied appellant's motion to strike the physician's certificates, appellant's motion to strike all pleadings filed by the court-appointed attorney and appellant's motion to dismiss. HCDSS continued temporary guardianship until the March 7, 2006 permanent guardianship hearing. The court set March 7, 2006 as the trial date to determine Ms. Dier's competency and, if warranted, to appoint a guardian.

On March 7, 2006, the court ruled that prior hearings' testimony would be incorporated into the record and the trial judge stated that "I don't see these proceedings as separate; I see them as more sort of one flowing into another."

Dr. K. Eric DeJonge (Dr. DeJonge) began treating Ms. Dier on January 8, 2006 at Washington Hospital Center, administered mini-mental exams and concluded that Ms. Dier's cognitive function was zero out of a possible thirty. Appellant objected to the trial court's admission into evidence of Dr. DeJonge's physician's certificate, dated January 27, 2006 by the trial court. The trial court found that "credible evidence" before the court, including testimony by Ms. Dier's treating physician, Dr. DeJonge, was clear and convincing that Ms. Dier lacked sufficient understanding or capacity to make decisions concerning her person. There being no

less restrictive alternatives available, the trial court appointed the Office on Aging as the appropriate guardian.

The court found that appellant's optimism in regard to his mother's recovery clouded his ability to make objective decisions regarding her care because, when presented with less than optimistic prognoses from doctors or treating providers, he would remove her from their care, thus, jeopardizing her health. The court found no objective medical evidence to rebut the testimony of Dr. DeJonge or Dr. Taler that Ms. Dier "cannot communicate, cannot make any responsible decisions . . . and that there is no hope in any realistic fashion, absent an absolute miracle, . . . of this situation being reversed."

## STANDARD OF REVIEW

We review

the grant [or the denial] of a motion to dismiss pursuant to Maryland Rule 2-322(b), [and] "we must assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings." "[T]he complaint should not be dismissed unless it appears that no set of facts can be proven in support of the claim set forth therein."

*Simms v. Constantine*, 113 Md. App. 291, 294 (1997) (internal citations omitted).

# LEGAL ANALYSIS

## The Petition for Guardianship

Appellant argues that HCDSS filed its petition in the wrong venue, considering Ms. Dier's residence at the time of filing. This contention will not long detain us. Maryland Rule 10-201(b) provides, in pertinent part, that if an "alleged disabled person is a resident of Maryland, the petition shall be filed in the county where . . . the . . . alleged disabled person resides or [where] the person has been admitted for the purpose of medical care or treatment . . . ." Ms. Dier resided with appellant in Howard County, Maryland at the time of her hospitalization. The Court of Appeals' longstanding test on residency has been expressed as follows:

> The words reside or resident mean domicile unless a contrary intent is shown. A person may have several places of abode or dwelling, but he can have only one domicile at a time. Domicile has been defined as the place with which an individual has a settled connection for legal purposes and the place where a person has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning. The controlling factor in determining a person's domicile is his intent. One's domicile, generally, is that place where he intends to be. The determination of his intent, however, is not dependent upon what he says at a particular time, since his intent may be more satisfactorily shown by what is done than by what is said. Once a domicile is determined or established a person retains his domicile at such place unless the evidence affirmatively shows an abandonment of that domicile.

-9-

*Oglesby v. Williams*, 372 Md. 360, 373 (2002) (quoting *Roberts v. Lakin*, 340 Md. 147, 153 (1995) (quotations omitted)).

Ms. Dier made no affirmative abandonment of her domicile with appellant. Thus, at the time of the filing of the petition on September 28, 2005, Ms. Dier was a resident of Howard County. Venue was proper.

Appellant contends that HCDSS was without standing to file the petition for guardianship because Maryland Code Annotated, Estates and Trusts § 13-707(a)(10)[3] forbids the local director of social services from being appointed guardian unless the disabled person is sixty-five years of age or younger or there was an appointment of guardianship prior to age sixty-five. Appellant is wrong.

Maryland Rule 10-201(a) provides that "[a]n interested person may file a petition requesting a court to appoint a guardian of a[n] . . . alleged disabled person." An interested person as defined by the rules includes "a person or agency eligible to serve as guardian of the person" pursuant to the Md. Code Ann., Est. & Trusts § 13-707, *supra*. *See* Md. Rule 10-103(f).

The trial court has sole discretion as to the appointment of guardian. *Kicherer v. Kicherer*, 285 Md. 114, 119 (1979). Appellant relies heavily upon the statutory priority, but the Court has held that, although seemingly mandatory and absolute, Md. Code Ann., Est. & Trusts § 13-707 is always subject to the overriding

---

[3]Unless otherwise indicated, the Court shall refer to Md. Code Ann., Est. & Trusts (2001 Repl. Vol. & 2006 Supp.).

best interest of the disabled person. *Mack v. Mack*, 329 Md. 188, 203 (1993) (quoting Md. Code Ann., Est. & Trusts § 13-707(c)(1) providing that "[f]or good cause, the court may pass over a person with priority and appoint a person with a lower priority").

In the instant case, the court found good cause in that appellant was the subject of the allegations facilitating the proceedings for guardianship and, pursuant to the provisions of § 13-707(a)(9), could have appointed HCDSS as "[a]ny other person, agency, or corporation considered appropriate by the court." Moreover, HCDSS filed its petition on behalf of the Department on Aging as interested person. Thus, in accordance with Maryland Rule 10-201(a), HCDSS properly filed the petition and the trial court was within its discretion to appoint the Department on Aging as Ms. Dier's permanent guardian.

