THE UNITED STATES DISTRICT COURT FOR DISTRICT OF COLUMBIA

Case No.07-1637 (JR)

DOROTHY DIER
Incapacitated
Summit Park Holding Facility
1502 Frederick Rd. Catonsville, MD 21228
JERRY L. DIER, her son and next friend
11448 Rowley Rd. Clarksville, MD 21029
(202)276-8716
      Plaintiffs

vs.

PHYLLIS MADACHY, DIRECTOR
OFFICE OF AGING,
HOWARD COUNTY, MARYLAND
Court Appointed Guardian of the Person
DOROTHY DIER held incapacitated
Designated agents, Peggy Rightenauer, Opheila Ross
6751 Gateway Drive, Columbia, MD 21046  and
JUDGE DENNIS SWEENEY,
State of Maryland, Howard County Circuit Court,
Howard County, Maryland
8360 Court Avenue, Ellicott City, MD 21043
Summit Park Health and Rehabilitation Center
Court Ordered Holding Facility
Director, Jacqueline. Hardy and designee Lottie Dorsey
And Doctors Bernhard, Baskeran and Tansandra and
Unit manager, Kim Williams and
Charge nurse, Richards, amongst others
1502 Old Frederick Rd.
Catonsville, MD  21228
      Defendants

Petition for a Writ of
Habeas Corpus for a
Person found Incapacitated

In State Custody

In The
Howard County
Circuit Court
Case No: 13-C-0563324

*Supplemental Filing Personal Jurisdictional Venue*

**PETITION PURSUANT TO 28 U.S.C. SECT. 2254, FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY-PLAINTIFF'S SEEKS HABEAS CORPUS RELIEF, RELEASE FROM STATE CUSTODY, UNDER THE UNITED STATES CONSTITUTION FOR VIOLATION OF PLAINTIFF'S FOURTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS, NAMELY RIGHT TO PRIVACY, RIGHT TO COUNSEL, RIGHT TO A FAIR TRIAL, RIGHT TO BE PRESENT, RIGHT TO A JURY TRIAL, RIGHT TO DUE PROCESS OF LAW AND RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT AND FOR FURTHER IMMEDIATE RELIEF PURSUANT TO 28 U.S.C. 1651, THE ALL WRITS ACT IN AID OF JURISDICTION-SUPP. FILING IN SUPPORT OF PERSONAL JURISDICTION AND VENUE**

RECEIVED
OCT - 2 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Your Petitioner, DOROTHY DIER, through and by her son, Jerry L. Dier, respectfully requests that this Court grant to her relief, the issuance of a writ of habeas corpus, releasing her from the "legal custody" of the State of Maryland, exercised through the State of Maryland Howard County Circuit, Judge Dennis M. Sweeney, and his designated agents, State of Maryland Howard County Office of Aging, Phyllis Madachy, Director, Summit Park, Jacqueline Hardy, Director.

Your Petitioner submits that jurisdiction is acquired through applicable traditional jurisdiction and venue considerations framed in the knowledge that the State of Maryland Howard County Circuit Judge Dennis M. Sweeney individually and by and through his agent State of Maryland Howard County Office of Aging and Department of Social Services micromanaged a process which had as its direct consequence DOROTHY DIER'S present status and dire predicament at Summit Park.

## THE FACTS: PERTAINING TO THE LEGAL ISSUES OF JURISDICTION AND VENUE

Phase 1

1- In September 2005, prior to the filing of any papers for guardianship in the Howard County Circuit Court, the Howard County Department of Social Services through its agent, Janice DiSibio and/or the Office of Aging, Howard County <u>directed</u> the medical staff at <u>Sibley Hospital in Washington, D.C.</u>, NAMELY, Dr. Peter Hamm and an associate to conduct an <u>examination</u> of DOROTHY DIER consistent with the Social Services belief of what was necessary to complete a filing for guardianship in Howard County Circuit Court, physicians certificates. <u>Physicians certificates</u> were completed by Dr. Hamm and an associate based on observations, examination and analysis *solely* taking place AND grounded in Washington, D.C., so as in the belief of the Representatives from Aging and/or Social Services to be in compliance with Maryland law. Both

2

physician certificates were filed as mandated as part of a petition for guardianship in the Howard County Circuit Court on September 28, 2005.

