UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civil Action No. 07-1637(JR)

DOROTHY DIER
BY her son and next friend, JERRY L. DIER

    Petitioner,

**Request for Reconsideration**
Pursuant to
Federal Rules
Civil Procedure, 59(e)

Phyllis Madachy, Director,
Office of Aging, Howard County, Maryland
Et al.

    Respondents

## PETITIONER'S REQUEST FOR RECONSIDERATION

Upon the Petitioner's request for habeas relief, an emergency request to Stay State Court action, a supplemental filing in support of personal jurisdiction and venue, and a request to Release, this Court held an *ex parte* hearing on October 2, 2007, at 3 p.m., denying all requested relief.

Kindly allow Your Petitioner to apologize to this Court for apparently not adequately addressing this Court's raised concern necessitating this further response.

### STATE OF MARYLAND--Howard County Office of Aging and Howard County Circuit Court-OUTSIDE OF DISTRICT OF COLUMBIA

At said hearing, the Court expressed concern as regards by what authority can a federal court can reach into a state court not within its territory, so as to acquire jurisdiction over that state court? In amplification of what was stated, the

Kindly allow Your Petitioner to apologize to this Court for not adequately addressing this Court's raised concerns, necessitating this further response.

RECEIVED

OCT - 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Your Petitioner states the following pertaining to the acknowledged fact that "legal custody" in the instant action rests in the State of Maryland, outside the territory of this court, and thus, in what manner can this court proceed to invoke jurisdiction?. The Petitioner submits to this court his **response(App. 1)** to the Show Cause Order issued by Judge Kotelly of this court in an earlier habeas filing in this action shed further light on this Court's raised concern.

Of particular note, in *Braden, Mr. Justice Brennan*, addresses the issue of "service of process" (*Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973)*, *in pertinent part*,

> *Read literally, the language of 2241 (a) requires nothing more*
> *Than that the court issuing the writ have jurisdiction over the*
> *The custodian. So long as the custodian can be reached*
> *Service of process, the court can issue a writ"within its jurisdiction,"*
> *Requiring that the prisoner be brought before the court for a*
> *Hearing on his claim, or requiring that he be released outright*
> *From custody, even if the prisoner himself is confined*
> ***Outside this court's territorial jurisdiction.****(emphasis added). Id. at 495.*

> *Accordingly we turn to the determination of the forum in which the*
> *Petition for habeas corpus should be brought in terms of traditional*
> *Venue considerations. Id. At 493.*

> *Relying on our decision in Ahrens v.Clark,335 U. S. 188(1948)*
> *respondent contends –and the Court of Appeals*
> *held. ...limit a District Court's jurisdiction to cases where the*
> *prisoner seeking relief is confined within its territorial jurisdiction.*
> *Since that interpretation is not compelled*
> *either by language of the statue 28 U.S.C. 2241 (a) or by the*
> *decision in Ahrens, and since it is fundamentally at odds with the*
> *purpose of the statutory scheme, we **cannot (emphasis added)** agree. Id 494.*

*For further amplification see also, Petitioner's filed supplement in support of personal jurisdiction and venue and the Petitioner's reference to Braden in the Conclusion of this paper, wherein both traditional considerations of venue and personal jurisdiction rest*

*upon in good part on constitutional notions of fundamental fairness and justice, the ingredients in the constitutional mix, also known as "due process of law."*

## LEGAL ANALYSIS- TRADITIONAL CORE HABEAS CASES TO LEGAL CUSTODY

A summary of the legal analysis in said Response is as follows: prior to *Braden*, traditional "core" habeas actions involved the question of the situs of the jailer, "immediate physical custody;" this was the determinative factor as regards jurisdiction, however, in *Braden* the Supreme Court engaged in a modernistic approach to habeas claims under the United States Constitution and gave credence to the habeas petitioner's claim as regards, "future physical custody;" and thus, the reasonable outgrown and progression of this modernistic approach fitting within the scheme of safeguards set forth in the United States Constitution is that of "legal custody," which is present in the instant action, and is that from which the habeas claimant seeks relief. The *restraints* that have been set upon the habeas claimant are beyond those placed on the ordinary citizen and deemed commonplace, and furthermore, as described in the papers filed by the habeas claimant in the instant action, can only be considered inhumane and barbaric in nature, such as to be insufferable and cause your habeas claimant irreparable harm, arising from state court action that is of such a profound nature as to be destructive the rights guaranteed and to be protected under the United States Constitution of a true "innocent" so as to override this Court's concerns as regards federalism and finality. *Lehman v. Lycoming County*, 458 U.S. 502, 515-516(1982). This is most certainly a case actually of special urgency as regards individual liberty.

## SERVICE OF PROCESS-MARYLAND

*Justice Kennedy, with whom Justice O'Connor joins, concurring*
In *Rumsfeld v. Padilla*, 542 U.S. 426 (2004),

Though I join the opinion of the Court, this separate opinion is
Added to state my understanding of how the statute should be
Interpreted in light of the Court's holding. The Court's analysis
Relies on two rules, First, the habeas action must be brought
against the immediate custodian. Second, when an action is brought
in the district, it must be filed in the district court whose territorial
jurisdiction includes the place where the custodian is located. ...

These rules, however, are not jurisdictional in the sense of a
Limitation ...That much is clear from the many cases in which
Petitions have been heard on the merits despite their
non-compliance with either one or both of the rules.
See e.g. Braden v. 30th Judicial Circuit of Ky., 410 U.S.
484, 495(1973); Strait v. Laird, 406 U.S. 341, 345(1972). ...