Appellant attacks the sufficiency of the physician's certificates attached to the petition because, he maintains, the certificates did not comport with the guidelines set forth in *In re Sonny E. Lee*, 132 Md. App. 696 (2000). Appellant avers that the weighty decision to be considered by the trial court required more than the "slender factual basis" provided by the certificates. Appellant presents, as an example, that Dr. Hamm performed tests that appellant claims had no bearing on psychiatric or competency issues and Dr. Teplitz only used six words to sum up Ms. Dier's condition and prognosis.

Maryland Rule 10-202(a)(1) provides that:

If guardianship of the person of a disabled person is sought, the petitioner shall file with the petition signed and verified certificates of (A) two physicians licensed to practice medicine in the United States who have examined the disabled person, or (B) one licensed physician who has examined the disabled person and one licensed psychologist who has seen and evaluated the disabled person.    An examination or evaluation by at least one of the health care professionals under this subsection shall occur within 21 days before the filing of a petition for guardianship of a disabled person. Each certificate shall state the name, address, and qualifications of the physician or psychologist, a brief history of the physician's or psychologist's involvement with the disabled person, the date of the physician's last examination of the disabled person or the psychologist's last evaluation of the disabled person, and the physician's or psychologist's opinion as to: (1) the cause, nature, extent, and probable duration of the disability, (2) whether the person requires institutional care, and (3) whether the person has sufficient mental capacity to understand the nature of and consent to the appointment of a guardian.

The court admitted into evidence Dr. DeJonge's certificate on the day of trial and Dr. DeJonge testified at the March 7, 2006 proceeding.    The trial court concluded that Dr. Teplitz's certificate "by implication" stated that Ms. Dier could not consent to her own choice for guardian.    In regard to Dr. Taplitz's certificate, the trial judge stated that:

I'll point out to the [HCDSS], I think, you know, the certificates here are, -- maybe I'm being too picky on these, but I've looked at them and I don't know if we need more than the certificates at this point.

We've got Dr. [Hamm's], it looks like it's ok to me. Dr. [Taplitz], it says, he -- she can't consent to appointment of the guardian.    I guess by implication you can say, he -- I guess, -- I hereby certify that she is mentally incompetent.

-12-

Appellant argues that the trial judge thus acknowledged the insufficiency of Dr. Taplitz's certificate and appellee contends that the trial judge asked for another certificate which Dr. DeJonge provided. Dr. Tablitz's certificate explicitly states that Ms. Dier is "mentally incompetent and/or physically disabled" and directs the reader to the comments which follow. What we find absent and required by the rules, is whether Ms. Dier "requires institutional care." Md. Rule 10-202(a). In contravention to appellant's contention, the trial court accepted the certificates into evidence "for the purposes of [the] proceeding" on October 14, 2005 and amended the petition prior to twenty-one days before the trial to include a legally sufficient certificate. Thus, the attachment of the certificate at issue was harmless error because appellant had a full and fair opportunity to litigate the issue of Ms. Dier's competency and presented no contradictory medical evidence.

Appellant claims that the testimony at trial on March 7, 2006 consisted of assertions by Dr. DeJonge that appellant asked too many questions of medical staff and that medical procedures he questioned were later changed. Summarily, appellant states that Ms. Dier's condition was not as described by Dr. DeJonge and, because the trial court recognized his love for his mother and her love for him, that appellant, as family, should be given guardianship. In response to appellant's proffer of an audio tape recorded two years prior to trial, the trial judge stated that he

had "no doubt that [appellant's] mother loves [him] tremendously." The court further stated on the record that:

> It's obvious to everybody in this proceeding that you have the closest, most intense relationship with you and your mother. That is a given, as far as I'm concerned. That is a fact I would find, I will find, and I think the [appellees] could probably stipulate.

> \*   \*   \*

> I have no doubt that -- that your mother would have designated either you or [Lyons], to be the people to make those decisions. I have no doubt about that, that your mother would have done that, and would certainly not have designated a public agency to do so. So I -- that, to me, is a given, and the question is just whether that is sufficient here. So I'm going to deny the request to present that additional evidence. I think it's not going to be relevant to anything, and the issues that it purports to go to are issues that are firmly established already in [appellant's] favor.

We will not disturb the rulings of the trial court on the evidence absent clearly erroneous fact finding and we give due regard to the trial court's opportunity to "judge the credibility of the witnesses." Md. Rule 8-131(c). In the instant matter, the trial judge had the opportunity to hear testimony from numerous witnesses over the course of seven hearings. Appellant presents, and we divine, no clearly erroneous fact finding by the trial court as it relates to Ms. Dier's condition or its finding that appellant's "insight has been clouded by his hope and his optimism" such that his view of the situation "is simply not in comporting with the clear reality of his mother's situation." From the extensive testimony presented to the trial court, the court found that appellant's approach to Ms. Dier's condition was inconsistent

-14-

with her welfare and safety.  Absent a showing that that finding is clearly erroneous, we shall not disturb it.  Md. Rule 8-131(c).

## Procedure of the Court

Appellant argues that it is "hornbook law" that the trial judge could not allow any testimony or evidence from the previous proceedings to be entered into the March 7, 2006 trial unless the court met the requirements of "Maryland Practice: Maryland Evidence State and Federal Section 804(1)."[4]  The trial court viewed the entirety of the proceedings and stated that "[w]e're incorporating all the testimony, the hours of testimony that you presented, including your own testimony that went on, you know, for a considerable time, the testimony of Dr. Taler, the testimony . . . . That's all incorporated and I'm considering that as part of the whole ball of wax here."