2- On or about December 7, 2005, during a status hearing before
Judge Sweeney, Judge Sweeney stated that he believed that
one of the filed physician certificates was defective.
Under Maryland law, Maryland Rule 10-201(10) and 10-202(a)(1) and
Maryland Code, Estates and Trusts, 13-705 (b) (2) and (3) the petitioner
in a guardian of the person action MUST file two attached
physician certificates for there to be a prima facie complete filing.
Interested Person Jerry L. Dier amongst other filings immediately, prior
To the initial hearing on October 14, 2004, filing a motion to dismiss
The petition based on the insufficiency under law off the filed
physician certificates.
Judge Dennis M. Sweeney, States of Maryland Howard County Circuit
Court *instead* of addressing the concerns raised as well as his concerns
As regards the sufficiency of the filed physician certificates
Judge Sweeney implicitly gave instructions to his agents,
the Department of Social Services andthe Office of Aging through
their legal representative the
Howard County Solicitor's Office, Beverly Heydon, as follows

> So, I'll point out to the Department, I think you know
> The certificates here are, - - maybe I'm being too picky
> On these, but I've looked at them and I don't know
> If we need more than the certificates at this point.

<u>As a result of a conversation between Beverly Heydon and Ophelia Ross-</u>
Ophelia Ross,
  The appointed representative of Judge Dennis M. Sweeney, concerning the
  status of DOROTHY DIER,
  pursuant to Court Order, had a conversation with the legal representative
  of the
  Howard County Department of Social Services and Aging,
  Beverly Heydon,
  Howard County Solicitor's Office as regards
  Judge Sweeney's comments in open court concerning the apparent
  Deficiency in one of the filed physician certificates.
  Ms. Ross knew exactly what Judge Sweeney meant, as evidenced by this
  Question and Answer,

MR. DIER: Would it be a fair statement that it was of some concern
To you - not to anyone else, but to you, that the second physician
Assessment be corrected according to what the Court had noted on
December 7th? This was of some concern on December 12th and 13th.

MS. ROSS: Of concern because Judge Sweeney brought it to
the attention.

Following the apparent <u>direction, either implied or direct</u>
of Beverly Heydon so as to meet
Judge Sweeney's <u>demands and instructions, to wit, get it done,</u>
Another physician certificate,
Ophelia Ross went to see DOROTHY DIER
AT
Howard County General.
On December 30, 2005, Jerry L. Dier arrived at Howard County
General between 8-8:30 a,m. and was told by the nurse for his mother
that a lady unknown
to her appeared at approximately 7 a.m. and
Requested information concerning DOROTHY DIER.
As well as requested that a Mental Competency Examination be
Conducted by a doctor at Howard County General.
The nurse described this person in detail and it was without doubt
Opheilia Ross.
The unknown person responded that she had a court order, giving her
The authority to request that a mental competency examination
be conducted. The nurse was suspicious due to the early hour and
she did not know this person. The nurse asked to see the court order.
This person had no such order, and said she did not have it with her
and abruptly left.
Jerry L. Dier immediately brought this matter
To the attention of senior staff members at the hospital and then to the
Hospital's legal department.
Jerry L. Dier was told that both Janice DiSibio(Department of
Social Services), and Ophelia Ross
Had *now* faxed a copy of a Court order to the hospital after the unknown
person believed to be Opheilia Ross, and later at a hearing confirmed to
be  Opheilia Ross by her own admission, had abruptly left the hospital.
Seemingly, Ms. Ross had contacted Ms. DiSibio and in a futile attempt
To cover up this most inappropriate action, misrepresenting the substance
Of a Court order so as to gain a tactical advantage in ongoing litigation.
Judge Sweeney made himself part of this conduct when he brushed this
Information of wrongdoing aside when brought to his attention.
Said  order
in pertinent part gave Ms. Ross the ability to gain access to certain
medical records, but

in NO WAY, MANNER OR FASHION gave Ms. Ross
the authority and/or right to
Create Medical Records.
The legal Department at Howard County General AGREED and
Promised Mr. Dier that NO MENTAL COMPETENCY examination and/or
Competency Certificate would be generated by the Hospital staff.