In my view, the question of proper location for a habeas petition
Is best understood as a question of personal jurisdiction or venue.
This view is more in keeping with the opinion in Braden and its
Discussion explaining the rules for proper forum for habeas petitions.
410 U.S. at 493, 500(indicating that the analysis is guided by
"traditional venue considerations" and "traditional principles of venue");
see also, Moore v. Olsen, 368 F. 3d 757, 759-760(CA7 2004)
(suggesting that the territorial-jurisdiction rule is a venue rule
and the immediate-custodian rule is a personal jurisdiction rule). This
approach is consistent with the reference in the statute to the
"respective jurisdictions" of the district court. 28 U.S.C. 2241.
As we have noted twice this Term, the word "jurisdiction is
Susceptible of different means, not all of which refer to the power
Of the federal court to hear a certain class of cases. Kontrick v.
Ryan, 540 U.S. ___(2004); Scarborough v. Principi, 541 U.S. ___
(2004). The phrase " respective jurisdictions" does establish a
territorial restriction on the proper forum for habeas petitions, but
does not of necessity establish that the limitations goes to the
power of the court to hear the case.

*Mr. Justice Kennedy further* noted the special nature of non-physical custody

cases such as *Braden* and others.

Therefore, the question in the instant action becomes one of personal jurisdiction

which as addressed in *Braden* becomes one of "service of process," wherein traditional notions of jurisdiction and venue for a useable purpose which incorporate the sense of fundamental fairness and justice are precisely the considerations set out in the D.C. long arm statute-See Your Petitioner's Supplemental Filing as regards Personal Jurisdiction and Venue for a detailed examination and analysis, which incorporates in the in the main this Court's analysis in another proceeding, not a habeas proceeding, but still addressing the issues of personal jurisdiction, venue and the D.C. long arm statute.

## RAISED AND ADDRESSED CONCERNS IN OPINION, COURT OF SPECIAL APPEALS, MARYLAND

See Petition, page 16, as regards the state court's denial of the petitioner's request to move by representation, rather than admissible evidence pertaining to raised allegations in contradiction to what this Court noted in reading from the opinion of the Court of Special Appeals; and furthermore, see Petition p.14, concerning stipulation raised by state court and agreed upon by petitioner describing the caring and loving relationship between mother and son in this action.

## CONCLUSION

### Exxon Mobil Corp. –Rocker-Feldman and Abstention

#### *Justice Ginsberg, Rooker-Feldman*

In conclusion, addressing this Court's concern as regards <u>comity</u> and reaching into <u>parallel State litigation</u>, Petitioner respectfully brings to this Court's attention the case of *Exxon Mobil Corp. et a. v. Saudi Basic Industries*, 544 U.S. 280 (2005), wherein Justice

Ginsberg held, "The Rocker-Feldman doctrine, we hold today is confined to cases of the kind from which the doctrine acquired its name: cases brought by state court losers complaining of injuries caused by state-court judgments rendered **before(emphasis added)** the district court proceedings commenced and inviting district court review and rejection of those judgments."

In the case at bar, the petitioner submits that under the factual setting in this action, her habeas claim was initially submitted before Judge Kotelly of this court as noted in the prior habeas history portion of her Petition paper, p. 58-59, and said submission was placed before the district court(in January 2007) prior to the decision and order of the Court of Special of Appeals for Maryland, on April 18, 2007, affirming the state court action(said decision and said order rendered in state appellate court five months after December 18, 2006, the required end decision and order date under its rules, Maryland Rules, 8-207, a request for an expedited appeal having been filed; and which ordinarily such a decision and order would be a necessary criteria for a habeas claimant to file a petition for habeas relief under the strongly favored exhaustion of state remedies doctrine as codified in 28 U.S.C. 2254, except as herein, when not appropriate, 28 U.S.C. 2254(B((ii), THEREBY your habeas claimant would *not* be a "state court loser" as described by *Justice Ginsberg* until she had exhausted her state remedies which did not take place until April 18, 2006, appellate decision and order, some months(3) after your habeas claimant commenced her action in this district court. Thusly, *Rooker-Feldman* does not preclude this action.

**Background-Colorado River and Abstention**

*Colorado River Water Conser. Dist. v. U.S.* , 424, U.S. 800, 813 (1976),

which addresses abstention as follows,

> Abstention from the exercise of federal jurisdiction is
> The exception, not the rule. The doctrine is 'abstention
> Which a a District Court may decline to exercise or
> Or postpone the exercise of jurisdiction, is an extra
> Ordinary and narrow exception to the **duty**
> **(emphasis added)** of the District Court to adjudicate
> a controversy properly before it. Abdication of the
> obligation to decide cases can be justified under this
> doctrine only in the exceptional circumstances where
> the order to the parties to repair to the state court would
> clearly serve an important countervailing interest.'

## *Abstention*

*Colorado River* sets forth the instances of circumstances appropriate for Abstention,

Cases involving concurrent parallel and/or substantially parallel litigation,  placing them

in three categories, but as background holding '[I]t was never a doctrine of

equity that a federal court should exercise its judicial discretion to dismiss a suit merely

because a State court could entertain it.'

1-Abstention is appropriate 'in cases presenting a federal constitutional issue which
might be mooted or presented in a different posture by a state court determination of
pertinent state law. *Id at 814.*.

This case has as regards the question of guardianship of person determined, the April 18,

2006, decision and opinion of the Court of Special Appeals of Maryland, the federal

constitutional issue of the propriety of the State Court's in the handling of the

guardianship trial of your habeas claimant. The present action in state court is an

augmentation of the complained state action; the signature pattern of state action clears

demonstrates that the state action has only one gear, straight ahead, no matter what

constitutional considerations are properly raised and presented by your habeas claimant..

232

2-Absention is also appropriate where there have been presented difficult questions of state law bearing only on policy problems of substantial public import whose importance transcends the result in the case then at bar. *Id.at 814 and 815.*

This case bearing on life and death issues transcends any substantial public import. No questions bearing on state policy are presented for decision. The mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise

3-Finally, abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been involved for the purpose of restraining state criminal ;proceedings. Id. at 816-817,

This case clearly does not fall within this category.