In *Tarachanskaya v. Volodarsky*, 168 Md. App. 587, 620 (2006), *rev'd on other grounds*, __ Md. __ (2007), we held that "[t]he court did not err as a matter of law by considering evidence outside of the proceedings before it, where such evidence was merely confirmatory of the evidence in the instant proceedings."

_____

[4]We presume appellant cites to Lynn Mclain, Maryland Evidence: State and Federal (2 vols.) (West Pub. Co., 1987) or (3 vols.) (rev. 3rd ed. 2001) which is persuasive but not mandatory authority for legal propositions in Maryland.

In the instant case, the trial judge heard hours of testimony in several proceedings beginning October 14, 2005. The trial judge ruled that the court "would consider the prior testimony taken before [the court] rather than simply repeat it here today." The March 7, 2006 trial included testimony that merely repeated what was incorporated. Thus, the incorporated testimony and evidence, including the physician's certificates, were properly before the court.

## Court-Appointed Counsel

Appellant argues that Doyle could not have represented Ms. Dier's desires, intentions or wishes because he had not established the proper attorney-client relationship before he filed Ms. Dier's answer to the petition for guardianship and answered, on her behalf, in open court on October 14, 2005. Appellant cites the Maryland Rules of Professional Conduct, Rule 1.14, which provides:

(a) When a client's capacity to make adequately considered decisions in connection with a representation is diminished whether because of minority, mental impairment or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

(b) When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial, or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian *ad litem*, conservator, or guardian.

-16-

(c) Information relating to the representation of a client with diminished capacity is protected by Rule 1.6. When taking protective action pursuant to paragraph (b), the lawyer is impliedly authorized under Rule 1.6(a) to reveal information about the client, but only to the extent reasonably necessary to protect the client's interests.

Md. Rule 16-812 Rules of Prof'l Conduct § 1.14. Appellant further contends that Doyle acted as an arm of the court because no attorney-client relationship had been established and the October 14, 2005 hearing went forward and addressed substantive actions without Ms. Dier's presence or a request by Doyle for a continuance to allow him to meet with Ms. Dier.

Comments five and six to the Rules of Professional Conduct guide the attorney who reasonably believes that his client suffers a disability; the attorneys should "take protective measures deemed necessary" and in determining the extent of the client's diminished capacity, the attorney is directed to, in appropriate circumstances, "seek guidance from an appropriate diagnostician."

The trial court rejected the petition for guardianship on October 14, 2005 and entered an order in favor of ordering Doyle to meet Ms. Dier and Ms. Dier to remain at Good Hope. The trial court further ordered that the Office on Aging and Doyle have complete access to Ms. Dier and her records and that appellant cooperate with Doyle and Ofelia Ross (Ross) of the Department on Aging.

Doyle waived Ms. Dier's right to be present at trial and appellant filed a Waiver of Appearance. Section 13-705(e) of the Estates and Trusts Article entitles the person alleged to be

-17-

disabled to be present at the hearing unless that right is waived or the person "*cannot be present because of physical or mental incapacity.*" *In re Lee*, 132 Md. App. at 705 n.13 (quoting Md. Code Ann., Est. & Trusts §13-705(e) (emphasis added)). Doyle was not required to have met with Ms. Dier to know from the pleadings and filing of appellant that Ms. Dier could not present herself for the hearing.

Doyle was under an obligation to maintain a normal client-lawyer relationship as far as reasonably possible. Md. Rule 16-812 Rules Prof'l Conduct 1.14(a); *see also In re Lee*, 132 Md. App. at 721. After the trial court ordered that Doyle be permitted to meet Ms. Dier, he did so and Ms. Dier did not communicate in any way with him. Testimony indicated that Ms. Dier was unable to communicate with anyone. Thus, Doyle took reasonably necessary protective action in accordance with his client's interest. The Comments to the Maryland Rules of Professional Conduct provide:

> In an emergency where the health, safety or a financial interest of a person with seriously diminished capacity is threatened with imminent and irreparable harm, a lawyer may take legal action on behalf of such a person even though the person is unable to establish a client-lawyer relationship or to make or express considered judgments about the matter, when the person or another acting in good faith on that person's behalf has consulted with the lawyer. Even in such an emergency, however, the lawyer should not act unless the lawyer reasonably believes that the person has no other lawyer, agent or other representative available. The lawyer should take legal action on behalf of the person only to the extent reasonably necessary to maintain the status quo or otherwise avoid imminent and irreparable harm. A lawyer who undertakes to represent a person in such an

exigent situation has the same duties under these Rules as the lawyer would with respect to a client.

Md. Rule 16-812 Rules of Prof'l Conduct §1.14 c.9.

The Court quoted with approval *Succession of Cloud*, 530 So. 2d 1146, 1150 (La. 1988) and opined that "[t]he disciplinary rules are mandatory rules that provide the minimum level of conduct to which an attorney must conform without being subject to disciplinary action." *Post v. Bregman*, 349 Md. 142, 166 (1998) (internal quotations omitted). Further, the *Post* Court held that "[u]pon this Court falls the primary and ultimate responsibility for regulating the practice of law and the conduct and admission of attorneys in this State." *Id.* at 163-64 (quoting *In re Application of Allan S.*, 282 Md. 683, 689 (1978) (quotations omitted)). Thus, appellant's reliance on §1.14 is misplaced before this Court and his issues regarding his perceived conduct of Doyle are not properly before this Court.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

# MemberoftheFamily.net

Get the nursing home care your loved one deserves.