The initial trial date was January 4, 2006; it was changed upon a filing
of a request for continuance by Interested Person Jerry L. Dier, due
to DOROTHY DIER'S hospitalization.

4- Ophelia Ross stated at a January 4, 2006, hearing before
Judge Sweeney that DOROTHY DIER could be transferred back to
Assisted Living Residence in Howard County as soon as she
Was able to take in sufficient food in by mouth then she can return back to
the assisted living facility.

> She stabilized and as of yesterday she was in a
> Regular room and a nasogastric tube, which had
> Been feeding her, was removed. She was able
> To take in about 25 percent of her breakfast and
> 100 percent of, like, a supplement shake.
> She seemed to be stable. Not very alert. Not very
> Verbally communicative, but other than that, stable.

Phase II

5- On January 4, 2006, after Jerry L. Dier had attended the converted trial to
status hearing conference, he immediately went to see his mother. Soon after he
left, in the mid to late afternoon, Without either Notice or Consent
Medical staff at Howard County General performed a surgical debridement
Of a bedsore area on DOROTHY DIER'S right hip, creating a very large
crater, down to the bone, in that area. Apparently, no one on Mrs. Dier's floor
knew what had happened; when
Jerry L. Dier arrived early the following morning he saw a large bandage on
His mother's right hip and asked the nurse why was this area had been
bandaged.
She did not know, and slowly removed the bandaging. To everyone's Shock
there was a large crater that looked like the size of a golf ball over two inches
across and right down to the bone. Jerry L. Dier complained, wanting to know
how this could have taken place. The doctor on the floor, told him that he could
not talk about it without his lawyer being present-like a criminal caught in the
act, this doctor chose to lawyer up--here in a medical hospital, where
DOROTHY DIER had been taken against the advice of Jerry L. Dier, who had
summoned an ambulance service to take his mother from the Howard County

Aging recommended assisted living facility to Montgomery General where Mr. Dier knew a doctor who had treated his mother only two month's earlier and who had responded that morning to Mr. Dier's call, stating he was available on this day, rather than to a Hospital whose reputation was less then stellar. The so called medical doctor who had performed the surgery told Mr. Dier that more surgery might be needed. Mr. Dier immediately made arrangements to have his mother transferred to Washington Hospital Center(WHC), in Washington, D.C. This move was accomplished on Sunday, January 8, 2006, as Mr. Dier left a series of urgent messages with Judge Sweeney's chambers.

DOROTHY DIER, while at Howard County General passed multiple swallow tests, at least one in the presence of her son Jerry L. Dier. Moreover, one particular instance is very instructive as to the nature of DOROTHY DIER'S depression, totally ignored at Summit Park, as well as in the main not heeded, although recognized at WHC. On a day or so prior to DOROTHY DIER being transferred to WHC from Howard County General, Jerry L. Dier was in his mother's room talking to a rather attractive nurse, and DOROTHY DIER, commented, that it was nice that he[her son] was he talking to such an attractive young lady. The nurse was startled to hear DOROTHY DIER TALK and told them that the secret was out that she know that DOROTHY DIER COULD TALK, RESPOND AND UNDERSTAND EVERYTHING THAT WAS TAKING PLACE AROUND HER. THE N URSE ASKED THIS QUESTION, WHY DID HIS MOTHER PICK AND CHOOSE, WHEN TO TALK? The answer lay in DOROTHY DIER'S mental status, depression-she would pick and choose when and what she wanted to talk about.