> Although this case falls within none of the abstention
> Categories, there are principles unrelated to considerations
> Of proper constitutional adjudication and regard for
> Federal-state relations which govern in situations
> Involving the contemporaneous exercise of concurrent
> Jurisdictions, either by federal courts or by state
> And federal courts. These principles rest on considerations
> Of '[w]ise judicial administration, giving regard to
> Conservation of judicial resources and comprehensive
> Disposition of litigation. ... Generally, as between state
> And federal courts, the rule is that the pendency of an
> Action in the state court is no bar to proceedings
> concerning the same subject matter in the Federal
> court having jurisdiction. ...The difference in general
> approach between state-federal concurrent jurisdiction
> and wholly federal concurrent jurisdiction stems from the
> virtual unflagging obligation of the federal courts to
> exercise the jurisdiction given them. Id. 817-818.

Given this obligation and the absence of weightier considerations of constitutional

adjudication and state- federal relation, the circumstances permitting the dismissal of this

federal suit due to the presence of a concurrent state proceeding for reasons of wise

judicial administration are considerably more limited than the circumstances appropriate

for abstention, and neither exist pertaining to the case at bar.

This Court clearly has subject matter jurisdiction and under *Braden's* teaching, your

Petitioner submits that it has personal jurisdiction under traditional notions of j

jurisdiction, *Braden*, as evidenced in the District of Columbia's long arm statute and

venue, so as to serve a useful purpose enabling this Court to reach the merits of

Petitioner's habeas claim, as the defendant's in this action reached into this

district, so as not to offend well recognized constitutional principles of due process and

fair play. The defendant's are only a stone's throw from this District Court, no more then

a reasonable commute by car, they have either directly or through principles of agency

physically entered this district and much of the documentation upon which state court

relied upon, medical documentation was directed to be produced, was produced and

under ordinary circumstances should still be maintained in this district, and court records

can and commonly transferred amongst different courthouses.. Your habeas claimant

belongs in this district, and nowhere else..

**WHEREFORE,** for the above cited reasons and for those reasons cited at the

earlier October 2, 2007, including all papers filed in this action, as well as those reasons

that may be offered at a hearing on this matter, Your Petitioner respectfully requests the

relief he has set forth in his filed papers.

For this Court's information, the October 3, 2007, hearing in state court

having been continued when Your Petitioner  brought to the state court's attention that

your habeas claimant, DOROTHY DIER was neither present nor represented by counsel,

the state court having told Anthony Doyle, the state court's court appointed attorney for

Mrs. Dier, that he need not attend Agings Withholding and Withdrawal of Treatment

hearing.

Respectfully submitted,


JERRY L. DIER, IN BEHALF OF DOROTHYDIER
11448 Rowley Rd.
Clarksville, MD 21029
(202) 276-8716


Verification

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 9, 2007.


CERTIFICATE OF SERVICE

I, Jerry L. Dier hereby certify that a true and correct copy of the foregoing Request for Reconsideration was served upon Beverly Heydon, counsel for Aging, at 3430 Courthouse Drive, Ellicott City, MD 21043 and Judge Dennis M. Sweeney at 8360 Court Avenue, Ellicott City, MD 21043, this 9th day of October 2007, by U.S. Mail, postage prepaid.


Jerry L. Dier

235

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

JAN 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

DOROTHY DIER,
By her son and next friend, JERRY L. DIER

    Petitioner,

       v.

PHYLLIS MADACHY, Director,
Office of Aging, Howard County, Maryland,
Et al.

    Respondents.

Civil Action No.07-106 (CKK)

Petition for a Writ of
Habeas Corpus for a
Person found Incapacitated

In State Custody

## PETITIONER'S RESPONSE TO SHOW CAUSE ORDER
## DATED JANUARY 19, 2007

On January 17, 2007, Petitioner Dorothy Dier, by her son and next friend, Jerry L. Dier, filed a Petition for a Writ of Habeas Corpus for a Person Found Incapacited in State Custody with this Court. As noted in the Show Cause Order, the Petitioner indicated that venue was proper in this Court because a "substantial part of the events giving rise to the claim occurred in the District of Columbia." The Court noted that "a district court has jurisdiction over a habeas petition 'only if it has jurisdiction' over petitioner's custodian," citing *Rooney v. Sec'y of the Army*, 405 F. 3d 1029, 1032 n,1 (D.C. Cir. 2005). Furthermore, this Court took note that the Petitioner Dier is currently located at Summit Park, in the State of Maryland, Baltimore County, under the custody of the State of Maryland Howard County Circuit Court, and its designated agent-Petitioner's Dier's court-appointed guardian-the Office of Aging, Howard County, Maryland.

The Petitioner, aware of the concerns of this Court in response respectfully

1

believes that this Court has jurisdiction to enter the writ of habeas corpus sought in the

instant petition grounded in the fundamental distinction that the instant action covers

the depths of concerns and protections attendant to a guardianship matter, as contrasted to

the case cited by this Court, *Rooney*, which reaches for its grounding support in

traditional "core" habeas cases,  wherein habeas relief is sought either in criminal or

quasi criminal matters, tied to confinement as a factual governing element. More

specifically, in the instant guardianship action where legal custody is the governing

principle factually founded on nonphysical  legal custody, without factual "present

immediate physical custody"/"present immediate physical custodian," Thereby setting

this action separate and apart from *Rooney*; and its governing reliance on *Rumsfeld. Thus,*

this Court is free either to apply the traditional governing principles set forth in *Braden*

such as sensible forum and useful purpose, while also citing traditional principles of

venue; *see* Title 28 U.S. Code Sect. 1391(b)(2) as regards venue and the D.C. long arm

statute as regards personal jurisdiction, leading to the conclusion as set forth in the

Petition, that this Court has jurisdiction to issue the sought Writ.