**Home**|**Nursing Home Registry** | **Watch List** | **Danger Zone** | **Veterans** | **Quality Indicators** | **Media**|**History**

## National Nursing Home Watch List

**Nursing homes with recent survey violations or substantiated complaints for "actual harm" or immediate jeopardy." Click on a state to see homes cited for these problems.**



9/9/2007 8:50 AM

## Definitions

The Centers for Medicare/Medicaid Services (CMS) has defined the following terms in its Survey Protocol for Long Term Care Facilities which is based on 42 CFR Part 483:

**Guidance on Severity Levels.** There are four severity levels. Level 1, no actual harm with potential for minimal harm; Level 2, no actual harm with potential for more than minimal harm that is not immediate jeopardy; Level 3, actual harm that is not immediate jeopardy; Level 4, immediate jeopardy to resident health or safety. These four levels are defined accordingly:

1. **Level 1** is a deficiency that has the potential for causing no more than a minor negative impact on the resident(s).

2. **Level 2** is noncompliance that results in minimal physical, mental and/or psychosocial discomfort to the resident and/or has the potential (not yet realized) to compromise the resident's ability to maintain and/or reach his/her highest practicable physical, mental and/or psychosocial well-being as defined by an accurate and comprehensive resident assessment, plan of care, and provision of services.

3. **Level 3** is noncompliance that results in a negative outcome that has compromised the resident's ability to maintain and/or reach his/her highest practicable physical, mental and psychosocial well-being as defined by an accurate and comprehensive resident assessment, plan of care, and provision of services. This does not include a deficient practice that only has limited consequence for the resident and would be included in level 2 or in level 1.

4. **Level 4** is immediate jeopardy, a situation in which immediate corrective action is necessary because the facility's noncompliance with one or more requirements of participation has caused, or is likely to cause, serious injury, harm, impairment, or death to a resident receiving care in a facility.

### Lists and Advice

Registry of U.S. Nursing Homes
Nursing Home Honor Roll
State Ombudsmen List
Alphabetical List of U.S. Nursing Homes

## Read Our New Book





As seen on NBC's Today Show

"Danger Zone will provide you with a plan and the tools to get the right care at the right time."
—Edward C. Watters III, M.D.,
          coauthor of *Danger Zone*

### Danger Zone
**Unlock the Secrets of Nursing Home Medical Records and Protect Your Loved One**

With advice from a recognized expert and line-by-line translations of actual medical charts and reports, our new book, *Danger Zone*, will help you become a better advocate for your family member.

Here's what readers are saying about *Danger Zone*:

"Every person with a common interest of protecting a loved one in a nursing home situation needs this book! . . . It is a must have book!" —Reader review, Barnes & Noble.com

"Absolutely fabulous and should hereafter be referred to as the bible for families of nursing home residents." —Bob Bronaugh, Manor Care Chevy Chase (Maryland) Family Council

"There is no other book like it .... A must read for families, attorneys and even nursing home inspectors." —Violette King, Nursing Home Monitors (Illinois)

**Read More about Danger Zone**
**Purchase Danger Zone**

### Subscription Pages
VHA / VISN Information

### Forms
HIPAA Complaint Form
Maryland Deficiency Form

**About MemberoftheFamily.net**
History
Media Inquiries
Contact Us

MemberoftheFamily.net

Home|Nursing Home Registry |Watch List |Danger Zone I Veterans I Quality Indicators I Media I History I Contact Us I Privacy
© 2004 Member of the Family LLC

# MemberoftheFamily.net
### Get the nursing home care your loved one deserves.

## MARYLAND NURSING HOME WATCH LIST

### NURSING HOMES CITED FOR ACTUAL HARM / IMMEDIATE JEOPARDY

**BY CENTERS FOR MEDICARE & MEDICAID SERVICES: ANNUAL AND COMPLAINT SURVEY DATA**

All results based on data obtained from CMS 06/15/07. More recent reports and corrections may be available. Ask the nursing home administrator.

| WARNING | REASON |
|---|---|
| ▣ ▣ ▣ | ACTUAL HARM / IMMEDIATE JEOPARDY NOTED ON 3 OR MORE SURVEYS |
| ▣ ▣ | ACTUAL HARM / IMMEDIATE JEOPARDY NOTED ON 2 SURVEYS |
| ▣ | ACTUAL HARM / IMMEDIATE JEOPARDY NOTED ON 1 SURVEY |

| WARNING | FACILITY | CITY | ADDRESS |
|---|---|---|---|
| ▣ | ARCOLA HEALTH AND REHABILITATION CENTE | SILVER SPRING | 901 ARCOLA AVENUE |
| ▣ | BRIGHTWOOD CENTER | LUTHERVILLE | 515 BRIGHTFIELD ROAD |
| ▣ ▣ | CALVERT COUNTY NURSING CTR. | PRINCE FREDERICK | 85 HOSPITAL ROAD |
| ▣ | CARRIAGE HILL BETHESDA | BETHESDA | 5215 CEDAR LANE |
| ▣ | CARROLL LUTHERAN VILLAGE | WESTMINSTER | 200 ST. LUKE'S CIRCLE |
| ▣ | CHERRY LANE | LAUREL | 9001 CHERRY LANE |
| ▣ ▣ | CHESAPEAKE WOODS CENTER | CAMBRIDGE | 525 GLENBURN AVENUE |