6- Dr. De Jonge was assigned to assist My Mother. Everything went smooth at first;. Then there were calls from the Howard County Office of Aging and/or Social Services and everything changed. My Mother who had been in intensive care and in the general ward at Howard County General with constant testing, monitoring and feeding for two weeks was found by Dr. De Jonge to suffer from severe malnutrition. This is the same DOROTHY DIER who Ms. Ross had stated in court on January 4, 2006, only 4 days before Mrs. Dier's transfer to the Washington Hospital Center, that DOROTHY DIER was able to take in about 25 percent of her breakfast and 100 percent of, like, a supplement shake, the nasogastric tube had been removed and she was on the way to be taken back to her recommended assisted living facility. Dr. DeJonge acknowledged that he had NEVER read or reviewed or seen the medical history from Howard County General. He told Mr. Dier, first feeding by the mouth is preferable, then a nasogastric tube was used due to the extreme amounts of food, liquid supplement he required to effectively deal with My Mother's, according to Dr. DeJonge malnourished state; Dr. DeJonge initially suggested to Jerry L Dier that Mrs. Dier could go back to her assisted living residence with a nasogastric tube, which he and the staff at the hospital could show him how to use, it could be used safety for a short period of time, up to three weeks, until Mrs. Dier began eating sufficient amounts of food on her own. Abruptly, this plan of

action of Dr. DeJonge was dismissed by Dr. DeJonge, apparently after he spoke to. Representatives from the above Howard County agencies who were seen at Washington Hospital Center so as to <u>direct</u> the doctors assigned to DOROTHY DIER to complete physician certificates to assist them and the Maryland Court, their principle in the litigation in Maryland (Janice DiSibio also acknowledged that she had been at Sibley Hospital to speak to Dr. Hamm-to apparently <u>direct</u> him to complete two physician certificates so as to as she believed to be in compliance with Maryland law). Dr. DeJonge's NEW <u>plan apparently at the direction of the Howard County agency representatives</u> became to insert a gastric feeding tube into DOROTHY DIER'S stomach. I specifically told Dr.DeJonge, with as much emphasis as possible, that in My Mother's present mental state, depression, the insertion of a stomach feeding tube would and could only be interpreted by her, as a sign of total and complete surrender, and only serve to make worse My Mother's mental state, by deepening her state of depression to a level where she had never been before. He told me that he had spoken to *his mother* about what was to be done if she was ever in a condition where a gastric feeding tube was contemplated and they (he and his mother) had agreed to remove all supportive life sustaining devices and procedures, rather than engage in such a procedure. I was taken back at this comment, now, being much more aware than before of this Doctor's personal viewpoint as to life and the treatment of the elderly. The <u>feeding tube</u> was inserted on January 25, 2006, causing tortuous injury to My Mother as a <u>direct consequence</u> of Judge Sweeney and his appointment of Aging as temporary guardian on January 23, 2007, who through their agent at the time, Peggy Rightenauer gave permission for the insertion of the feeding tube, in direct contradiction to Dr. DeJonge's initial plan to utilize a nasogastric tube, Dr. DeJone's observation of My Mother eating ice cream on or about January 18, 2006, as well as Aging's other agent, Opheila Ross' statement in court on January 4, 2006, that DOROTHY DIER was eating 25 percent of her breakfast and was taking 100 percent of her liquid supplement, and in spite of the fact that DOROTHY DIER has passed multiple swallow tests at Howard County General and as ordered by the medical staff as their course of treatment, DOROTHY DIER was given both foodstuffs and liquid supplement which as stated immediately, according to Ophelia Ross, DOROTHY DIER was eating and drinking.

I was there as always for My Mother, no one from Aging or Social Services was present-the gastric feeding tube was inserted during a surgical procedure in spite of the fact that I had related to the medical doctors at Washington Hospital Center a full and complete account of My Mother's psychiatric history since her breakdown at the Washington Hospital Center, 14 years earlier, after My Father, My Mother's Husband, Rabbi Richard R. Dier had his chest opened three times within a little more than a day after a second heart bypass surgery(my father's first bypass surgery was in 1983, he also had an abdominal aneurism surgery in 1985, hip surgery in 1989, and angioplasty in 1991, My Mother cared for My Father fully and completely after each major surgery,

nursing him back to health) in order to stop the bleeding and then My Father contracted pneumonia and was in the WHC intensive care unit for 9 weeks while at the same time My Mother, who had no prior psychiatric history, she was 76, suffered a complete mental breakdown and initially was in the WHC psychiatric unit while her husband was in the intensive care unit. My Mother recovered immediately upon hearing My Father's voice, he would be coming to see her and then take "Dot" back home with him, which he did.