### Traditional core habeas cases, immediate physicial custody and immediate physicial custodian, and place of confinement

1- In *Braden v. 30th Judicial Circuit Court of Kentucky*, 93 S. Ct. 1123(1973), a detainer
was lodged against the petitioner in a Kentucky court(future custody) while he was
imprisoned in Alabama. The petitioner filed a federal habeas challenge to confinement
that would be imposed in the future in Kentucky. The case was decided by the Supreme
Court on the proposition that factual "future custody" was a workable exception to the
traditional "core" habeas challenges concerning "present immediate physical custody," in
deciding jurisdiction, in spite of the fact that the petitioner was not presently within the
territorial limits of Kentucky court when he filed said habeas challenge. The Court
crafted a practical exception to the traditional view concerning habeas cases, specifically
adopting a noted degree of flexibility in the treatment of varying habeas petitions. More
specifically, the Court adopted a bright line standard incorporating factors such as
**sensible forum** and **useful purpose, at 1132**, in deciding jurisdiction, not factually
bound to apply traditional "immediate physical custody" rules.

2- The Court in *Rumsfeld v. Padilla, 124 S. Ct. 271(2004)* discussed *Braden,* however, based its decision on the traditional approach, utilized in "core" habeas cases factually finding that the there was "present immediate physical custody" with an "immediate physical custodian in place," Whereby it was able to decide the case based on the age-old principle of "sue the jailer," holding that if the facts fit, namely, there is confinement, and the habeas challenge involves "present immediate physical custody," the district court has jurisdiction over a habeas petitioner, only if it has jurisdiction over the petitioner's custodian.

3- *Rumsfeld* was cited as the governing authority in *Rooney*, both cases dealing with situations concerning military related confinement, governed by the traditional habeas core proposition, "sue the jailer," the "present immediate physical custodian."

4- *Rumsfeld* and *Rooney,* traditional core habeas cases, have a common element, which was recognized in *Braden,* at 1129, and translated into the challenged "future custody" [the jailer in the future] .

> The important fact to be observed in regard to the
> Mode of procedure upon this writ is, that it is
> Directed and served upon, not the person confined
> But his jailer--

Sue the jailer to release the prisoner. The jailer may have different titles but he or she is still the "jailer", whether they be warden of the facility or commandant of the brig, or otherwise. In the instant guardianship action where habeas relief is sought there is no jailer, now or in the contemplated future, and thus, the concept of "immediate physical custody" and the "immediate physical custodian" have no place in the world of guardianship actions The Court recognized in *Rumsfeld* the limited nature of its decision

> *Rather the cases Padilla cites stand for the simple*
> *Proposition that the immediate physical custodian*
> *Rules does not apply when a habeas petitioner challenges*
> *Something other then his immediate physical confinement at 2723.*
> *(emphasis added).*

The Court in *Rumsfeld* further stated at 2720, "But nothing in *Braden* supports departing from the immediate custodian rule in the traditional context of challenges to present physical confinement," which is plainly **not** factually present in the case at bar.

3

**Guardianship, as distinguished from present immediate physical custody and immediate physical custodian matters in traditional prisoner "core cases" when habeas relief is requested, relief from confinement**

5-In the instant habeas guardianship challenge, when traditional propositions such as "physical custody", "present immediate custody" and "present immediate custodian" are **not** at play; would the Director of Summit Park Nursing and Rehabilitation facility call herself a jailer? More specifically, Jerry L. Dier has visited his mother Dorothy Dier hundreds of times over the past year at Summit Park can say beyond question that there are no jailers at Summit Park, the residents are free to go out the facility and move about the areas surrounding the facility at all reasonable hours, when the residents need to go the hospital or a doctor's visits(with family, friends and/or relatives) no one accompanies them from Summit Park which is an un-gated and unguarded facility; and furthermore patients, when take to the local hospital for specific care concerns have no guards placed in or about their rooms. In sum, there is no "present physical confinement" and no jailer present, Thereby, his habeas guardianship challenge is materially and substantively distinguishable from *Rumsfeld* and different rules and standards apply, when factual "legal custody," not factual "present immediate physical custody" and a "present immediate physical custodian"is the guiding factor.

> Under *Braden[Rumsfeld* at 2720] then a habeas petitioner who challenges a form of "custody" other than present physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged "custody."[in the instant action, the Howard County Circuit Court and its agent, the Director of Office of Aging exercise Legal control].

Mr. Chief Justice Rehnquist stated in delivering the opinion of the Court in *Rumsfeld*

> In *Braden* and *Strait*, the immediate custodian rule did not apply Because *there was no[such as in the instant case]* immediate physical custodian with respect To the custody being challenged. at 2720.

The position of the Chief Justice was made clear when he stated, at 2719, ". ...it is at bottom a simple challenge to physical custody imposed by the Executive-the traditional core of the Great Writ," and he further amplified

> In accord with the statutory language and *Wales* immediate Custodian rule, longstanding practice confirms that in habeas Challenges to present physical confinement, "core challenges," ---the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official, at 2713.

4

> *Braden* cited *Wales* favorably and reiterated the traditional rule
> That a prisoner[there is no prisoner in the guardianship action
> at bar] seeking release from confinement must sue the
> Jailer. at 2720.

> Thus, *Braden* does not derogate from the traditional district of
> Of confinement rule[THAT RULE IS STILL IN EFFECT, HOWEVER
> THERE IS NO FACTUAL PREDICATE FOR ITS APPLICATION
> IN THE GUARDIANSHIP CASE AT BAR] for core habeas
> petitions  challenging present physical custody. at 2723.