| | | | |
|---|---|---|---|
| ■ ■ | CHESTERTOWN NURSING & REHAB CT | CHESTERTOWN | 415 MORGNEC ROAD |
| ■ ■ | CORSICA HILLS CENTER | CENTREVILLE | 205 ARMSTRONG AVENUE P.O. BOX 50 |
| ■ | DEVLIN MANOR NURSING HOME | CUMBERLAND | 10301 NORTH EAST CHRISTIE ROAD |
| ■ | EASTPOINT REHAB. & NURSING HOME | BALTIMORE | 1046 OLD NORTHPOINT ROAD |
| ■ | FAIRFIELD NURSING CENTER | CROWNSVILLE | 1454 FAIRFIELD LOOP ROAD |
| ■ | FAIRLAND NURSING AND REHABILITATION CE | SILVER SPRING | 2101 FAIRLAND ROAD |
| ■ | FAYETTE HEALTH AND REHABILITATION CENT | BALTIMORE | 1217 W. FAYETTE STREET |
| ■ | FROSTBURG VILLAGE | FROSTBURG | ONE KAYLOR CIRCLE RT36 & RT40 |
| ■ ■ | FUTURE CARE PINEVIEW | CLINTON | 9106 PINEVIEW LANE |
| ■ | FUTURE CARE SANDTOWN-WINCHESTER | BALTIMORE | 1000 N. GILMORE STREET |
| ■ | GREATER LAUREL HEALTH AND REHABILITATI | LAUREL | 14200 LAUREL PARK DRIVE |
| ■ | HAMILTON CENTER | BALTIMORE | 6040 HARFORD ROAD |
| ■ ■ | HARBORSIDE HEALTHCARE HARFORD | BALTIMORE | 4700 HARFORD ROAD |
| ■ | HAVEN NURSING HOME | BALTIMORE | 3939 PENHURST AVENUE |
| ■ ■ | HEARTLAND HEALTH CARE HYATTSVILLE | HYATTSVILLE | 6500 RIGGS ROAD |
| ■ ■ | HERITAGE HARBOUR HEALTH AND REHABILITA | ANNAPOLIS | 2700 SOUTH HAVEN ROAD |
| ■ | HOMEWOOD AT CRUMLAND FARMS | FREDERICK | 7407 WILLOW ROAD |
| ■ | JULIA MANOR HEALTH CARE CENTER | HAGERSTOWN | 333 MILL STREET |
| ■ ■ ■ | LAPLATA CENTER | LAPLATA | 1 MAGNOLIA DRIVE |
| ■ | LAURELWOOD CARE CTR AT ELKTON | ELKTON | 100 LAUREL DRIVE |
| ■ | LOCH RAVEN CENTER | BALTIMORE | 8720 EMGE ROAD |
| ■ | LOCHEARN NURSING HOME, LLC | BALTIMORE | 4800 SETON DRIVE |

| | | | |
|---|---|---|---|
| ☒ | LORIEN HEALTH SYSTEMS - RIVERSIDE | BELCAMP | 1123 BELCAMP RD |
| ☒ | MALLARD BAY CARE CTR CAMBRIDGE | CAMBRIDGE | 520 GLENBURN AVENUE |
| ☒ | MANOR CARE BETHESDA | BETHESDA | 6530 DEMOCRACY BOULEVARD |
| ☒ | MANOR CARE HEALTH SERV WHEATON | WHEATON | 11901 GEORGIA AVENUE |
| ☒ | MANOR CARE HEALTH SERV. TOWSON | TOWSON | 509 EAST JOPPA ROAD |
| ☒ | MARLEY NECK HEALTH AND REHABILITATION | GLEN BURNIE | 7575 E. HOWARD ROAD |
| ☒ | MILFORD MANOR NURSING HOME | BALTIMORE | 4204 OLD MILFORD MILL ROAD |
| ☒ ☒ | NMS HEALTHCARE OF HAGERSTOWN, LLC | HAGERSTOWN | 14014 MARSH PIKE |
| ☒ | NORTHAMPTON MANOR | FREDERICK | 200 EAST 16TH STREET |
| ☒ | RAVENWOOD NSG. & REHAB. CTR. | BALTIMORE | 501 W. FRANKLIN STREET |
| ☒ | SPA CREEK CENTER | ANNAPOLIS | 35 MILKSHAKE LANE |
| ☒ | ST. MARY'S NURSING CENTER INC | LEONARDTOWN | 21585 PEABODY STREET |
| ☒ | STELLA MARIS, INC. | TIMONIUM | 2300 DULANEY VALLEY RD |
| ☒ | SUMMIT PARK HEALTH AND REHABILITATION | CATONSVILLE | 1502 FREDERICK ROAD |
| ☒ | THE WESLEY HOME, INC. | BALTIMORE | 2211 W ROGERS AVENUE |
| ☒ | WESTERN MARYLAND HEALTH SYSTEM EXTENDE | CUMBERLAND | 900 SETON DRIVE |

**National Watch List: Select a State**    **Home Page**    **U.S. Nursing Home Registry: State Listings**    **Contact Us**    **Quality Indicators/Staffing**

## Lists and Advice

Alphabetical List of U.S. Nursing Homes
National Watch List
Nursing Home Honor Roll
State Ombudsmen List

**Read Our New Book**




As seen on NBC's

**Subscription Pages**
VHA / VISN Information

**Forms**
HIPAA Complaint Form
Maryland Deficiency Form



Today Show

'Danger Zone will provide you with a plan and the tools to get the right care at the right time.'
—Edward C. Watters III, M.D., coauthor of *Danger Zone*

**About MemberoftheFamily.net**

History
Media Inquiries
Contact Us

**Danger Zone**
**Unlock the Secrets of Nursing Home Medical Records and  Protect Your Loved One**

**Read More about Danger Zone**
**Purchase Danger Zone**

**MemberoftheFamily.net**

**Home** I **Nursing Home Registry** I **Watch List** I **Danger Zone** I **Veterans** I **Quality Indicators** I **Media** I **History** I **Contact Us** I **Privacy**
© 2005 Member of the Family LLC

# MemberoftheFamily.net

Get the nursing home care your loved one deserves.