I can not close this portion of this filing without emphasizing as I did to Dr. DeJonge the importance to My Mother of eating-she loves food, especially chocolate, ice cream, pizza and French fries and had recently developed a taste for Wendy's Frosty. My Mother could eat it all, No dietary restriction, as healthy as any human being could be at any age prior to her daughter, Michelle Lyons, my sister telling My Mother in late July, early August 2005, that she thought she had liver cancer in spite of the fact that I had warned my sister as to how Our Mother might react to this news-to My Mother, family is EVERYTHING. I was sitting within a few feet of My SISTER WHEN SHE TOLD MY MOTHER, I IMMEDIATELY SAW MY MOTHER'S HEAD GO DOWN, HER EYES CLOSE and that is the point in time that had led My Mother to where she is at the present time. All this was made known to Dr. DeJonge as well as where he could go to get her medical records. Dr. DeJonge, in spite of what he had been told and what he had seen for himself went forward, no matter that his patient, DOROTHY DIER, when asked only a few days before the insertion of the feeding tube, what was her name and where was she, was able to respond and answer fully and completely, and that he in my presence had given her ice cream as reward which she ate without any difficulty, as well as some that I gave her in Dr.DeJonge's presence. An order went out for chocolate ice cream, my Mother's favorite, however said order was never acted upon. Apparently, Ophelia Ross and Janice DeSibio had set the <u>train in motion</u>, with Judge Sweeney as the <u>conductor</u>, nothing was to stand in their way.

7-Moreover, on or about January 23, 2006, the Office of Aging was named as temporary guardian of My Mother DOROTHY DIER by Howard County Circuit Judge Dennis M. Sweeney ground on the testimony of medical doctor, Tabler, Dr. DeJonge's supervisor at the Washington Hospital Center. In the State of Maryland, the case law is clear that no matter who the court appoints as guardian, in reality the Court is the guardian. *Mack v. Mack, 618 A,2d 744(1993,* citing *Kicherer v. Kicherer, 400A. 2d 1097. 1100 (1979),* "In reality the court is the guardian, an individual who is given that title is merely an agent or arm of that tribunal in carrying out its sacred responsibility"
Judge Sweeney was truly both <u>driving</u> and <u>directing</u> this train.

8-The Howard County Department of Social Services and Office of Aging abandoned both earlier filed physician certificates with the petition and added two other physician certificates which they had <u>directed</u> Dr. Tabler and Dr.

8

DeJonge-to complete. Said additional physician certificates were based solely on observations taking place in the District of Columbia, while DOROTHY DIER was a patient at the Washington Hospital Center, although <u>directed</u> by the agents of Judge Sweeney, Aging and/or Social Services, with the Court, as the true guardian, the Court in a *real sense* was <u>directing</u> its agent to correct what it had noted at a status hearing on December 7, 2005, as a deficiency in one of the filed physician certificates. Ophelia Ross having failed in her mission at Howard County General, now WASHINGTON HOSPITAL CENTER PHYSICIANS WERE TO BE UTILIZED SO AS <u>TO GAIN</u> WHAT THE COURT BELIEVED TO BE NEEDED, COMPLETED PHYSICIAN CERTIFICATES SO AS TO SUPPORT IT PRE-ORDAINED FINDING, THAT DOROTHY DIER WAS IN NEED OF A GUARDIAN. Also, the Court must be held *accountable* for the insertion of the gastric feeding tube which was <u>directed</u> at the order of its agent, Aging, and from January 23rd on, the Court was in a *real sense* the guardian under Maryland law as noted in paragraph 7.

At trial on March 7,, 2006,, both the physician certificates and the testimony of Dr. DeJonge were based entirely on observations at the Washington Hospital Center in the District of Columbia, leading to analysis and prognosis, without utilizing prior medical records, made while DOROTHY DIER was his patient at the Washington Hospital Center in the District of Columbia.