6- The Petitioner submits that "custody" in guardianship actions and more specifically in this action is **void** of a "jailer," although factual  "legal custody" does have some important attributes of control such as removing and/or taking away the myriad of freedoms of individual and personal choice, rights guaranteed and protected by the United States Constitution. Guardianship in the instant action was established through "legal custody," *absent* notions of "present immediate physical custody," and "present immediate physical custodian," and thus, *not* subject to the cited governing authority of *Rumsfeld.*

7-Mr. Justice Blackman, in his concurring opinion in *Braden* at 1133, felt the winds of change were in motion as regards an expansive reading of the Great Writ, seemingly to make it more readily adaptable to modern times

> I merely point out that we have come a long way **from**
> (emphasis added) the traditional notions of the Great Writ.

8- Mr. Justice Brennan, delivering the opinion of the Court in *Braden* at 1132 found that the traditional habeas "core case" challenge bright line standard of "immediate physical custody," was not an inflexible standard, in that the twin prongs of sensible *forum* at 1132 and *useful purpose*, at 1132, in determining jurisdictional issues, when the traditional standard was found inapplicable, such as in the guardianship case at bar.

> In view of these developments since *Ahrens v. Clark,*
> we can **no longer** view that decision as establishing
> an **inflexible jurisdictional rule**, (emphasis added)
> standard dictating the choice of an inconvenient
> forum even in a class of cases which could have
> been foreseen at the time of our decision.

Furthermore, in *Rumsfeld*, Justice Kennedy with Justice O'Connor concurring, in a 5-4 decision, spoke to the crux of the matter in the case at bar

> *Only in **an exceptional case** may a court deviate from those*
> *Basic rules to hear a habeas petition filed against some person*
> *Other than the immediate custodian of the prisoner, or some court*

*Other than the one in whose territory the custodian may be found.*

*The Court has made **exceptions in the cases of nonphysical custody.**
[it is not in dispute that[nonphysical custody is the factual
circumstance present in the instant guardianship action at bar].at 2728*
(emphasis added).

In my view, the question of the proper location for a habeas petition
Is *best* understood as a question of personal jurisdiction or venue.
This view is more in keeping with the opinion in *Braden,* and its
discussion explaining the rules for proper forum for habeas petitions.
At 2727.

9- It is clear from *Rumsfeld* that if there is not an identifiable physical custodian, you look
to the legal custodian, which in this case is the State of Maryland, Howard County Circuit
Court and its designated agent the Director, Office of Aging, Howard County. In order to
determine if this Court has jurisdiction over these entities the Petitioner suggests having
factually presented that there is *no* "immediate physical custodian" which is the founding
factual underpinning in the *Rumsfeld* decision, which stands as the bedrock of *Rooney,*
this Court must either look to the bright line standard set forth in *Braden-an examination
of the attendant nexus defined in terms of sensible forum and useful purpose* amongst the
State of Maryland, Howard County Circuit Court and its designated agent, Director,
Office of Aging, Howard County and the District of Columbia as regards the
guardianship of Dorothy Dier, or being cognizant of Mr. Justice Brennan's admonition
in *Braden*, concerning his analysis of *Ahrens v. Clark*, at 1132, when applied to the facts
in the instant case- is there an *apparent reason in the sense of traditional venue
considerations* which would serve to bolster the District of Columbia as the proper
jurisdiction to bring this action. The Petitioner respectfully suggests to this Court there is
considerable, material and substantive reasons for granting this Court jurisdiction found
in *traditional venue considerations when coupled with guiding personal jurisdiction law,
D.C. long arm statute.*

## Factors pertinent to a *Braden* determination, sensible forum and useful purpose
## As well as relevant to traditional factors of personal jurisdiction and venue

a-Dorothy Dier was a patient at Sibley Hospital in the District of Columbia from
September 7, 2005 through September 23, 2005. While a patient at Sibley, at the behest
of the State of Maryland, Howard County Department of Social Services and/or State of
Maryland, Howard County Office of Aging two Physician certificates as regards
disability and/or competence of Dorothy Dier by two doctors, at least one of whom was
Dorothy Dier's attending physician at Sibley, both taken without either notice and/or
consent of the family of Dorothy Dier and both necessary and required by Maryland law
in the filing of a petition for guardian of the person. The information put forth in said
Physician certificates was based solely on examinations performed and evaluations
rendered on observations and information gained at Sibley Hospital in the District of
Columbia..

b-On September 28, 2006, the State of Maryland, Howard County Department of Social Services filed a petition for the appointment of a guardian of the person for Dorothy Dier, at a time when she no longer resided in Howard County. Said petitition nominated the State of Maryland, Howard County, Office of Aging as the guardian.

c-During the first court date, October 14, 2005, the State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney, named said Office of Aging, Ms. Ophelia Ross to act as his agent in accumulating information about Dorothy Dier and ordered that Jerry L. Dier give help when requested.

d- Dorothy Dier's care and treatment was micromanaged by the State of Maryland, Howard County, Office of Aging, Ms. Peggy Rightenhauer and Ms. Ophelia Ross while a patient at the Washington Hospital Center in the District of Columbia from on or about January 10, 2006 through February 1, 2006. This included but was not limited to the placement of a gastrointestinal tube, a G-tube for feeding, in Dorothy Dier's stomach on January 25, 2006, at a point in time when Dorothy Dier to the best of Jerry L. Dier's knowledge had passed all swallow tests at the Howard County General Hospital from December 23, 2005 through January 8, 2006, and pursuant thereto was on a mechanical diet; and in addition, while a patient at the Washington Hospital Center, on or about January 18, 2006, Dorothy Dier was given vanilla ice cream which she swallowed without difficulty by her attending physician after she had answered certain questions posed to her by said physician including her name. One of Dorothy Dier's main enjoyments in life for the last few years has been eating food and this was taken away from her. Dorothy Dier at the insistence of the representative of the Office of Aging working together with said attending physician, after only a few short days earlier Ms. Ross testified in Howard County Circuit, on or about January 4, 2006, that Dorothy Dier would be returning to an Assisted Living Facility as soon as her eating increased(as stated above she was on a mechanical diet)-this January 4, 2006, date was both a court date, a morning session and the day that the unconsented surgical debridement without either notice and/or consultation was performed at Howard County General in the mid to late afternoon..