## NATIONAL NURSING HOME WATCH LIST

**SUMMIT PARK HEALTH AND REHABILITATION: Actual Harm and/or Immediate Jeopardy**

**1502 FREDERICK ROAD**

**CATONSVILLE MD**

**TELEPHONE: 4107473287**

**TYPE OF OWNERSHIP: For profit - Corporation**

**NUMBER OF BEDS / PERCENT OCCUPIED: 143 / 92**

♀

Based on the annual and complaint survey data reported by CMS as of 06/15/07 , this home is listed because at least one area they caused actual harm to a patient and/or subjected the patients to immediate jeopardy. Mc recent reports/corrections may be available. Check with the nursing home administrator. Actual harm is indicated by a score of G, H, I, while J, K, L indicate immediate jeopardy. The color coding scheme is below:



'Danger Zone provides you with the plan and the tools to get the right care at the right time.'

Edward C. Watters III, M.D.



| RATING | DEFINITION |
|--------|------------|
|  | actual harm and/or immediate jeopardy: score= G,H,I,J,K,L |

|  | potential for more than minimal harm: score= D, E, F |
|---|---|
|  | potential for minimal harm: score= A, B, C |

## COMPLAINT SURVEY RESULTS: SUBSTANTIATED

| DATE | RATING | COMPLAINT VIOLATION CONFIRMED | SCOPE/SEVERITY CODE |
|---|---|---|---|
| 09/14/2004 |  | Make sure that the nursing home area is free of dangers that cause accidents. | D |
| 03/02/2005 |  | Let the resident refuse treatment or refuse to take part in an experiment. | D |
| 03/02/2005 |  | Keep accurate and appropriate medical records. | B |
| 03/10/2005 |  | Give residents proper treatment to prevent new bed (pressure) sores or heal existing bed sores. | D |
| 03/10/2005 |  | Make sure each resident is being watched and has assistance devices when needed, to prevent accidents. | D |
| 03/10/2005 |  | Make sure that residents are well nourished. | D |
| 12/19/2005 |  | Have a program to keep infection from spreading. | E |
| 03/08/2006 |  | Provide needed housekeeping and maintenance. | E |
| 03/08/2006 |  | Give professional services that meet a professional standard of quality. | G |
| 03/08/2006 |  | Give residents proper treatment to prevent new bed (pressure) sores or heal existing bed sores. | E |

| 03/08/2006 | | Make sure that residents are safe from serious medication errors. | E |
| 03/08/2006 | | Keep a resident apart from the others if the resident has an infection that can spread. | E |
| 04/25/2006 | | Let the appropriate people see and talk to each resident. | B |
| 05/23/2006 | | Let the resident refuse treatment or refuse to take part in an experiment. | D |
| 05/23/2006 | | Keep each resident free from drugs that restrain them, unless needed for medical treatment. | D |
| 05/23/2006 | | Provide social services for related medical problems to help each resident achieve the highest possible quality of life. | D |
| 08/31/2006 | | Make sure each resident is being watched and has assistance devices when needed, to prevent accidents. | D |
| 10/04/2006 | | 1) Hire only people who have no legal history of abusing, neglecting or mistreating residents; or 2) report and investigate any acts or reports of abuse, neglect or mistreatment of residents. | D |
| 10/04/2006 | | Give each resident care and services to get or keep the highest quality of life possible. | D |
| 02/02/2007 | | Give professional services that meet a professional standard of quality. | E |
| 02/02/2007 | | Make sure that each residents' abilities to take care of themselves does not lessen, unless a change cannot be avoided. | D |
| 02/02/2007 | | Prevent a loss in range of motion among residents who entered the nursing home with a full range of motion. | E |

| 02/02/2007 | | Have a program to keep infection from spreading. | D |
| 02/02/2007 | | Make sure that a working call system is available in each resident's room or bathroom and bathing area. | D |

---

| **National Watch List: Select a State** | **Home Page** | **U.S. Nursing Home Registry: State Listings** | **Contact Us** | **Quality Indicators/Staffing** |

---

## Lists and Advice

Alphabetical List of U.S. Nursing Homes
National Watch List
Nursing Home Honor Roll
State Ombudsmen List

**Subscription Pages**
VHA / VISN Information

**Forms**
HIPAA Complaint Form
Maryland Deficiency Form

---

## About MemberoftheFamily.net

History
Media Inquiries
Contact Us

## Read Our New Book




As seen on NBC's
Today Show

'Danger Zone will provide you with a plan and the tools to get the right care at the right time.'
—Edward C. Watters III, M.D.,
coauthor of *Danger Zone*

**Danger Zone**
**Unlock the Secrets of Nursing Home Medical Records and  Protect Your Loved One**

**Read More about Danger Zone**
**Purchase Danger Zone**

---

9/9/2007 8:52 AM

IN THE MATTER OF DOROTHY DIER     :    IN THE
FOR THE APPOINTMENT OF           :    CIRCUIT COURT
A GUARDIAN OF THE PERSON       :    FOR HOWARD COUNTY
                                             :    CASE NO. 13-C-05-63324
                                             :

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

# REQUEST TO WITHHOLD AND WITHDRAW TREATMENT

Phyllis Madachy, Administrator of the Howard County Office on Aging, by and through her attorneys, Margaret Ann Nolan, County Solicitor, and Beverly I. Heydon, Assistant County Solicitor, move that this Honorable Court authorize the Guardian of the Person to withhold and withdraw medical treatment on behalf of Dorothy Dier. In support thereof, she states:

1. On March 7, 2006, this Court appointed Phyllis Madachy, Administrator of the Howard County Office on Aging, as the Guardian of the Person of Dorothy Dier.