9-State of Maryland, Howard County Judge Dennis M. Sweeney, was not at reluctant to state who was in total and complete charge, and <u>directing</u> this extra legal operation.. When the issue of how and under what circumstances My Mother was taken from the Washington Hospital Center to Summit Park, Judge Dennis M. Sweeney, who, according to Judge Sweeney, whose sister lives three houses from Summit Park, and his Attorney in Place, Anthony Doyle's office is only blocks away, and he, Judge Dennis M. Sweeney initially stated that he might, and this is a place which not forgettable, have been in, and latter attempt to retract said statement, stated,

> Mr. Dier:. ...The individual-individuals that placed my Mother in this facility are Miss Ross and the Department of Aging, And---

> The Court: <u>Under this Court Order</u>. September 22, 2006, guardian Of property trial.

10-The court proceeding on March 7, 2006, came down to the following, (1) a trial court, Judge Dennis M. Sweeney who warmly embraced a PURPORTED waiver of DOROTHY DIER'S right to jury trial, right to be present and an affirmative statement that DOROTHY DIER expressly desired a guardian be appointed, ALL made by her court appointed attorney in place, Anthony Doyle, who acknowledged AFTER inquiry by JerryL. Dier that his representations both in open court and by a signed filing Were False, having

been made Without Consultation after appointment, AND (2) the acceptance by the trial court of said waiver with full knowledge of its source and its false and misleading character, stating to Jerry L. Dier, who demanded a jury trial in behalf of His Mother, guaranteed under the United States Constitution, the State Constitution of Maryland and Maryland Rules and Maryland Law, weeks before trial, you can't really want a jury trial, it is clear that your mother needs a guardian. Judge Dennis M. Sweeney, State of Maryland Howard County Circuit Court Judge had improperly <u>directed</u> that he made the fact finder, and had openly declared that he had reached a decision weeks before trial. The actions of State of Maryland Howard County Circuit Judge Dennis M. Sweeney resulted by way of a crafted scheme, robbed DOROTHY DIER of her guaranteed protections under the United States Constitution, so as to reach a pre-ordained result.

Can this be the substantive event taking place in Maryland that this Court is to protect so as to deny jurisdiction, and thus life to DOROTHY DIER?

# THE LAW:  PERSONAL JURISDICITON AND VENUE
## APPLICATION TO THE FACTS

**PERSONAL JURISDICTION**

*This* Court in <u>Georgacarakos v. Watts, et al</u>, in Civil Action No. *06-1022(JR)*, *ADDRESSED the twin issues of Personal Jurisdiction and Venue in a case where an inmate e alleged that the employees of the Bureau of Prisons violated his constitutional rights. the plaintiff being held in Florence, Colorado, and the defendant Watts located at Bureau of Prisons headquarters in Washington, D.C..*

*I must apologize for utilizing so much of this Court's phraseology in sequence, however, it is only be done due to the excellence of its presentation and the most serious matters being addressed before this Court, after so long a wait for justice.*

Firstly, a Court may consider materials outside the pleadings in ruling on a motion to dismiss for lack of jurisdiction. Artis v. Greenspan, 223 F. Supp 2d 152 (DDC 2002). In Watts like the case at bar, none of the defendants appear to reside in the District of Columbia..

Secondly, we must next turn to the District of Columbia long-arm statute, D.C. Code Sect. 13-423, which is the basis upon which personal jurisdiction may be exercised over defendants who do not reside within or maintain a place of business in the District. The long-arm statute provides that a Court may exercise personal jurisdiction over those who have (1) <u>transacted business in the District of Columbia</u>; (2) contracted to supply services in the District of Columbia; (3) <u>caused a tortuous injury in the District of Columbia by an act or omission</u> : or (4) <u>caused a tortuous injury in the District of</u>

<u>Columbia by an act or omission outside the District</u> while regularly doing or soliciting business or <u>engaging in any other persistent of course of conduct in the District</u>.

Thirdly the defendants are subject to personal jurisdiction in a forum if they purposely "establish minimal contacts" such that "<u>the maintenance of the suit does not offend traditions notions of fair and substantial justice.</u> "Int'l Shoe Co.v.Washington, 326 U.S. 310, 326 (1945)..