e-On January 23, 2006, in the State of Maryland, Howard County Circuit Court, Judge Dennis M. Sweeney conducted an emergency guardianship hearing that went into the late evening and appointed the Director of Office of Aging, State of Maryland, Howard County as the temporary guardian of the person for Dorothy Dier. The inevitability, although ill founded, was for all practical purposes contemporaneous with the setting of a surgery date to place a G-tube in the stomach of Dorothy Dier. At said hearing, the main witness was the supervisor of the attending physician for Dorothy Dier at the Washington Hospital Center. Both the supervisor and attending physician had completed a second set of Physician certificates not allowed for under Maryland law, and furthermore, Jerry L. Dier at that time had filed a Motion for a Protective Order to preclude any further Mental Examinations of Dorothy Dier, which had not been ruled on by the court. Said completed Physician certificates, as were the Physician certificates completed at Sibley Hospital noted in subparagraph 9(a), were based solely on observations and information

7

gained while Dorothy Dier was a patient at the Washington Hospital Center, placing the diagnosis and prognosis rendered dependent on conduct taking place within the District of Columbia, while said conduct formed the basis for the matter going forward in Maryland. Also, said supervising physician testified in Howard County Circuit Court, in Ellicott City, Maryland, approximately one hour from the Washington Hospital Center and only a little further from the United States District Court in Washington, D.C. Furthermore, as already noted the testimony of the supervisory physician went into the evening hours.

f-Dorothy Dier was removed from the Washington Hospital Center and placed in Summit Park in Baltimore County, Maryland by way of the management effort of Ms. Ophelia Ross and Judge Sweeney, who emphatically stated at a hearing on September 22, 2006, that said move was pursuant to his "Court order."

g-At trial, on March 7, 2006, neither of the two Physician certificates completed at Sibley in Washington, D.C. were offered in evidence and in its place was the Physician certificate of the attending physician at the Washington Hospital Center who personally appeared to testify during the morning into the early afternoon at the Howard County Courthouse in Ellicott City, Maryland before Judge Dennis M. Sweeney. The testimony of said physician was in the main the whole of the Department of Social Services(the petitioner in the guardian of the person action), the petitioner having STIPULATED away any allegations and/or assertions in the petition other than the medical testimony and moreover, when raising the issue of allegations and/or assertions noted in the petition the trial court stated they had produced no testimony in support thereof, some seven months after the initial filing.

## CONCLUSION

Clearly, the District of Columbia is a sensible forum and it would certainly serve a *useful purpose*, to see that justice is done for this Court to grant the Petitioner habeas relief. In is undisputed that all potential material witnesses and/or documents are either within the District of Columbia or readily within commuting distance, one hour or less from the Court, and in fact, the case was dependent at trial on a medical doctor, Dorothy Dier's attending physician, who worked for Washington Hospital Center, in the District of Columbia as noted in detail in the Petitioner's Writ for Habeas Corpus as well as set forth above in paragraph 9(d) and (e).  Moreover, this Court has had an opportunity to review the allegations and/or assertions contained in the petition for habeas relief, they

are in the main backed up by quoted statements from by the trial court, clearly indicating

a degree of security that should not be present in a fair and impartial Court System.

Furthermore, there is an undeniable public interest in that the trial court made

pronouncements indicating that the way Dorothy Dier's case was handled such that her

rights under the United States Constitution were deemed non-existent is the nature and

fashion of the way the Court's in Howard County both work in utter disregard of the Rule

of Law.

In addition with *Rumsfeld* having been clearly distinguished, the petitioner

respectfully suggests that the traditional values of subject matter jurisdiction, venue the

personal jurisdiction must play their appropriate roles as set forth in the attached pages,

18-22, from habeas petition, Appendix 1(it is requested that the whole of the petition be

incorporated by reference in this response)  in setting forth the principles that give this

Court jurisdiction over the State of Maryland, Howard County Circuit Judge Dennis M.

Sweeney and his designated agent State of Maryland, Howard County, Director of Office

of Aging, Phyllis Madachy in Dorothy Dier's sought issuance of a habeas petition.

Moreover, addressing the twin questions posed by Mr. Chief Justice Rehnquist in

*Rumsfeld*, at 2717, as applied to the instant matter,

1-who is the proper respondent?

there is no "immediate physical custody" and no "immediate physical custodian" in
guardianship matters such as in the case at bar, however there is legal custody through the
State of Maryland, Howard County Circuit Court, Judge Dennis M. Sweeney and his
designated agent, the name guardian of the person for Dorothy Dier, the State of
Maryland, Howard County, Director, Office of Aging, Phyllis Madachy, and not bound
by the governing propostion in tradition habeas challenges, sue the jailer the questions
becomes that as noted immediately below.

2-does the District Court in the District of Columbia have jurisdiction over the

respondents?

The answer as explained throughout this Response is in the affirmative, the grounding factor is that the Petitioner, the subject of a guardianship action is in **nonphysical** custody such as to make applicable either the constitutional principles of sensible forum and useful purpose and/or those of personal jurisdiction and venue, as set forth herein.