2. Dorothy Dier is currently placed at Summit Park Health Center, 1502 Frederick Road, Catonsville, MD 21228. She suffers from dementia, depression, anemia and a history of decubitus ulcers. Dorothy Dier is unable to communicate her needs. She requires assistance with all activities of daily living. Medications and nutrition are administered through a feeding tube.

3. Since April, 2007, Dorothy Dier's condition has worsened. She is more contracted and as a result, she suffers from multiple decubitus ulcers all in different stages. Her contractures are such that she is in the fetal position and she is contracting her legs under her buttocks. Her arms and hands are also contracted to the point where she wears hand splints at all times.

4. James Tansinda, M.D., her primary care physician, has recommended that a Do Not Resuscitate Order be placed on her record. Deepak Baseron, M.D., Medical Director at Summit Park Nursing Home, was asked to give the Office on Aging a second opinion. Dr. Baseron

agrees that a Do Not Resuscitate Order should be placed on Dorothy Dier's record. (See attached certificates marked as Exhibit 1 and 2).

5. The court order entered on June 7, 2007, appointing Phyllis Madachy as the Guardian of the Person, does not permit the Office on Aging to make life-threatening medical decisions. Thus, the Office on Aging is not permitted to give consent for the Do Not Resuscitate Order, hospice services, or the withholding of treatment without a court order.

WHEREFORE, the Howard County Office on Aging respectfully requests that the Court schedule this matter for a hearing to determine whether a Do Not Resuscitate Order should be issued by the court.

Respectfully submitted,

HOWARD COUNTY OFFICE OF LAW

Margaret Ann Nolan
County Solicitor

Beverly I. Heydon
Assistant County Solicitor
George Howard Building
3430 Courthouse Drive
Ellicott City, Maryland 21043
(410) 313-2103

Attorneys for Howard County
Department of Social Services

## AFFIRMATION

I solemnly affirm that the above information is true and correct to the best of my knowledge, information and belief, to wit.

Ofelia Ross, Guardianship Case Manager
Howard County Office on Aging

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 28th day of August, 2007, a copy of the foregoing Request to Withhold and Withdraw Treatment and proposed order, was mailed, postage prepaid, to the following:

Anthony Doyle, Esq.
1002 Frederick Road
P.O. Box 21169
Catonsville, MD 21228
Attorney for Dorothy Dier

Ria Rochvarg, Esq.
P. O. Box 1907
Ellicott City, MD 21041-1907
Attorney for Dorothy Dier at the Adult Guardianship Review Board

Thomas Meachum, Esq.
Reese and Carney
10715 Charter Drive, Suite 200
Columbia, MD 21044
Court appointed Guardian of the Property

Gina D. Shaffer, Esq.
Shaffer Law Office, LLC
319 Fulford Avenue
Bel Air, MD 21014-3834
Attorney for Summit Park Nursing Home

Jerry L. Dier
11448 Rowley Road
Clarksville, MD 21029

Michelle Lyons
Confidential and Sealed Address
Notice to be sent by the Clerk's office

_____
Beverly I. Heydon
Assistant County Solicitor

IN THE MATTER OF DOROTHY DIER :   IN THE
FOR THE APPOINTMENT OF :   CIRCUIT COURT
A GUARDIAN OF THE PERSON :   FOR HOWARD COUNTY
                          :   CASE NO. 13-C-05-63324
                          :

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

## ORDER

Upon consideration of the Howard County Office on Aging's Request To Withhold And Withdraw Treatment and Request for a DNR Order, the Court finds by clear and convincing evidence that the withholding or withdrawal of life-sustaining procedures is in the best interest of Dorothy Dier, pursuant to Md. Code Ann., Est. & Trusts §13-713. It is, therefore, this _____ day of _____, 2007, hereby

ORDERED, that Phyllis Madachy, Administrator of the Howard County Office on Aging, or her designee/successor shall be, and hereby is, granted the authority to execute and deliver to Summit Park Health Center, or another licensed facility, (1) a "Do Not Resuscitate" order; (2) directive instructions which include "Do Not Resuscitate" and "Do Not Intubate" directions; and (3) any other document necessary to effectuate the same; and it is further

ORDERED, that the Guardian of the Person shall be, and hereby is, granted authority to consent to the withholding of a feeding tube if a physician finds that it is not effectively contributing to her comfort care or is causing her pain or is not alleviating pain; and it is further

ORDERED, that the Guardian of the Person shall be and hereby is authorized to consent to hospice services.