FOR there to be personal jurisdiction under the long arm statute, a plaintiff must allege some specific acts evincing purposeful activity by defendants in the District of Columbia, by which they invoked the benefits and protection of its laws, and specific acts connecting the defendants with the forum. A defendant must "reasonably anticipate "being haled into" the plaintiff's chosen forum. *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980),

The petition describes in detail, with great specificity the nature and fashion and to what degree the defendants transacted business in the District of Columbia or committed and/or caused a tortious injury in the District of Columbia, and/or caused tortuous injury in the District of Columbia by an act or omission outside the District of Columbia while engaging in any other persistent course of conduct in the District of Columbia. From the facts set forth herein, DOROTHY DIER'S claim for relief clearly has a "discernible relationship" with the defendant's activities directed at her in the District of Columbia. Her claims relate to the activities engaged in by the defendant's in the District of Columbia, <u>but for</u>, there could have been NO judicial proceeding in the State of Maryland. The defendant's "purposely availed" themselves of the benefits and privileges of conducting activities in Washington, D.C., "such that [they] should

12

reasonably anticipate being haled into court here. " *World-Wide Volkswagon Corp*

Therefore, Jurisdiction here also does not offend "traditional notions of fair play and substantial justice" because relevant events occurred in this district and the situs of the defendants from the district, only the distance of a normal commute to work. The Court has personal jurisdiction over the defendant's based on the long arm statute.

The defendant's, State of Maryland, Howard County, Office of Aging, Phyllis Madachy, Director, and Peggy Rightenauer and Ophelia Ross, designated agents, the State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney, both in his status as Judge in the State of Maryland Howard County Circuit Court and in addition, his role flowing therefrom, as the **true** guardian of DOROTHY DIER, and Summit Park, as an agent of the Court in both of its roles and/or the Office of Aging, and/or Department of Social Services reached into the District of Columbia by Court at various times either on their own or pursuant to order, by Judge Dennis M. Sweeney, SO AS TO engage in a process, a persistent course of conduct, wherein as of direct consequence("arising from") of the aforesaid DOROTHY DIER was put on trial in the State of Maryland Howard County Circuit Court and was swept away from the district and removed from the District of Columbia to the State of Maryland resulting in her described captivity at Summit Park, subjected to the most barbaric of treatments over an extended period of time..

**VENUE**

Venue is governed by 28 U.S.C. 1391. Under that statute venue is proper in (b)(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.. .... The purpose of venue statutes is to protect "a defendant from the

inconvenience of having to defend an action in a trial court that is either remote from the defendant's reside or from the place where the acts underlying the controversy occurred." Venue is proper if the "activities that transpired in the forum district were not insubstantial in relation to the totality of the events" alleged by the plaintiff..

Venue is proper in this judicial district because the overwhelming nature of events took place in the District of Columbia, which clearly "gave rise" to the claims advanced by the plaintiff here. If the defendant(s) claim that a more substantial portion of the relevant events occurred in Maryland, their argtument was addressed by a brother Juedge of this Court, the Honorable John D. Bates, on July 24, 2006, in his Memorandum Opinion in *Modaressi v. Vedadi*, Civil Action No. 05-2424(JDB), 441 f. Supp. 2d 51 (2006), " .... Defendants may even be right that this suit has a closer transactional nexus with the District of Maryland than with the District of Columbia. That argument, however, misapprehends the question of law that the Court must answer. Nothing in section 1391(b)(2) mandates that a plaintiff bring suit in the district where *the most substantial portion*(in the case at bar this is most certain true, the most substantial events took place in the District of Columbia, the Maryland Court only acting as an empty shell), nor does it require a plaintiff to establish that every event that supports an element of a claim occurred in the district where venue is sought. To the contrary, a plaintiff need only show that a 'substantial part of the events or omissions giving rise to the claim occurred" in that district. 28 U.S. C. Sect. 1391(b)(2). Indeed, the transactional-venue provision of section 1391(b)(2) clearly allows that, in some cases, a plainff will have a choice among multiple districts where a substantial portion of the underlying events occurred. Venue may be proper even if a greater part of the events giving rise to a claim

happened in another forum. It appears that section 1391(b)(2) is intended to place venue within the District of Columbia, even where the case also might be brought in another forum."