*On Thursday afternoon, January 25, 2007, at approximately 12: 10 p.m. Jerry L. Dier, the son of Dorothy Dier paid a second visit to his mother. He found his mother's neck extended downward, her face turned into a pillow and her head resting on a bed railing and a wire from a television station changing device placed under her nose. In addition, her left leg and foot were locked under her body, not visible, and her right leg and foot immediately adjacent thereto; both legs and feet positioned so as to parallel to a pillow if placed under one's head. The unit manager, Lottie Dorsey came in to check on the patient next to DOROT HY DIER; she then looked at Dorothy Dier and said and did nothing in spite of the fact that Dorothy Dier's contorted positioning was most obvious. Ms. Dorsey had walked out of the room, when the duty nurse who had been requested a few minutes earlier by Jerry L. Dier to reposition his mother came into the room, and it was only at this time that Ms. Dorsey standing in the doorway took notice. As is readily apparent, my mother DOROTHY DIER, totally innocent has been victimized by the State of Maryland Court System, its designated agent and Summit Park. If the legacy of a society is to be judged as to how it treats and cares for its weakest members, then justice demands immediate corrective action, nothing less will do.*

## PRAYER FOR RELIEF

Wherefore, Petitioner, DOROTHY DIER, by and through her son and next friend, Jerry L. Dier, requests relief as follows:

1-SCHEDULE an immediate hearing, requiring the respondents show cause why their actions are not in violation of Petitioner's rights under the Sixth, EIghten and Fourteenth Amendments to the United States Constitution and in depriving of the rights of DOROTHY DIER as set forth in Title 42 U.S.C. Sect. 1483, under the color of state law.

2-Enter an order issuing said requested writ of habeas corpus.

3-Release DOROTHY DIER from Maryland State nonphysical "legal custody."

4-Grant such other and further relief that this Court deems just and equitiable.

5-That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order.

Dated: January 29, 2007

Respectfully submitted,

Jerry L. Dier, Pro se
11448 Rowley Rd.
Clarksville, MD 21029
Son and next best friend
(202)276-8716

Verification

I declare under penalty of perjury under the laws of the United States of American that the foregoing is true and correct. Executed on January 29, 2007.

11

**APPENDIX**

DIER to her detriment with impunity.

It surely cannot be argued that an alleged disabled person deserves fewer procedural and substantive safeguards than an accused criminal in proceedings seeking to cause a deprivation of life, liberty and property. The Court of Special Appeals for Maryland in In Re Sonny E. Lee, 754 A.2d 426, 438 and 439 (Md. App. 2000) in discussing the role of counsel and his duty to protect his client's interests held,

> Due process demands nothing less, particularly as here, when the alleged Disabled person faces significant and usually permanent loss of his basic Rights and liberties. See *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) (stating that the "[t]he right to be heard heard before being condemned to suffer grievous loss of any kind even though it may not involve the stigma and hardship of a criminal conviction is a principle basic to our society") (quoting *Joint Anti-Fascist Comm. v. Mc Grath*, 341 U.S. 123, 168, 71 S. Ct. 624, 646 95 L. Ed 817 (1951) (Frankfurter, J. concurring); see also *Lassiter v. Department of Soc. Servs. of Durham County, N.C.* 452 U.S. 18, 26-27, 101 S. Ct. 2153, 68 L. Ed 2d 640 (1981), *reh'g denied*, 453 U.S. 927, 102 S. Ct. 889, 69 L. Ed.1023 (1981). In a guardianship proceeding effective representation by counsel insures that the proper procedures are followed by the court. ...

In the case at bar, the trial court and court appointed counsel acted as "one" with the trial court driving the train with no one but Interested Person Jerry L. Dier, the son of DOROTHY DIER to attempt to protect and safeguard his mother's guaranteed rights under the United States Constitution, with the trial court and court appointed counsel thwarting the due and just exercise of those rights at every step, placing DOROTHY DIER'S right to a Jury trial, U.S. Constitution Amend. VI, beyond her reach, so as to make certain that their voice would be the only one heard.

## JURISDICTION AND VENUE

**Jurisdiction**

10-**This action** arises under the United States Constitution, particularly the on the Sixth, Eighth and Fourteenth Amendments, Article 1. Sect. 9, Habeas Corpus, and under Federal law, specifically, Title 28 U.S.C. Sect. 2254 and 2255 and Title 42 U.S.C. Sect. 1983. This court has jurisdiction over PLAINTIFF'S claims relating to the State of Maryland, Howard County Circuit Court, Judge Dennis M. Sweeney's conduct holding DOROTHY DIER disabled, and appointing as guardian of the person, State of Maryland, Office of Aging, Howard County relating to PLAINTIFF'S' civil claims arising under the United States Constitution and federal law pursuant to 28 U.S.C. 1331, 28 U.S.C. 2254 and 2255, and 42 U.S.C. 1983. Each and all of the acts alleged herein were done by the Defendants under the color and pretense of state law, statutes, ordinances, regulations, or customs.

**Venue**

11- Venue is proper under 28 U.S.C. Sect. 1391(b)(2), the operative language reads in pertinent part,

> if the United States District Court for the District of Columbia is the judicial district in which a substantial part of the events giving rise to the claim occurred.

In the case at bar, the matter was commenced by the petitioners, State of Maryland, Howard County Department of Social Services( hereafter, referred to in the main as the "Department"), at a time when DOROTHY DIER, September 2005, was in the District of Columbia to receive medical treatment. To meet Maryland law, apparently at the request of the Department, the two so called physician certificates as regards disability were completed grounded solely on medical examinations taking place completed in Washington, D.C. at a time when DOROTHY DIER hospitalized in the District of Columbia, September 7, 2005 through September 23, 2005, and said certificates were later filed accompanying the petition for guardian of the person in the State of Maryland, Howard County on September 28, 2005. Neither said filed physician certificate was referred by the Department in the guardian of the person proceedings and in mid to late January 2006, the Department filed two additional physician certificates gathered in spite

of the fact that Interested Person Jerry L. Dier had filed, December 30, 2005, a Motion for a Protective Order, as regards mental examinations of his mother, not ruled upon during the time period when said two additional physician certificates were gained as regards disability of DOROTHY DIER, again grounded on medical examinations taking place solely in Washington, D.C. while DOROTHY DIER was receiving medical treatment(Washington Hospital Center) from January 8, 2006 to February 1, 2006. The four physician certificates and the physician who authored one of the certificates who testified at trial were **ALL** based on **observations** when DOROTHY DIER was **in the District of Columbia**. Moreover, DOROTHY DIER only left the District of Columbia pursuant to actions pursuant to Court Order by Judge Sweeney) and managed by the State of Maryland, Office of Aging, Howard County, a move not made known to the family of DOROTHY DIER until it was in progress.