_____
Dennis M. Sweeney, Judge

Clerk, please send copies to:

Beverly I. Heydon, Esquire
Howard County Office of Law
3430 Courthouse Drive
Ellicott City, Maryland 21043

Ofelia Ross, Case Manager
Howard County Office on Aging
6751 Columbia Gateway Drive
Columbia, Maryland 21046

Anthony Doyle, Esq.
1002 Frederick Road
P.O. Box 21169
Catonsville, MD 21228
Attorney for Dorothy Dier

Ria Rochvarg, Esq.
P. O. Box 1907
Ellicott City, MD 21041-1907
Attorney for Dorothy Dier at the Adult Guardianship Review Board

Thomas Meachum, Esq.
Reese and Carney
10715 Charter Drive, Suite 200
Columbia, MD 21044
Court appointed Guardian of the Property

Gina D. Shaffer, Esq.
Shaffer Law Office, LLC
319 Fulford Avenue
Bel Air, MD 21014-3834
Attorney for Summit Park Nursing Home

Jerry L. Dier
11448 Rowley Road
Clarksville, MD 21029

Michelle Lyons
Confidential Address

**MARYLAND OFFICE ON AGING**
**PUBLIC GUARDIANSHIP PROGRAM**

**PHYSICIAN'S REQUEST FOR A DO NOT RESUSCITATION ORDER**

PATIENT'S NAME _DIER DOROTHY_
AGE: _94_ DOB: _2/16/1917_ CURRENT LOCATION: _Summit Park_
RESIDENCE: _1502 FREDERICK Road_
_Catonsville, MD 21228_

I, _JAMES AMMUNS_, M.D., PERSONALLY EXAMINED THE ABOVE-
NAMED PATIENT ON _8/10/07_,

AT THE TIME OF MY EXAMINATION, MY DIAGNOSTIC IMPRESSION WAS:
_Dementia - end stage, multiple decub ulcers / severe_
_contractures of body_

THE ABOVE-NAMED PATIENT SUFFERS FROM THE FOLLOWING TERMINAL
CONDITION (Describe in detail):
_end stage Dementia_

THE RISKS AND CONSEQUENCES THAT ARE ASSOCIATED WITH
CONTINUED RESUSCITATION ARE:
_not medically effective_
_and end stage dementia_

IN MY OPINION, THE DISADVANTAGE OF CONTINUED RESUSCITATION
OUTWEIGHS THE BENEFITS INVOLVED.

I DO SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTIES OF
PERJURY THAT THE CONTENTS OF THE FOREGOING DOCUMENT ARE TRUE
AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND
BELIEF.

_____          _8/10/07_
Physician                        Date
_300 ARMORY PLACE_
Address _SUITE 3H_
_443 552 2894_
Phone

**EXHIBIT**
_1_

MARYLAND OFFICE ON AGING
PUBLIC GUARDIANSHIP PROGRAM

## PHYSICIAN'S REQUEST FOR A DO NOT RESUSCIATION ORDER

PATIENT'S NAME _Dio—, Dorothy_

AGE: _a_   DOB: _2/16/1917_  CURRENT LOCATION: _Summit Pk_

RESIDENCE: _1502 Frederick Road_
_Catonsville, MD 21228_

I, _Deepak Baer_____, M.D., PERSONALLY EXAMINED THE ABOVE-
NAMED PATIENT ON _5/12/12_____,

AT THE TIME OF MY EXAMINATION, MY DIAGNOSTIC IMPRESSION WAS:
_Dementia, End Stage, multiple Decubitus Ulcer_

THE ABOVE-NAMED PATIENT SUFFERS FROM THE FOLLOWING TERMINAL
CONDITION (Describe in detail):
_End Stage Dementia_

THE RISKS AND CONSEQUENCES THAT ARE ASSOCIATED WITH
CONTINUED RESUSCITATION ARE:
_Medically Ineffective_

IN MY OPINION, THE DISADVANTAGE OF CONTINUED RESUSCITATION
OUTWEIGHS THE BENEFITS INVOLVED.

I DO SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTIES OF
PERJURY THAT THE CONTENTS OF THE FOREGOING DOCUMENT ARE TRUE
AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND
BELIEF.

_____          _5/12/12_____
Physician                          Date
_3455 Wilkens Ave  440_
Address
_Baltimore MD 21229_
_(410) 644-4444_
Phone

EXHIBIT
2

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

**I. (a) PLAINTIFFS**

Dorothy Dier
Jerry Dier

**DEFENDANTS**

~~~~~~~~~~~~~~~~~~~~~~~~

Phyllis Madachy, Director ETAL

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Baltimore
(EXCEPT IN U.S. PLAINTIFF CASES)

88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jerry L. Dier, Prose in Behalf of 11448
His mother DOROTHY DIER  Madochy dr
incapacitated  (202) 296-

Case: 1:07-cv-01637
Assigned To : Robertson, James
Assign. Date : 9/17/2007
Description: Habeas Corpus/2255

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

□ 1 U.S. Government
Plaintiff

(x) 3 Federal Question
(U.S. Government Not a Party)

□ 2 U.S. Government
Defendant

□ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZEN... ... ...**

FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A–N, that best represents your cause of action and one in a corresponding Nature of Suit)

**□ A. Antitrust**

□ 410 Antitrust

**□ B. Personal Injury/ Malpractice**

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

**□ C. Administrative Agency Review**

□ 151 Medicare Act

**Social Security:**
□ 861 HIA ((1395ff))
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g))
□ 864 SSID Title XVI
□ 865 RSI (405(g))

**Other Statutes**
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If Administrative Agency is Involved)

**□ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**□ E. General Civil (Other) OR □ F. Pro Se General Civil**

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☒ G. *Habeas Corpus/* 2255 2254 | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC 2254 and 28 USC 1651   Free Dorothy Dier from Legal custody; guardianship action

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $** _____   Check YES only if demanded in complaint   **JURY DEMAND:** ☐ YES   ☒ NO

**VIII. RELATED CASE(S) IF ANY** N.O.   (See instruction)   ☐ YES   ☒ NO   If yes, please complete related case form.

DATE 9/17/07   SIGNATURE OF ATTORNEY OF RECORD   *JC Dier, pro se, in behalf of his mother Dorothy Dier*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.



NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

SEP 1 7 2007

RECEIVED