Judge Bates concluded, "Simply put, even if a substantial part of the events in this case took place in Maryland, that does not preclude plaintiff from filing suit in the District of Columbia if a substantial part of the events took place here, as well." See also, the Memorandum Opinion of the Honorable Judge Emmet G. Sullivan, United States District Judge, July 17, 2007 in *Radtke, et al,. v. Caschetta*, et al., Civil Action No. 06-2031 (EGS) for a further learned discussion as regards personal jurisdiction and venue.

**CONCLUSION**

<u>**Personal jurisdiction**</u>

An signature pattern of conduct has been set forth describing in detail how the State of Maryland Howard County Circuit Court Judge Dennis M. Sweeney, either individually and/or in concert with State of Maryland government agencies, or said Agencies acting on their own at some point in time and at other points in time acting at the direction of the State of Maryland Howard County Circuit Court Judge Dennis M. Sweeney were involved in a process to place DOROTHY DIER in "legal custody" to suffer "cruel and unusual punishment," including that inflicted at Summit Park, under the color of State law, by depriving DOROTHY DIER of her rights both guaranteed and protected by the United States Constitution , by engaging in conduct both in the District of Columbia, at times, and outside the District of Columbia at other times, and when outside the District of Columbia be part of a pattern("persistent course of conduct") designed to amongst matters to cause tortuous injury to DOROTHY DIER in the District

of Columbia, SUCH as to both give this Court jurisdiction in this Action and require that this Court immediately issue a Writ of Habeas Corpus so as to grant relief to this innocent, DOROTHY DIER, while relief can still be meaningful.

### Venue

DOROTHY DIER by and through her son, Jerry L. Dier has set forth WITH specificity a fact pattern of material, significant and substantive events in this paper as well as in the filed Petition, dated September 17, 2007, which "gave rise" to her claim, to wit, the nature and fashion of her person being held in "legal custody" by the State of Maryland, contrary to laws of the United States of America, subjected to restraints of the kind and to the degree that can only be considered to be "cruel and unusual punishment" of an innocent, from which DOROTHY DIER seeks justice and mercy from this Court.

There can be *no* question that the Constitutional errors noted by Your Petitioner by and through her son, Jerry L. Dier in this paper and his paper filed on September 17, 2007, both rise well beyond the magnitude of being "substantial" in nature and "injurious" to Your Petitioner's right to due process of law, so as to cloak DOROTHY DIER in darkness, as if to hold DOROTHY DIER separate and apart from accepted standards of fair play, impartiality and justice guaranteed by and through the United States Constitution to "all" citizens, no matter what their status in life, governed by the Rule of Law, not that of the individual notions of men and/or women.

Upon this presentation, the issues of jurisdiction having been addressed, both factually and the application of the law to the facts, the matter immediately before this Court is how best to save an innocent, MY MOTHER DOROTHY DIER, who is and

has been held for almost two years in the darkest of dungeons conceived by mankind in the in the dark recesses of his mind, in darkest of its hours to bring about such a horrific result as been described herein.

DOROTHY DIER HAS SUFFERED ALMOST INDESCRIBABLE INJURY, RELIEF HAS TOO LONG BEEN COMING. I, JERRY L. DIER, IN BEHALF OF MY MOTHER, DOROTHY DIER PRAY THAT THIS COURT WILL ACT NOW.

*It is the utmost of importance that the status hearing before this court go forward as scheduled without the danger of the Howard County Circuit Court Sane day scheduled hearing.*

Respectfully submitted,

_____

Jerry L. Dier, for DOROTHY DIER

11448 Rowley Rd.

Clarksville, MD 21029

(202) 276-8716

Verification

I declare under penalty of perjury, under the laws of the United States of America that the foregoing is true and correct. Executed on October 1, 2007.

_____

JERRY L. DIER

Certificate of Service

*I hereby certify that a true and correct copy of the foregoing Supplemental Filing, Personal Jurisdiction & Venue was served on Beverly Heydon, 3430 Courthouse Drive, Ellicott City, MD 21043 on this 2nd day of October, 2007, by U.S. Mail, first class, postage prepaid and to be hand delivered in court at a hearing on October 3, 2007, in Federal court.*

*Jerry L. Dier, 10/2/07*