As set forth in above paragraph 2(e) both issues of allegations contained within the filed petition for guardian of person and physician certificates required to be attached to said petition were **Abandoned** by the petitioner, leaving the trial court to decide the question of disability on a further filed physician certificate and the testimony of its author which was grounded **soley** on said physicians evalutation of DOROTHY DIER as a patient at the Washington Hospital Center in Washington, D.C. for approximately three weeks during January 2006. Therefore, this Court has jurisdiction, a substantial part of the events grounding the claims set forth arose as a result of **conduct** taking place **in the District of Columbia**.

The State of Maryland(Maryland Rule 10-201 and 10-202) required physician certificates were completed by 1- physicians located in the District of Columbia, 2-examining

DOROTHY DIER in the District of Columbia and 3-the only contact they had with the State of Maryland were that their certificates were filed in a Maryland action and 4-one of the physicians who authored a certificate testified at trial outside the District of Columbia, in the State of Maryland, to what he observed and noted as regards DOROTHY DIER at a time when she was in the District of Columbia under his care, while he was associated with the District of Columbia medical facility, Washington Hospital Center where DOROTHY DIER was a patient.

And 5- DOROTHY DIER was removed from the Washington Hospital Center against the wishes of her son, to a facility, Summit Park in Baltimore County by the Office of Aging, Howard County, by authority of the State of Maryland Howard County Circuit Court. Not within the jurisdiction of either said Court or the Office of Aging, Howard County.


Personal Jurisdiction

As regards the issue of personal jurisdiction over the State of Maryland, Howard County Circuit Court and the Office of Aging, State of Maryland, Howard County, the D.C. long-arm statute provides that courts in the District of Columbia may assert personal jurisdiction over any person who acts directly or by agent, as to a claim for relief arising from the person's " transacting any business in the District of Columbia' or "causing tortuous injury in the District of Columbia." D.C. Code Ann. 13-423(a)(1), (3), (4). In the case at bar, amongst other matters, either Judge Dennis M. Sweeney, State of Maryland, Howard County Circuit Court or through its agent, Office of Aging, State of Maryland, Howard County named temporary guardian by order of the court on January 23, 2006, secured physician certificates from medical personnel at the Washington Hospital Center while DOROTHY DIER was a patient at the Washington Hospital Center in the District

of Columbia, **secured** medical testimony from medical personnel at the Washington Hospital Center to be used in the guardian of the person action while DOROTHY DIER was a patient at the Washington Hospital Center in the District of Columbia, **guided** the care and treatment of DOROTHY DIER, including the placement of a feeding tube, while she was a patient in the Washington Hospital Center in the District of Columbia and **ordered** that DOROTHY DIER be removed from the Washington Hospital Center to Summit Park, Baltimore County, Maryland

(MR. DIER: ... .The individual—individuals that placed my mother in this facility are Miss Ross and the Department of Aging, And—

THE COURT: Under this Court Order, September 22, 2006, trial).

The cause of action as presented to Judge Dennis M. Sweeney at trial on March 7, 2006,stripped of its Abandoned allegations was grounded on medical evaluations of DOROTHY DIER rendered when DOROTHY DIER was in the District of Columbia, the hospital was in the District of Columbia, and the medical doctors were located in the District of Columbia-the **situs** of material and substantial activity which was the basis for the cause of action going forward according to the Maryland Court's rulings was undeniably in the District of Columbia, Thereby founding any and all physician diagnosis and prognosis attendant to DOROTHY DIER on her presence in the District of Columbia. Therefore, this judicial district, the District of Columbia, is the place where a material and substantial part of the events giving rise to the claim filed in Maryland occurred.

## THE PARTIES

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

DOROTHY DIER,
By her son and next friend, JERRY L. DIER,

       Petititoner,

       v.

PHYLLIS MADACHY, Director,
Office of Aging, Howard County, Maryland
et al,

       Respondents

Civil Action No. 07-106(CKK)

Petition for a Writ of
Habeas Corpus for a
Person found Incapacitated

In State Custody

## ORDER

In consideration of the premises, this Court's Order to Show Cause, and the Response of the Petitioner thereto, it is this _____, day of _____, 2007, by the United States District Court for the District of Columbia,

ORDERED, that the Show Cause Order by this Court on January 19, 2007, to the Petitioner is hereby set aside and jurisdiction is granted consistent with the reasons set forth in Petitioner's Response to said Order to Show Cause pending a response from the respondents in this action, and it is further

ORDERED, that the named respondents, Phyllis Madachy, Director, Office of Aging, State of Maryland, Howard County and State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney shall be served by the clerk of the Court with an Order to Show as to why the Writ for Habeas Corpus sought in the Petition should not be granted:said respondents shall respond within _____ days from the date of service, and it is further

ORDERED, pending a Response from said Respondents that DOROTHY DIER be released from the "legal custody" of the State of Maryland, Howard County Circuit Court Judge Dennis M. Sweeney and his designated agent, court appointed guardian, Phyllis Madachy, Director, Office of Aging, State of Maryland, Howard County as set forth in State of Maryland, Howard County Circuit Court, Case No. 13—C-05-63324. .

                      _____
                      JUDGE, UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA